**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.

MACIAG LAW, LLC

475 Wall Street

Princeton, New Jersey 08540

(908) 704-8800

*Proposed Attorney for the Debtors-in-Possession*

| | |
|---|---|
| In re:<br><br>    ProPhase Diagnostics NJ, Inc., *et al.*,<br><br>                                    Debtors. | Case No.: 25-19833-CMG<br>Chapter 11 Reorganization<br>Judge: Gravelle<br><br>Jointly Administered |

**MEMORANDUM OF LAW**

**IN SUPPORT OF THE DEBTORS' MOTION**

**FOR ENTRY OF AN ORDER**

**FINDING THAT A HEALTH CARE OMBUDSMAN**

**IS NOT NECESSARY IN THIS CASE,**

**PER 11 U.S.C. §333(A)(1) AND FED. R. BANKR.P. RULE  2007.2 (a)**

## INTRODUCTION

As set forth in the Motion filed herewith, and in the accompanying Certification filed in support of same, Debtors respectfully submit that the appointment of a Health Care Ombudsman is not necessary in this case, consistent with the nature of the Debtors' business operations, the statutory standards set forth in  11 U.S.C. §333(a)(1), and caselaw interpreting and applying same.

The Debtors accordingly, by this Motion, seek entry of an order pursuant to section

333(a)(1) of the Bankruptcy Code finding that the appointment of a Health Care Ombudsman is not necessary given the facts in this jointly administered case.

Fed. R. Bankr.P. 2007.2(a)requires that this Motion be filed within the first 20 days of the case, or no later than October 14, 2025. This Motion is being filed on or about October 10, 2026, and thus is timely filed under Rule 2007.2.

## STATEMENT OF FACTS

The <u>Certification of the Debtors</u> (by Derek DeStefano) filed herewith sets forth the relevant facts in support of this Motion, which facts, in the interest of judicial economy, will not be fully restated here. The reader is respectfully referred to the Motion and the Certification.

### **The Debtors' medical insurance data is securely protected, in accord with HIPAA**

As detailed at length in the Certification of the Debtor, to the extent that the insurance test records will be accessed by Crown Medical Collections LLC ("Crown Medical"), the proposed Special Counsel to the Debtor, said data is maintained in a password-protected database is carefully and professionally held in full accord with the Health Insurance Portability and Accountability Act (HIPAA), and in strict accordance with HIPAA Privacy, Security, and Breach Notification Rules, including maintaining administrative, physical, and technical safeguards designed to ensure the confidentiality, integrity, and availability of the data.

### **The Debtors do not engage in "patient care"**

The Certification of the Debtor also explains that the Debtors do NOT have medical "patients" like, e.g., a physician's practice, or a group physicians practice, or a hospital, where there is regular and ongoing "patient care" and there are a large quantity of patient folders with medical records. Rather in this case the only "health care information" is in a secure

password-protected electronic database, and only includes patient's health insurance information for their Covid Tests, and the Covid test results (generally from the period 2020 to 2022).

11 U.S.C. §333, throughout that section of the Code, addresses the concept of "patients" and of "quality of patient care".  The instant Debtors have never had "patients" as such, in the sense that word be commonly interpreted. Section 333 states that the Court shall appoint an Ombudsman "unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case" and references "quality of patient care".

There are no present patients — and there never having been patients in the sense of patient care, rather only  simple diagnostic tests (Covid tests) were performed; hence there are no patients who need "protection" out of a concern for "quality of patient care". . There accordingly is not a need to appoint a Health Care Ombudsman, as "the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case."

**Since there are no issues as to "quality of patient care", the appointment of a Health Care Ombudsman would be an unnecessary burden and expense to Reorganization, and is "not necessary for the protection of patients under the specific facts of the case", per Code Section 333.**

Given that there has been and is no ongoing "patient care", and the concept of "quality of patient care" is thus not applicable, and given that the 3 to 5 year old Covid test insurance records are maintained in a secure and highly professional manner as detailed in the Certification of the Debtors filed herewith, the Debtors submit that the appointment of a Health Care Ombudsman would be an unnecessary expense and burden to the reorganization, and the Debtors therefore respectfully submit that this Court should find "that the appointment of such

ombudsman is not necessary for the protection of patients under the specific facts of the case",

per the language of Code Section 333.

