**STARK & STARK, P.C.**
A Professional Corporation
Joseph H. Lemkin, Esq.
100 American Metro Boulevard
Hamilton, NJ 08619-2319
(609) 791-7022
*Attorneys for Drexel Distributors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>ProPhase Diagnostics NJ, Inc., et al.,<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 25-19833 (CMG)<br><br>jointly administered<br><br>**Hearing Date: February 10, 2026** |

## OBJECTION TO DEBTORS' MOTION
## TO EXTEND EXCLUSIVITY PURSUANT TO 11 U.S.C. §1112(D)

### I. PRELIMINARY STATMENT

Drexel Distributors, Inc. d/b/a EZ Test NY ("Drexel"), a creditor of ProPhase Diagnostics, Inc and ProPhase Diagnostics NY, Inc. ("Prophase"), respectfully submits this objection (the "Objection") to the Motion filed by the above captioned Debtors (the "Debtors") to extend exclusivity (the "Motion").

### Background

1. The Debtors filed their voluntary petition for relief under chapter 11 of title 11 of the United States Code on September 22, 2025.

4918-5116-0461, v. 1

2. Pursuant to 11 U.S.C. § 1121(b)–(c), the Debtors had the exclusive right to file a plan for the first 120 days (the "Filing Exclusivity Period") and thereafter a period to obtain acceptances of a filed plan.

3. In the Motion, the Debtors request an extension of the Filing Exclusivity Period through July 20, 2026, asserting "cause" under 11 U.S.C. § 1121(d).

4. As for background to this Objection, Drexel incorporates by reference in its entirety, Drexel's Joinder to the United States Trustee's Motion to Dismiss (the "Joinder") filed on February 2, 2026, and the supporting certification of Bedis Zormati [Doc. No.: 69]

## II. LEGAL ARGUMENT

### A.  Legal Standard for Extension of Exclusivity

5. Section 1121(d)(1) permits the Bankruptcy Court, on request of a party in interest and after notice and a hearing, to "reduce or increase" the 120-day or 180-day exclusivity periods "for cause." 11 U.S.C. § 1121(d)(1). The Code does not define "cause," and courts in this Circuit exercise broad discretion based on the totality of the circumstances. *See, e.g., In re Geriatrics Nursing Home*, Inc., 187 B.R. 128, 132–33 (D.N.J. 1995) (discussing exclusivity extension/termination at bankruptcy court level). Courts routinely balance the competing interests of facilitating reorganization while avoiding undue delay or disproportionate leverage against creditors.

6. Relevant factors include, among others, the size and complexity of the case**,** progress toward proposing a viable plan**,** the necessity of additional time for good-faith negotiations with creditors, and whether an extension merely extends delay that prejudices creditors. *See generally In re Texaco, Inc.*, 76 B.R. 322 (Bankr. S.D.N.Y.

1987) (identifying examples of "cause") (cited in Third Circuit authority interpreting §§

1121(b), (d) framework).

7. The movant "has the burden of proving, or offering to prove, that sufficient cause exists

to justify an extension of the exclusivity period." *In re Sharon Steel Corp*., 78 B.R. 762,

765 (Bankr. W.D. Pa. 1987).

8. In evaluating whether to extend the exclusivity period, courts "must [] consider the

history and purpose of §1121 and the competing interests which Congress sought to

balance when it enacts these timetables." *In re All Seasons Industries, Inc.*, 121 B.R. at

1004.  Section 1121 was passed, in response to the former Bankruptcy Act, to "limit the

delay that makes creditors hostages of Chapter 11 debtors." *Id*. (citations omitted).  A

court's decision to modify the exclusivity period is a "serious matter." *Id*. (noting that

such extensions should not be granted "routinely or cavalierly").

9. Beyond the policy of § 1121, Courts should consider the effects of denying an extension

of the exclusivity period.  By denying a § 1121(d) motion, "there is no negative effect

upon the debtor's [] right to file a plan." *In re Parker St. Florist & Garden Ctr., Inc.,* 31

B.R. at 207.  Ending the exclusivity only affords the creditors, who had been held

hostage, the right to file plans of their own.  *Id.*   Denying the Motion would allow other

parties in interest to file plans, but this is as Congress intended.  *In re All Seasons

Industries, Inc.,* 121 B.R. at 1005.

