**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey  08540
(908) 704-8800
*Attorney for the Debtors*

| | |
|---|---|
| In re:<br><br>ProPhase Diagnostics NJ, Inc., *et al.*,<br><br>                                        Debtors. | Case No.: 25-19833-CMG<br>Chapter 11 Reorganization<br>Judge: Gravelle<br>Hearing Date: 02/10/2026, 2:00pm<br><br>Jointly Administered |

## DEBTORS' RESPONSE TO
## THE "JOINDER" PAPERS FILED BY
## CREDITOR DREXEL DISTRIBUTION IN SUPPORT OF
## THE U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS

## Introduction

**(1)** Creditor Drexel Distribution Inc. ("Drexel") on February 2, 2026 filed on the within case docket 242(!) pages [*ECF #69*] of "supporting papers" purportedly "in support of" the U.S. Trustee's 10-page Motion to Convert or Dismiss [*ECF #59]* filed January 13, 2026.

**(2)** Debtors respectfully note that in this response and opposition to Drexel's February 3, 2026 "joinder" papers (the "Drexel joinder motion"), the Debtors also rely on the Certification of Debtor's Counsel filed in response to the U.S. Trustee Motion to Convert or Dismiss.

**(3)** There is nothing in the rules providing for a "Joinder" motion under that nomenclature, and if Drexel simply intends to be filing papers in support of the U.S. Trustees' 10-page motion, Drexel should be limited to supporting the issues raised in that 10-page Motion — not filing what is in effect a new and separate 242-page mega-motion [*ECF #69*] of Drexel's own, which raises issues that go far, far beyond anything raised in the United States Trustee's succinct 10-page Motion [*ECF #59*] which Drexel purports to be "joining"

**(4)** Given that Drexel filed its de facto new Motion at 8:00pm, just 7-1/2 days before its proposed hearing date, the Debtors respectfully reserve their rights to supplement this Response to same. It is also noteworthy that other Creditors and Parties in Interest who might wish to respond to the Drexel "joint motion" have also had almost no time to respond to same.

**(5)** *<u>Please Note:</u>* the undersigned respectfully notes that none of the following observations (as to the late-evening 8:00pm filing of what is in effect a brand-new 242-page "joinder motion" just 7-1/2 days before the hearing, date, nor any of the observations below as to the simple fact that Drexel as the moving party simply dramatically overlooked incontrovertible key facts in the case and thus based its entire Motion on two enormous Mistakes of Fact) should <u>NOT</u> in any circumstances, in any way whatsoever, be viewed as an *ad hominem* attack on movant Drexel's very able and learned counsel.

**(6)** Rather, in that regard, we understand and respect that Drexel's counsel is simply zealously representing his client, after what we were advised was a serious family medical emergency for said counsel — it is perfectly understandable that under emergent family circumstances like that something a major factual oversight can occur. Mistakes happen. We entirely respect that, and we certainly respect Drexel's learned and experienced counsel, with whom we have had a collegial relationship.

**(7)** On the other hand, the Debtors should not be cast in a false light by a last-

minute "joinder motion", <u>the entire gravamen of which "joinder motion" is almost entirely based on two flat-out Mistakes of Fact, as addressed in more detail below</u>.

## Procedural concerns

**(8)** The Rules provide for **14 Days** to respond to a Motion and, notably, in the instant case, Chief Judge Gravelle at the January 13, 2026 Status Conference directed that the Trustee Motion would be heard February 10, 2026, thus affording additional time for the Debtor to respond to same. If Drexel is permitted to, after hours, late in the evening of February 2, 2026, file what is practically speaking a massive new 242-page motion leaving only **1 single day** (rather than the standard 14 days) for the Debtor to respond, works an enormous procedural prejudice to the Debtors, which should not be condoned by this Court.

**(9)** The Debtors, as set forth below, submit that the Drexel "new joinder motion" is not only procedurally but also substantively unfounded, and can therefore be <u>Denied</u> by this Court on its merits, particularly given the Mistakes of Fact upon which the Motion is based. If, however, this Court is not prepared to now deny this new 242-page "joinder motion" then the Debtors respectfully submit that Drexel should be required to re-file same as a separate Motion, on not less than the standard 21-day notice and briefing schedule.

