**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
*Attorney for the Debtors*

| | |
|---|---|
| In re:<br><br>ProPhase Diagnostics NJ, Inc., *et al.*,<br><br>　　　　　　　　　　　　Debtors. | Case No.: 25-19833-CMG<br>Chapter 11 Reorganization<br>Judge: Gravelle<br><br>Jointly Administered |

**CERTIFICATION OF RICHARD HERSPERGER**
**OF CROWN MEDICAL COLLECTIONS LLC**
**IN SUPPORT OF**
**DEBTORS' MOTION TO EXTEND EXCLUSIVITY**
**AND IN OPPOSITION TO**
**U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS**

Richard Hersperger, of full age, hereby certifies and says:

**(1)** I am a principal of Crown Medical Collections LLC ("Crown), an appointed Professional of the jointly administered Debtors; as such, I am familiar with the facts of this Certification, which I make in support of the Debtor's Opposition to the pending Motion to Convert or Dismiss, and in support of the Debtors' Motion to Extend

Exclusivity.

**(2)** Crown Medical Collections ("Crown") respectfully submits this correspondence to apprise the Court of the nature, scope, and current status of its engagement as special counsel to ProPhase Diagnostics, Inc. (the "Debtor") in connection with the recovery of outstanding insurance reimbursements arising from COVID-19 diagnostic testing.

**(3)** Crown was formally retained as special counsel to the Debtors in late November, since that time, has implemented a sophisticated, attorney-driven recovery process designed to maximize recoveries for the estate while preserving and enhancing the Debtor's value as a going concern. Crown's efforts are ongoing, active, and material to the Debtor's reorganization prospects.

**(4)** The scope and structure of Crown's retention as a professional for the Debtors is not passive, ministerial, or administrative in nature. Rather, Crown's engagement it involves a structured, scalable legal process staffed by a dedicated team of ten (10) actively engaged collection professionals and in-house attorneys, each experienced in insurance reimbursement disputes and complex healthcare claims negotiation.

**(5)** This Crown team is currently managing and negotiating more than two hundred (200) individual matters with commercial insurance carriers nationwide, and is working closely with the Debtors' staff in working with the data and information needed to process and coordinate the 814,836 claims that Crown is pursuing.

**(6)** Each matter involves insurer-specific analysis, claim validation, demand

development, and negotiation at multiple levels within the carrier organizations. Crown's process is designed to address carrier resistance, leverage applicable contractual and regulatory obligations, and move claims toward negotiated resolution wherever feasible, while preserving litigation readiness when necessary.

**(7)** Although Crown's retention commenced only recently, its efforts have already resulted in the Debtors having made meaningful progress across a very substantial volume of claims. Matters that had previously stalled or remained unresolved are now actively under negotiation, with insurance carriers engaged through formal legal demand channels rather than routine billing or collection workflows.

**(8)** As of the date of this Certification:

   **a)** Approximately 814,386 claims are under active negotiation;

   **b)** Those 814,836 claims involve 231 insurance carriers;

   **c)** Those 814,836 claims represent a total potential recovery value of approximately $146,589,569.15, which Crown Medical and the Debtors are projecting as **$88,022.638.55** as collectible from Crown's efforts.

**(9)** These negotiations are ongoing, dynamic, and expected to continue producing recoveries over time as settlement discussions mature.

**(10)** The successful progress in just the first several weeks – less than three months since Crown's retention underscore the progress the Debtors have been making toward a successful Reorganization.

**(11)** Crown's work is directly aligned with the Debtor's objective of maximizing estate value for the benefit of creditors. The insurance receivables at issue constitute a

significant potential source of recovery, and their realization depends heavily on continuity, institutional knowledge, and sustained legal pressure applied by experienced counsel familiar with the claims history and carrier practices.

(12) A conversion of this case to Chapter 7 at this stage would materially jeopardize these recoveries. Such a conversion would almost certainly result in:

    a) The disruption or abandonment of ongoing negotiations;

    b) The loss of accumulated claim-specific knowledge and insurer engagement momentum;

    c) Sharply reduced settlement leverage; and

    d) a substantial diminution in recoverable value for the estate.

(13) By contrast, maintaining this matter as a Chapter 11 debtor-in-possession case preserves the operational and legal framework necessary to continue these negotiations to conclusion and to maximize recoveries that would otherwise be lost or significantly impaired.

## Conclusion

(14) Crown's efforts are active, substantial, and ongoing. Those efforts reflect a coordinated legal and financial strategy aimed squarely at recovering meaningful value for the estate through negotiated resolutions with insurance carriers. These efforts require time, continuity, and the preservation of the Debtor's current posture to reach their full potential.

(15) For these reasons, Crown respectfully submits the continuation of this case under Chapter 11 materially advances the interests of the estate and its creditors, and

Crown therefore submits that the Motion to Extend Exclusivity should be granted, and that the Motion to Convert or Dismiss should be denied.

    I hereby certify that the foregoing facts stated by me are true to the best of my information, knowledge and belief; I am aware that if they are wilfully false, I am subject to punishment.

/s/ Richard Hersperger
Richard Hersperger
Crown Medical Collections

Date: February 4, 2026