**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
*Attorney for the Debtors*

| | |
|---|---|
| In re: | Case No.: 25-19833-CMG |
| | Chapter 11 Reorganization |
| ProPhase Diagnostics NJ, Inc., *et al.*, | Judge: Gravelle |
| Debtors. | Jointly Administered |

**CERTIFICATION OF TED KARKUS**
**IN SUPPORT OF**
**DEBTORS' MOTION TO EXTEND EXCLUSIVITY**
**AND IN OPPOSITION TO**
**DREXEL'S "JOINDER" FILINGS**
**AND MOTION TO CONVERT OR DISMISS**

TED KARKUS, of full age, hereby certifies and says:

I am CEO of the jointly administered Debtors in this case, as such I am familiar with the facts of this Certification.

**(1)** I make this Certification in rebuttal to Drexel Distribution LLC ("Drexel")'s Opposition to the Debtor's Motion to Extend Exclusivity and in opposition to Drexel's "joinder motion" which was essentially a brand-new 244-page motion only filed late in the evening of February 2, 2026, little more than 7 days before the February 10, 2026 hearing date on the infinitely simpler 10-page Trustee Motion (all conditions of which Trustee Motion were satisfied a week prior to the hearing date).

**(2)** I wish to draw the Court's attention to two key issues, which I believe Drexel has

misstated in its filings with this Court:

> **Point 1:**  The Debtors are NOT merely "collecting receivables" but have specific plans to reopen and continue the Debtors' laboratory facilities as soon as funds come in from the Accounts Receivables collections or perhaps DIP Financing
>
> **Point 2:**  Drexel's inflated Claim of $1,654,222 is VERY much unliquidated and disputed. As noted in ProPhase's papers filed February 3, 2026 [*ECF #86*] in Drexel's underlying state court action 92.3% of its Summary Judgment motion was **Denied** by the court! Drexel was only granted judgment for just $127,325 of its $1,654,222, as $1,526,897 (92.3%) of its Summary Judgment demand was denied. There is a reason why that happened — because, as detailed below, Drexel comes to this matter with very much unclean hands; ProPhase has vigorously defended the Drexel state court action, ands ProPhase is confident of winning at Trial.

## POINT I

**The Debtors Are NOT merely "collecting receivables" in a liquidation scenario, but have specific plans to successfully reorganize, and to utilize the recovered accounts receivable funds to swiftly relaunch and reactivate thee Debtors' laboratory operations**

**(3)**  The Debtors in late 2025 identified a market opportunity in the area of esophageal cancer diagnostics, and per ***EXHIBIT A*** and ***EXHIBIT B*** attached to this Certification, and have detailed plans in place to re-launch and re-activate the Debtors' diagnostic laboratories operations.

**(4)**  The esophageal cancer diagnostics market represents a critical unmet need. Esophageal cancer is one of the deadliest malignancies, with 20,000+ new U.S. cases annually. Barrett's Esophagus, a precursor to Esophageal Adenocarcinoma (EAC), remains underdiagnosed.

**(5)**  Esophageal Cancer is one of the deadliest cancers with ~20,000 new U.S. cases annually and ~16,000 deaths.

**(6)**  Barrett's Esophagus is a Precursor lesion affecting ~18M Americans, often

undiagnosed.

**(7)** The At-Risk Population is significant. An estimated 67 Million U.S. adults fall into high-risk categories (chronic GERD, obesity, smoking, family history).

**(8)** The Current Standard of Care is that more than 7 Million endoscopies are performed annually in the U.S., at an average cost of $1,000–$2,000 per procedure.

**(9)** The total addressable market for ProPhase Diagnostics in regard to esophageal cancer diagnostics is projected at $7.0 Billion to $14.0 Billion per year per year domestically, with further international expansion potential.

**(10)** Attached as *EXHIBIT B* to this Certification is a written description of the Debtors' relaunch plan in the area of esophageal cancer testing.

**(11)** Attached as *EXHIBIT A* to this Certification are pages from a presentation as to this anticipated market for ProPhase Diagnostics a soon as sufficient funds are recovered by Crown Medical Collections to pay Allowed Claims, then to enable successful reorganization into this new diagnostic laboratories market regarding esophageal cancer testing

## POINT II

**Drexel's claim is <u>very</u> much contingent, unliquidated and disputed, and Drexel comes to this dispute with very much unclean hands. ProPhase Diagnostics has vigorously defended the Drexel state court action. ProPhase Diagnostics successfully prevailed on 92.3% of Drexel's claims at the Summary Judgment stage, and ProPhase is confident of prevailing.**

**(12)** Drexel is <u>not</u> by any means an undisputed creditor; rather, its claim is very much disputed and has been hotly contested in the underlying state court litigation.

