**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
*Attorney for the Debtors*

| | |
|---|---|
| In re:<br><br>   ProPhase Diagnostics NJ, Inc.,<br><br>                              Debtor. | Case No.: **#25-19833-CMG**<br>Chapter 11 Reorganization<br>Judge: Hon. Christine M. Gravelle |
| In re:<br><br>   ProPhase Diagnostics NY, Inc.,<br><br>                              Debtor. | Case No.: **#25-19834-CMG**<br>Chapter 11 Reorganization<br>Judge: Hon. Christine M. Gravelle |
| In re:<br><br>   ProPhase Diagnostics, Inc.,<br><br>                              Debtor. | Case No.: **#25-19836-CMG**<br>Chapter 11 Reorganization<br>Judge: Hon. Christine M. Gravelle |
| (Jointly Administered) | Hearing Date: May 5, 2026 |

**DEBTORS' MOTION**

**FOR ENTRY OF AN ORDER PURSUANT TO  11 U.S.C. § 1121(d)**

**EXTENDING THE JOINTLY ADMINISTERED DEBTORS'**

**EXCLUSIVE PERIODS TO FILE PLANS OF REORGANIZATION**

**AND TO SOLICIT ACCEPTANCES THERETO**

**<u>Introduction</u>**

**(1)**     <u>Motion to Extend the Jointly Administered Debtors' Exclusive Periods to File</u>

Plans of Reorganization And to Solicit Acceptances thereto.  The three above-captioned Chapter 11 Debtors-in-Possession: ProPhase Diagnostics NJ, Inc., ProPhase Diagnostics NY, Inc., and ProPhase Diagnostics, Inc. (collectively, the "**Debtors**"), on September 22, 2025 filed separate Petitions for Reorganization under the case numbers as captioned hereinabove, and now by way of this Motion entry of an Order Extending the Debtors' Exclusive Periods to File Plans of Reorganization and to Solicit Acceptances by an additional 60 days**.**

## Jurisdiction and Venue

(2)     The United States Bankruptcy Court for the New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered on July 23, 1984, and amended on June 6, 2025 (Hon. Renée Marie Bumb, Chief Judge, United States District Court, D.N.J.) (the "**Standing Order**").

(3)     This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

(4)     Venue is proper in this District pursuant to 28 U.S.C. §1334(b), §1408, and §1409.

(5)   The statutory and procedural predicate for the relief here requested is 11 U.S.C. § 1121(d).

(6)     No prior request for the relief sought in this Motion has been made to this or any other court in connection with the Chapter 11 case.

(7)     **Jointly Administered Debtors.**  The three instant Debtors' respective cases are presently jointly administered per this Court's Amended Order for Joint Administration entered September 30, 2025.

**(8)**  As Ted Karkus, who serves as CEO of the Debtors in each of the three jointly administered cases, has certified in his certification accompanying this Motion (the "*Karkus Certification*") filed herewith, it is in the best interest of the Debtors and the Debtors' Estates to extend the Exclusivity Period by an additional 60 days,

### Summary of Motion

**(9)**    The three Debtors in the above-captioned Chapter 11 Cases respectfully state the following in support of this motion (the "Joint Motion"), and rely upon and incorporate by reference the *Abenante Certification* filed concurrently herewith.

**(10)**    On September 22, 2025 (the "Petition Date"), each of the Debtors commenced a voluntary case by filing a Petition for Reorganization under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

**(11)**    Pursuant to §1107(a) and §1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their financial affairs as Debtors in Possession.

**(12)**    No request for the appointment of a Chapter 11 trustee or examiner has been made, nor has any statutory committee been appointed or designated, in the Chapter 11 Cases.

### Specific Relief Requested

**(13) Relief Sought**:  The three above-captioned jointly administered debtors (the "Debtors") move the Court, pursuant to section 1121(d) of the Bankruptcy Code, for an order: (a) extending the period during which the Debtor has the exclusive right to file a plan of reorganization (the "Exclusive Filing Period") by an additional **60 days**, through and including July 20, 2026, and (b) extending the period during which the Debtor has the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods"), through and including September 18, 2026, being **60 days** after the expiration of the Exclusive Filing Period, as here extended. In support of this Joint Motion, the Debtor rely on the facts set forth in the accompanying *Karkus Certification*, and on the legal argument presented hereinbelow. The Debtors request entry of an order, substantially in the form of the Proposed Order filed with this Joint Motion.

**(14)** Since the commencement of this Chapter 11 case just over six months ago, the jointly administered Debtors have made considerable progress on a variety of issues, as set forth in the accompanying *Karkus Certification.*

**(15)** The Code and applicable case law make plain that, in Chapter 11 cases such as this one, exclusivity can and should be extended, especially where the Debtor is actively moving the case forward. The Debtor respectfully submits that the Court should grant the requested extensions of the Exclusive Periods.