## LEGAL ARGUMENT

The fact that the instant Debtors have in place a formal program to ensure compliance

with the Health Insurance Portability and Accountability Act ("HIPAA") [see Certification of the

Debtors at ¶¶ 8, 9 and 10) is a factor which has also been relied by a Bankruptcy Court finding

no need to appoint an Ombudsman where the Debtor had a formal program in place for

compliance with HIPAA:

> The specific facts of this case do not require appointment of an
> ombudsman at this time. In determining not to appoint a health
> care ombudsman, this Court has considered the following factors
> as significant:
>    a. The Debtor's formal program for compliance with the Health
> Insurance Portability and Accountability Act ("HIPAA"), which
> was enacted by the United States Congress in 1996;
> [ *In re N. Shore Hematology-Oncology Assocs.*, P.C., 400 B.R. 7,
> 9, 12 (Bankr.E.D.N.Y.2008)

In the *N. Shore Hematology* case, the Court found that an Ombudsman was not necessary,

where the Debtor's health care practice, providing services in areas of cancer treatment and blood

disorders, did not provide any in-patient services — just as in the instant case there are no in-

patient services provided by the Debtors.

As to the lack of in-patient services provided by the instant Debtors, the Bankruptcy Court

in the case *In re Anne C. Banes, D.D.S. P.L.L.C.*, 355 B.R. 532(Bankr.M.D.N.C.2006) found no

need for a health care ombudsman to be appointed; as the Debtor's operations did <u>not</u> involve

"`direct and ongoing contact with patients' that provide[s] patients with `shelter and sustenance

in addition to medical treatment.'" *In re Banes*, 355 B.R. at 535 (quoting In re *7-Hills Radiology*, 350 B.R. at 904).  The Court found that Section 333(a)(1) makes the appointment of a patient care ombudsman mandatory "unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients." 11 U.S.C. § 333(a)(1).  The Court further found that such an inquiry is on a prospective basis, looking forward at the ongoing operations of the Debtor, "indicating that [Congress] was concerned with appointing patient care ombudsman in cases where health care businesses seeking bankruptcy protection <u>are *currently* engaged in the ongoing care of patients</u>." [*In re Banes, supra,* 355 B.R. at 535 (emphases added).]

In the instant case, just as in *Banes*, there is not, and has not been, any "ongoing care of patients".

As the Court stated in Banes, "Congress chose to write this statutory definition in the present tense, indicating that it was concerned with appointing patient care ombudsmen in cases where health care businesses seeking bankruptcy protection are currently engaged in the ongoing care of patients." *In re Banes*, 355 B.R. at 535. Addressing subparagraph (B) of section 101(27A), the Court held that "the types of businesses listed are all of such a similar nature in that <u>they provide both housing and treatment</u> ... that it is difficult to imagine that the legislature would have intended a business that is so fundamentally different, such as an outpatient dental practice, to be read into the definition.". *Id.* at 535.  —  In the instant ProPhase Diagnostics case, the Debtors have never provided either housing nor treatment, but rather have only provided diagnostic Covid tests.

In a 2007 Bankruptcy Court case, the court came to a similar conclusion:

it appears that Congress intended a health care business to be **something more than an administrative support facility that**

> **offers ancillary laboratory services.** Each of the examples
> included in subparagraph (B) of section 101(27A) describes
> businesses where patients reside, receive emergency ambulatory
> or surgical treatment, or receive in-home or inpatient care, and
> clearly includes long-term care health facilities such as hospitals
> and nursing homes.
>
> [*In re Medical Associates of Pinellas, L.L.C.*, 360 B.R. 356, 361
> (Bankr. M.D. Fla. 2007)]

Based on those facts the Court in *Pinellas* concluded that the appointment of a health care

ombudsman was not necessary under Code §333(a)(1). *Id.*   See also *In re 7-Hills Radiology,*

*LLC*, 350 B.R. 902, 904 (Bankr. D.Nev.2006) (finding that § 101(27A)'s definition of a "health

care business" did not include a Chapter 11 debtor that rendered radiology and X-ray services,

and the Court  held that no health care ombudsman need be appointed.

This line of cases is entirely consistent with the plain statutory language of Bankruptcy

Code Section 333, which, throughout, refers to "patients" who need "protection", and to "quality

of patient care", etc. That fact situation, as envisioned by Section 333, does not apply to the

interest case.

For these reasons, the Debtor respectfully submits that Section 333 was not intended to

apply to a diagnostic testing facility with no actual "patient care" being provided, and submit that

this Court should accordingly find that the appointment of an ombudsman is not necessary under

the circumstances of the instant case, per 11 U.S.C. §333(a)(1).

## CONCLUSION

Given the facts referenced above, and in the accompanying Certification of the Debtor, and

given the legal argument presented in this Memorandum of Law showing that this Motion is

consistent with the Bankruptcy Code, the Bankruptcy Rules, and Caselaw interpreting same, the

Debtors respectfully submit that the Proposed Order be entered, in accord with 11 U.S.C.

§333(a)(1) and Fed. R. Bankr.P. Rule 2007.2(a), finding that the appointment of a Health Care

Ombudsman is not necessary in this case

Respectfully submitted,

MACIAG LAW, LLC

_/s/Thaddeus R. Maciag_
Thaddeus R. Maciag, Esq.
Attorney for the
Jointly Administered
Debtors-in-Possession

Date: October 11, 2025