### B. The Debtor Has Not Shown "Cause" to Extend Exclusivity

10.  Here, there is no viable business for the Debtors to reorganize**.** It appears that the

Debtors' primary strategy is to liquidate assets, through the speculative recovery of $152

4918-5116-0461, v. 1

million in so-called "Insurance Receivables," for which they have produced no reliable

accounting. The Debtors' reliance on Crown Medical Collections to "project" $80 million

in recoveries lacks transparency and should not justify continued protection under

exclusivity.

11.  Indeed, in response to a Rule 2004 Subpoena issued by Drexel which addressed specific

inquiries and areas of concern which were not responded to in pre-petition litigation, the

Debtor simply re-sent the prior deficient discovery provided in the state court litigation.

No responses were tailored to the specific requests included in the Rule 2004 Subpoena.

12.  The Debtors' reliance on generalized external events – such as the holiday season and

the recent 44-day government shutdown as purported "cause" to extend exclusivity is

legally and factually insufficient.  These conditions affected all market participants and

all Chapter 11 debtors equally; they were not unique impediments to these Debtors'

ability to negotiate, draft or file a plan. Ordinary calendar events, holidays, or broad

macro-level disruptions do not constitute the type of debtor-specific, case-driven

circumstance required to justify continued monopoly control over the plan process.

13.  Accepting such boilerplate explanations would effectively convert §1121(d) into a

presumption of routine extensions, contrary to Congress' intent that exclusivity is the

exception, not the rule.

14.  The Debtors must demonstrate concrete case-specific progress toward confirmation that

was frustrated by identifiable obstacles – not merely point to conditions that existed for

every litigant, creditor, and debtor.

15.  To date, the Debtors have failed to timely file monthly operating reports.  In the face of

the UST's motion to dismiss these bankruptcy cases, only last night and today did the

4918-5116-0461, v. 1

Debtors finally start filing their operating reports.  This failure to timely comply with

rudimentary bankruptcy obligations and the lack of transparency in financial disclosures

by the Debtors not only constitute cause for dismissal or conversion of the case, but it is

also strong support for the court to deny this extension request.

16.  While the Debtors list several things they have done to support the fact that considerable

progress has been made on a variety of issues, yet most are just initial administrative

matters and preliminary matters.  They do not constitute "considerable progress" and are

not substantive.

17.  In addition, as set forth above the Debtors have no going concern business to reorganize**.**

There is no demonstrated revenue stream outside litigation and collection efforts, and no

evidence of continued business operations or customer activity that would support a

meaningful plan. The Debtors are using procedural delays without demonstrating the

viability of a true reorganization.

18. Drexel and potentially other creditors are being prejudiced. Every day Prophase

maintains exclusivity; it continues to delay any creditor-driven resolution or liquidation

path. This delay is particularly damaging given the emerging evidence of misappropriated

reimbursements and possibly altered billing practices which form the core of Drexel's

claims.

19. The exclusivity extension request is a strategic delay tactic. These Debtors have already

had **109** days with legal representation to advance a plan. Yet, they provide no outline of

a proposed reorganization or plan terms.

20. In *In re Geriatrics Nursing Home, Inc.*, the District Court for the District of New Jersey

affirmed the bankruptcy court's denial of the Debtor's motion to extend the exclusivity

4918-5116-0461, v. 1

period and rejected the notion that creditor dissatisfaction alone established "cause." The

court reaffirmed that the bankruptcy court has broad discretion, but that such discretion is

bounded by the statutory requirement that a genuine showing of "cause" exist to extend

exclusivity. *Geriatrics Nursing Home*, 187 B.R. at 132–34; see also *First Am. Bank of*

*N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) (noting

exclusivity extension is within bankruptcy court's discretion but requires case-specific

demonstration of cause).

### III. CONCLUSION

WHEREFORE, Drexel respectfully requests that the Court (i) Deny the Debtors' Motion

to Extend the Exclusivity Period to File a Plan; (ii) in the alternative limit such extension

to sixty (60) days; and (iii) grant such other relief that the Court deems appropriate.

> Respectfully submitted,
>
> STARK & STARK
> A Professional Corporation
>
> By:/s/ *Joseph H. Lemkin*
>    JOSEPH H. LEMKIN, ESQ.

Dated: February 3, 2026

4918-5116-0461, v. 1