## Argument

### DREXEL'S "JOINDER" MOTION IS BASED ON
### TWO VERY SIGNIFICANT MISTAKES OF FACT

*Drexel's Mistake of Fact #1:*

**(10)** At Paragraph 29 of its "Joinder" document [ECF #69] Drexel makes the following rather astonishing allegation, with the Bold Italicized Emphasis in Drexel's original doc [ECF #69], which allegation is incontrovertibly FALSE:

> 29. Pro-Phase Labs has publicly stated that proceeds generated through the Debtors' diagnostics-related

> collections (including through the use of a collection agency known as Crown Medical Collections, purportedly working on behalf of the Debtors ***without Court approval***) **are** expected to fund parent-level initiatives and other business-lines, to the detriment of Debtors' creditors, further reflecting an abuse of the bankruptcy process and a total lack of independent subsidiary operations.
> [Drexel joinder" document, at *ECF #69*, paragraph 29, <u>with the Bold Italicized Emphasis IN THE ORIGINAL</u>]

**(11)** The problem with this rather astonishing allegation, is that the accusation of Crown Medical's efforts being "***without court approval***" (emphasis in the original) IS THAT IT **<u>IS SIMPLY NOT TRUE.</u>**

**(12)** **<u>The truth is that Crown Medical is of course very much acting entirely WITH Court Approval</u>**, having been the subject of an <u>Application for Appointment of Professional</u> [*ECF #21*] and having further been the subject of a detailed six-page retention <u>Order Granting Application to Employ Professional Crown Medical Collections LLC as Special Counsel</u> [*ECF #41*].

### *<u>Drexel's Mistake of Fact #2:</u>*

**(13)** At Paragraph 31 of its "Joinder" document [ECF #69] Drexel makes the following rather astonishing allegation, which allegation is also incontrovertibly false:

> 31. Through the Debtors' failure to meaningfully participate in this case, as well as their fraud on the government and/or insurers through collections and their failure and/or refusal to pay ProPhase's creditors, **and their efforts to upstream estate assets to the detriment of their creditors**, the Debtors have demonstrated a complete inability and unwillingness to perform the duties of a

>debtor-in-possession, instead frustrating the purpose of these bankruptcy cases.
>
>[Drexel joinder" document, at *ECF #69*, paragraph 31.

(emphasis added)

**(14)** **<u>The truth is that all Creditors are fully protected by the Order previously entered by this Court</u>** [*ECF #41*]. Drexel's fears, and Drexel's unfounded allegation, that the Debtors are somehow free to just "upstream estate assets" [*i.e.*, the insurance accounts receivable proceeds] to the parent company, while failing and refusal to pay ProPhase's creditors, is also **SIMPLY NOT TRUE.**

**(15)** The reality is that the Debtors are certainly NOT free to just, willy-nilly, "upstream" the insurance receivables receipts recovered by Crown Medical!

**(16)** Rather, the Court Order appearing at *ECF #41* very clearly and strictly constrains the Debtors and Crown Medical to deposit ALL of those insurance receivables into an escrow account, not to be touched nor disbursed from, pending further Order of this Court. Those receivables must first go to pay all Allowed Claims obligations 100% in full, and it is only after all Allowed Claims are paid 100% in full, that any Excess Proceeds could possibly inure to the benefit of the Debtors.

**(17)** Paragraphs 8 and 9 of the <u>Order Granting Application to Employ Professional Crown Medical Collections LLC as Special Counsel</u> [*ECF #41*] are very straightforward as to the fact that Drexel and any other creditors can rest, assured that the Debtors have NO powers to "upstream" the collected Accounts Receivables to anybody! Those receivables are defined to as "the Referred Accounts" in the Order at *ECF #41*, which plainly states at paragraphs 8 and 9, in pertinent part, the requirements that

>8. ... the Referred Accounts will be deposited into a Debtor-in-Possession Trust Account held by the Debtors at a bank that is or has agreed to be a uniform depository bank with the US Trustee for Region 3, subject to further disbursement

and remittance to Crown, and to the Debtor or allowed administrative claims in this case, **only upon application to and approval by the Court**

9. . . . . no payments are to be made to Crown including any Contingent Fee unless such fees are approved by the Court. **All payments shall be paid only to the designated Debtor-in- Possession Trust Account, and held in such account until any disbursement to Crown or the Debtor is approved upon further Order of the Court.**

[Order Granting Application to Employ Professional Crown Medical Collections LLC as Special Counsel [*ECF #41*]

(emphasis added]

## Drexel's Fears are Therefore Groundless

**(18)** The gravamen of Drexel's "joinder motion" is based on two primary factors:

**(A)** Drexel's mistaken fears that Crown Medical was never appointed by the Court (NOT TRUE; Crown was definitely appointed, see *ECF #21* and *ECF #41*) and

**(B)** Drexel's mistaken fears that Crown Medical is therefore acting without any guardrails and is therefore free to, unfettered, "upstream" its collected funds to the Debtors while skipping over the allowed claims of the Creditor base. (NOT TRUE; Crown Medical actually has very strict guardrails, see the detailed six-page Court Order at *ECF #41*).

**(19)** Drexel's fears are therefore groundless, and the entire raison d'être for Drexel's "joinder motion" is therefore without foundation.