**(13)** Drexel has asserted an aggregate claim of $1,654,222, arising out of a failed laboratory relationship which disintegrated amid very serious controversy

**(14)** That controversy involved material performance issues with Drexel, non-compliant billing by Drexel, and disputes over whether Drexel's services were properly performed and

reimbursable.

**(15)** Notably, at the State Court Summary Judgment hearing, Drexel had demanded an absurdly inflated Claim of $1,654,222, yet the Court only awarded Drexel $127,325, just 7.7% of Drexel's total claim, and less than 1% of the total creditor base in these jointly administered cases. ProPhase believes it will prevail even on that small $127,325 on appeal.

**(16)** The majority of Drexel's claim remains highly disputed, and is subject to ProPhase Diagnostics'defenses and counterclaims. ProPhase Diagnostics' defenses involve Drexel's contract breaches, Drexel's compliance issues, and offsets, and offsets due ProPhase disputes even that limited determination and has not yet had the opportunity to appeal or fully litigate it.

**(17)** ProPhase Diagnostics' counterclaims and defenses go as to what ProPhase Diagnostics believe was misconduct and breach of contract by Drexel

**(18)** The failed relationship between ProPhase Diagnostics and Drexel, was marked by Drexel's contract breaches, improper billing, regulatory non-compliance, and litigation tactics designed to create leverage rather than resolve disputes on the merits.

**(19)** ProPhase's defenses and counterclaims vs. Drexel include the following:

> **a)** **Breach of Contract:** Drexel failed to perform material obligations under the laboratory testing arrangements. Required deliverables were incomplete, non-conforming, or operationally unusable, yet Drexel nevertheless asserted payment demands as if performance were complete and compliant.
>
> **b)** **Improper and Non-Compliant Billing Practices:** Drexel invoiced ProPhase Diagnostics for testing services that <u>did not meet applicable payer and regulatory requirements</u>, including services that were not reimbursable under governing rules. These practices exposed ProPhase Diagnostics to <u>payer denials, clawbacks, audits, and regulatory risk</u>, while Drexel attempted to externalize that risk and still demand full payment.
>
> **c)** **Drexel presented invoices for incomplete or unusable Services** Drexel's Invoices include charges for services that were: (1) not properly performed,(2) not

fully delivered, or (3) unusable for ProPhase's intended purposes — yet Drexel sought to collect for same (and in its litigation is still seeking to collect for same ) notwithstanding contractual requirements tying payment to proper performance.

**(20)** Rather than addressing these significant performance and compliance defects on the merits, Drexel has pursued an aggressive litigation strategy designed to extract value through procedural leverage in the state court litigation, and Drexel now continues that tactic by supporting conversion to Chapter 7 with a tactical eleventh-hour 244-page "joinder motion" which has left ProPhase Diagnostics with almost no time to respond. That outcome would extinguish ProPhase's affirmative defenses and counterclaims, and would improperly reward Drexel's inappropriate tactics.

**(21)** Drexel's claim is therefore very much contingent, unliquidated and disputed. A conversion to Chapter 7 would destroy estate value, not enhance preserve it. The Debtors' estates hold affirmative causes of action and offsets against Drexel that require active prosecution.

## Conclusion

**(22)** For the above reasons, I respectfully submit that the Debtors remaining in Chapter 11 Reorganization is therefore necessary to preserve and protect estate value, pursue counterclaims, and prevent Drexel's unjust enrichment through its aggressive procedural tactics and last-minute filings.

**(23)** I further respectfully submit that for the foregoing reasons, and in reliance on the factual and legal arguments set forth in the Debtors' previously filed papers of record [*ECF #s 59, 86 and 88*], that the continuation of this case under Chapter 11 is in the best interest of the Debtor's estates, and that the Debtors' Motion to Extend Exclusivity [*ECF #56*] should be Granted, and that the Motion to Convert or Dismiss [*ECF #59*] (inclusive of Drexel's subsequent last-minute "joinder" filing [ECF #69] ) should be Denied.

I hereby certify that the foregoing facts stated by me are true to the best of my information, knowledge and belief; I am aware that if they are wilfully false, I am subject to punishment.

Date: February 6, 2026

/s/ Ted Karkus
Ted Karkus