<u>**Request for Extension of Exclusive Periods, and Grounds for Relief**</u>

**(16)** Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a Plan of Reorganization during the first 120 days after the commencement of a chapter 11 case (i.e., the Exclusive Filing Period). If a debtor files a Plan during this exclusive filing period, section 1121(c)(3) of the Bankruptcy Code grants the debtor an additional 60 days during which the debtor may solicit acceptances of that plan, and no other party in interest may file a competing plan (i.e., the Exclusive Solicitation Period).

**(17)** In the three instant jointly administered cases, the , the Exclusive Filing Period currently expires on May 21, 2026, and the Exclusive Solicitation Period expires on July 20, 2026.

**(18)** Section 1121(d) of the Bankruptcy Code provides that the Court may, "for cause," extend these periods: "[o]n request of a party in interest . . . and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. §1121(d). Although the Bankruptcy Code does not define "cause," a number of courts have construed the term based on an examination of the Bankruptcy Code's underlying legislative history. See, e.g., *Bunch v. Hoffinger Indus., Inc.* (*In re Hoffinger Indus., Inc.*), 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003); *Cont'l Casualty Co. v. Burns & Roe Enters., Inc.* (In *re Burns & Roe Enters., Inc.*), No. 00-41610, 2005 WL 6289213, at *3-4 (D.N.J. Nov. 2, 2005); *In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D.N.J. 1993). As discussed below, the legislative history of section 1121(d)

and applicable case law support the Debtor's requested extension of the Exclusive Periods.

**(19)**    In determining whether cause exists for an extension of a Debtor's Exclusive Periods, courts have relied on a variety of factors, <u>any one</u> or more of which may constitute sufficient grounds for extending the periods. See *In re Cent. Jersey Airport Servs., LLC,* 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (finding that "granting or denial of [extension] request is within the discretion of the bankruptcy court" and listing various factors considered in determining whether debtor has shown cause to justify the grant of an extension); *Hoffinger*, 292 B.R. at 644 ("**It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each**."); *In re Homestead Partners Ltd.*, 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996) (emphasis added) (applying only those factors specifically relevant to the case at hand).

**(20)    Thus, the Debtors need not show that all of the nine factors listed in the paragraph 21 hereinbelow are present, but the Court need only find that one or more of them exist.** ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each.**"**); *In re Homestead Partners Ltd.*, 197 B.R. 706, 720 (Bankr. N.D. Ga. 1996) (applying only those factors relevant to the case at hand). See also, e.g., *Hoffinger*, 292 B.R. at 644-45; *Cent. Jersey Airport Servs*., 282 B.R. at 184; *In re Lichtin/Wade, L.L.C.*, 478 B.R. 204, 210 (Bankr. E.D.N.C. 2012); *In re Adelphia Commc'ns Corp*., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Grand Traverse Dev. Co. Ltd. P'ship*., 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); *In re Gen. Bearing Corp*., 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992); *In re Gibson & Cushman Dredging Corp*. 101 B.R. 405, 409-10 (E.D.N.Y. 1989).

**(21)**    The factors to be considered by the Court include in making the determination whether to Extend the Exclusive Periods include:  "1.) the size and complexity of the case, 2.) the necessity of sufficient time to negotiate and prepare adequate information, 3.) the existence of good faith progress, 4.) whether the debtor is paying its debts as it becomes due, 5.) whether the debtor has demonstrated reasonable prospects for filing a viable plan, 6.) whether the

debtor has made progress negotiating with creditors, 7.) the length of time a case has been pending, 8.) whether the debtor is seeking an extension to pressure creditors, and 9.) whether or not unresolved contingencies exist." *In re Cent. Jersey Airport Servs., LLC, supra.,* 282 B.R. at 184.

**(22)** Factors relevant to the determination of the instant Motion include at least 6 factors of the 9 factors set forth in the caselaw: (#1) the size and complexity of the case; (#2) the necessity of sufficient time to negotiate and prepare adequate information; (#3) the existence of good faith progress; (#5) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (#7) the length of time a case has been pending, and (#9) whether unresolved contingencies exist.

**(23)** As addressed at Section 6 of the accompanying Karkus Certification filed with this Motion, the Debtors meet at least six of the nine factors:

**A)** As to factor #1 **"the size and complexity of the case"**: This case involves a gross insurance receivables portfolio now valued at **$201.2 million** across 649,205 individual claims and 194 open matters, as set forth in the most recently Amended Schedules. The case also involves pending adversary proceedings of increasing complexity, including a qui tam False Claims Act complaint filed on behalf of the United States, the State of New York, and the State of New Jersey (the "Hennrick Action"), the government's investigation of which has now concluded without federal intervention — a significant development addressed further in paragraph 6(F) herein below.