**(20)** The Drexel joinder motion mistakenly assumes that this Court has failed to address these concerns, but rather this Court in fact HAS in fact carefully addressed the

very concerns which Drexel mistakenly believed this Court failed to address, by way of the detailed Order entered at *ECF #41*,

**(21)**  The Drexel joinder motion also mistakenly assumes that the U.S. Trustee Chapter 11 Trial Attorney failed to address those concerns, but rather the Office of the U.S. Trustee, by and through UST/DOJ Trial Attorney Jeffrey M. Sponder Esq., HAS in fact carefully addressed the very concerns which Drexel's "joinder motion" mistakenly believed were not addressed, by way of Mr. Sponder's very extensive negotiations with Debtors' Attorney in order to ensure that precisely those concerns now mistakenly raised by Drexel were in fact addressed at the outset of this case, by way of the Crown retention application and the Crown retention order.

**(22)**  Drexel, and any other creditors, are therefore fully protected by the Order which Mr. Sponder and Debtor's counsel carefully and meticulously negotiated and crafted, which Order this Court then entered.  The Movant Drexel is therefore at no risk whatsoever as to its fears over the ultimate disposition of the funds collected by Crown Medical, a duly appointed professional in this case.

## Additional Issues

**(23)**  Due to the time constraints of Debtors and their counsel having had only one day to respond to Drexel's 244-page "joinder motion", this response will further just briefly address some additional issues, with the Debtors, again, reserving their right to further supplement this response.

**(24)**  As the Zormati Certification accompanying Drexel's "joinder motion" actually admits, while the joinder motion makes repeated references to a supposed "$1,654,222" claim, it is very noteworthy that in the adjudication of Drexel's summary motion in the state court, Drexel was only awarded $127,325, just 7.7% of its total $1,654,222 demand.  Thus 92.3% of Drexel's summary judgment demand was Denied by the Court, as $127,325 was granted, and $1,526,897 was denied at the Summary Judgment

stage (and even the $127,325 summary judgment is subject to appeal).With anticipated total Allowed Claims of approximately $14.0 Million in these jointly administered cases, Drexel's $127,325 Summary Judgment is less than 1% of the creditor base. (This is relevant because Drexel's filing at 8:00pm just 7-1/2 days before the February 10 hearing date what is in effect a brand-new 244-page "joinder motion" not only prejudices the Debtors, but also prejudices any other Creditors and parties in interest who might wish to respond to or oppose Drexel's motion).

**(25)** It is not clear exactly why Drexel's "joinder motion" includes attached pages of Discovery demands promulgated by Drexel, as returnable January 30, 2026. It should be noted, that as addressed in the Debtor's Certification filed in response to the original U.S. Trustee Motion, the Debtors collegially communicated with Drexel's attorney in regard to those Discovery requests, learned that Drexel's attorney had been away due to a grave family medical emergency, and <u>the Debtors on January 29, 2026 (in advance of their January 30, 2026 due date) produced to Drexel a total of 3,297 pages of Bates-stamped documents, plus 40 additional large documents</u>, and proposed to Drexel the rescheduling of the January 30, 2026 deposition date, after the original date was postponed due to both a medical emergency in Drexel's counsel's family, and a family Funeral involving the Debtors' counsel. Further, <u>the Debtors already appeared for a two-day Deposition</u> in Drexel's underlying state court action. See the Certification in Opposition to the U.S. Trustee Motion.

## Further Legal Issues

**(26)** It is also noteworthy that the same accusations Drexel is here rather feverishly advancing in its "joinder motion" regarding supposedly mis-handled laboratory efforts and inspections involving emergent Covid Testing performed under trying conditions on emergent notice amid a world-wide Pandemic, were essentially the same accusations that were the basis of the Qui Tam action in U.S. District Court, E.D.N.Y.,

where it is a matter of record on the court docket that, notably, the United States, and the State of New York, and the State of New Jersey, have all formally filed a Notice of Declination after investigating the accusations and finding no reason to proceed with the case. Accordingly, those accusations, which can not be fully responded in regard to a 244-page "joinder motion" filed just 1 day ago, can therefore be taken with more than the proverbial grain of salt.

**(27)** It is also noteworthy that the Drexel "joinder motion" has met NONE of the sixteen standards for "cause" to Convert to Chapter 7 as set forth at **11 U.S.C. §1112 4(a) through 4(P)**. Not one of those sixteen standards has been shown by Drexel to apply here. None.

## Conclusion

**(28)** Based on the foregoing reasons, and those set forth in the filed Certification in Opposition to the U.S. Trustee Motion, it is respectfully submitted that the Motion, including the additional issues raised in the Drexel "joinder', should be denied.

                                          Respectfully submitted,

                                          MACIAG LAW, LLC

                                          /s/ Thaddeus R. Maciag
                                        Thaddeus R. Maciag, Esq.
Date: February 3, 2026                 Attorney for the Debtors