**B)** As to factor #2 **"the necessity of sufficient time to negotiate and prepare adequate information"**: Crown Medical Collections ("CMC"), the Court-retained Special Counsel under 11 U.S.C. §§ 327 and 328, requires sufficient time to advance settlement negotiations with insurance carriers on the Debtors' insurance receivables portfolio. As of this filing, CMC has issued formal demand correspondence on $121.3 million across 131 open matters, and **$79.9 million is currently in active settlement negotiations** across 63 matters with multiple major national and regional carriers. CMC

projects a net recovery to the estate of $50 million to $60 million after its court-approved 30% contingency fee. These negotiations, by their nature, involve numerous parties, carriers, and counsel, and require adequate time to advance to conclusion.

**C)**    As to factor #3 **"the existence of good faith progress"**, the Debtors submit that the progress detailed in this Certification, including the CMC recovery metrics set forth herein, demonstrate substantial good faith progress. Notably, the net value of the estate's accounts receivable has grown from $32.3 million at the time of filing to $83.5 million as reflected in the most recently Amended Schedules — a direct result of CMC's ongoing collection and negotiation efforts.

**D)**    As to factor #5 **"whether the debtor has demonstrated reasonable prospects for filing a viable plan"**: The Debtors are actively engaged in securing **litigation-backed receivable financing of $6,000,000**, structured as a non-recourse prepaid forward purchase agreement secured by the COVID-19 insurance reimbursement claims portfolio. This financing, if approved by the Court, would: (1) provide $4,500,000 to ProPhase Labs, Inc. as consideration for voluntarily subordinating its senior secured position on estate assets, thereby clearing the path to a senior lender position for the DIP funder; and (2) provide $1,500,000 to the estate's operating account to stabilize operations and fund the ongoing CMC recovery program. Multiple direct lenders and litigation finance institutions are currently in active dialogue, and a DIP financing motion is being prepared for filing upon execution of a term sheet. The Debtors require the additional time provided by this extension to complete the financing process, obtain this Court's approval, and thereafter prepare a plan of reorganization supported by confirmed funding.

**E)**    As to factor #7 **"the length of time a case has been pending"**: As of this writing, these cases have only been pending for just over six months, with approximately 112 days of those six months comprising the Fall 2025 Federal shutdown and the Spring

2026 Federal shutdown, with two holiday months falling between those shutdowns. The effective working time available to advance this case has been somewhat reduced by these extraordinary external circumstances; nonetheless, as outlined herein, I respectfully submit that this rather complex jointly administered case has shown significant progress in just the first few months that it has been pending.

F) As to factor #9, **"whether unresolved contingencies exist"** certainly unresolved contingencies exist, both on the Asset side in that the CMC liquidation of the Insurance Receivables is well under way, but by no means completed, and on the Creditor side, in that there enormous "qui tam" claims of an absurdly high dollar amount, that will almost certainly be very significantly reduced, or eliminated. **Thus an additional significant development is the progress toward resolution of Adversary Proceedings and the Government Non-Intervention in same**: the three adversary proceedings filed December 19, 2025 (Adv. Pro. Docket Nos. 25-2526, 25-2527, and 25-2528) have been resolved by consent orders providing for liquidation of those claims in the United States District Court for the Eastern District of New York, with this Court retaining jurisdiction over allowance, collection, and distribution of any such claims. Notably, the United States Department of Justice, and the Attorney Generals of both New York and New Jersey have completed their investigation of the underlying Qui Tam complaint to those three Adversary Proceedings, and they have filed a formal Notice to Decline Intervention; and those same three authorities have also filed a Notice of Non-Intervention in the Hennrick Action. The government's non-intervention — after a full investigation spanning more than three years — also materially reduces the litigation risk profile of the Hennrick Action as it pertains to the Debtors' estate and the recoverability of estate assets. The Debtors intend to retain Special Litigation Counsel to pursue all available defenses in that action, including possible objections to the proofs of claim filed by the Relator in these cases, unless a settlement is swiftly reached.

(24) The Debtors respectfully submit that, under any or all of these six factors, cause

has been shown for the Exclusive Periods should be extended, and respectfully submit that the Proposed Order submitted with this Motion should be entered.

### Request for Waiver of Memorandum of Law

**(25)**   Pursuant to Local Rule LBR 9013-1(a)(3) the Debtors respectfully request the Court waive the requirements to file a separate Memorandum of Law, as the legal standard and legal grounds upon which the Debtors rely are set forth in this Motion, and do not raise any novel issues of law.

### Notice

**(26)**   Notice of this Motion is being provided to: (1) the United States Trustee for the District of New Jersey; (2) Secured Creditors, and (3) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that no other or further notice is necessary.

### Conclusion

**(27)**   WHEREFORE, the Debtors respectively request that the Court grant the relief requested herein by entering Orders (1) extending the Exclusive Filing Period in this case through and including July 20, 2026; (2) extending the Exclusive Solicitation Period in this case through and including September 18, 2026; and (3) granting such other relief to the Debtor as the Court may deem just and appropriate.

Respectfully submitted,

MACIAG LAW, LLC

 /s/ Thaddeus R. Maciag
Thaddeus R. Maciag, Esq.
Date: April 11, 2026          Attorney for the Debtors