UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
*Attorney for the Debtors*

Wallace B. Neel, Esq.
*(pro hac vice)*
WALLACE NEEL, PLLC
1 Blue Hill Plaza, LL Suite 1509
Pearl River, New York 10965
(646) 524-6502
*proposed Special Litigation Counsel to the Debtors*

In re:

ProPhase Diagnostics NJ, Inc., *et al.*,

Debtors.

Case No.: 25-19833-CMG

Chapter 11 Reorganization

Judge:  Gravelle

Hearing Date: June 2, 2026, 10:00am

(Jointly Administered)

## DEBTORS' OBJECTION TO PROOF OF CLAIM

## FILED BY DREXEL DISTRIBUTION INC. d/b/a EZ TEST NY,

## AND DEBTORS' ASSERTION OF RECOUPMENT, SETOFF, AND COUNTERCLAIMS

### Jurisdiction, Venue, and Statutory Basis for the Relief Sought

a)      The Bankruptcy Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§157 and §1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

b)      The statutory and procedural predicate for the relief here requested is 11 U.S.C. §105, §502, §541, §553, Rule 3007 of the Federal Rules of Bankruptcy Procedure, and Local

Bankruptcy Rule 3007-1.

c)     The United States Bankruptcy Court for the New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334(b) and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered on July 23, 1984, and amended on June 6, 2025 (Hon. Renée Marie Bumb, Chief Judge, United States District Court, D.N.J.) (the "Standing Order").

d)     This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

e)   Venue is proper in this District pursuant to 28 U.S.C. §1334(b), §1408, and §1409.

f)     No prior request for the relief sought in this Motion has been made to this or any other court in connection with the Chapter 11 case.

g)     Jointly Administered Debtors.   The three instant Debtors' respective cases are presently jointly administered per this Court's Amended Order for Joint Administration entered September 30, 2025.

### Preliminary Statement

1. ProPhase Diagnostics, Inc. (the "Debtor"), as debtor and debtor-in-possession in the above-captioned Chapter 11 case, by and through its counsel Maciag Law, LLC, respectfully submits this Objection to the Proof of Claim and the Amended Claim [which appear as *Claim #3-1* and as *Amended Claim #3-2* on the ProPhase Diagnostics, Inc. Claims Register in case #25-19836-CMG] filed by Drexel Distribution Inc. d/b/a EZ Test NY ("Drexel") in the amended amount of approximately $1,754,088.00 (the "Drexel Claim"). For the reasons set forth below, the Drexel Claim should be reduced to no more than

$125,235.00 in liquidated damages, with all other components disallowed in their entirety; and the Drexel Claim should thereafter be reduced to zero, or to a net claim by the Debtor against Drexel, by operation of the Debtor's contractual chargeback claim of $2,571,842.00 under the doctrine of recoupment, or, in the alternative, setoff under 11 U.S.C. §553.

2. On September 8, 2025, the Hon. Justice Nancy M. Bannon, J.S.C., of the Supreme Court of the State of New York, New York County, Commercial Division, issued a Decision and Order (collectively, the "Justice Bannon Decision", a copy of which is annexed as **_Exhibit A_** hereto) in the underlying state court action (*Drexel Distribution Inc. v. ProPhase Diagnostics, Inc.*, Index No. 653503/2022, Motion Seq. No. 004) granting Drexel partial summary judgment on its breach-of-contract claim in the amount of **$125,235.00 only**, and **denying** the substantial balance of Drexel's $1,654,222.00 demand. Judgment was entered on September 11, 2025, eleven days before the Petition Date.

3. Justice Bannon's Decision is dispositive of the central premises of the Drexel Claim. The court **denied** Drexel's claims for invoices that predated the parties' written agreement (EZ-0014 and EZ-0019A); **denied** Drexel's claims for delivery services (EZ-0033B through EZ-0037B, totaling $45,500.00) on the ground that no contractual obligation supported them; **denied** Drexel's second cause of action for unjust enrichment; **denied** Drexel's third cause of action for *quantum meruit*; and held that the damages on invoices EZ-0028 (only $18,885.00 asserted) and EZ-0028A (only $5,620.00 asserted) could **not** be liquidated on the summary judgment record and would have to be tried.

4**. More importantly, Justice Bannon expressly recognized the Debtor's assertion of a contractual chargeback Counterclaim of $2,571,842.00, holding that** *"should*

*ProPhase establish at trial that it is entitled to any amount as chargebacks, it would be entitled to a money judgment in that amount."* The Debtor's chargeback Counterclaim arises from the same March 7, 2022 written agreement on which Drexel's claim itself depends. Section 2(a)(ii) of that agreement provides that Drexel must reimburse the Debtor $10 per specimen for any specimen not reimbursed by the HRSA Program or the patient's insurance provider. The Debtor invoiced Drexel $1,923,623.00 for unreimbursed PCR claims and $648,219.00 for unreimbursed Antigen claims under that contractual mechanism, totaling $2,571,842.00.

5. Because the Debtor's chargeback claim and Drexel's claim arise from the identical contract and the identical course of dealing, the Debtor's claim operates as a recoupment that reduces the Drexel Claim to zero before any setoff analysis is reached. Where, as here, recoupment fully extinguishes the creditor's claim, the proper outcome is disallowance of the Drexel Claim in its entirety.

6. The Debtor accordingly seeks an order: (a) reducing the Drexel Claim to a maximum of $125,235.00 in liquidated damages, with all other components disallowed; (b) declaring that the Debtor's chargeback Counterclaim under Section 2(a)(ii) of the parties' written agreement, in the amount of $2,571,842.00, operates as a recoupment that reduces the Drexel Claim to zero; © in the alternative, allowing setoff of the chargeback Counterclaim against the Drexel Claim under 11 U.S.C. § 553; (d) reserving the Debtor's affirmative claims for the net balance against Drexel for adjudication in a contemporaneously-filed adversary proceeding; and (e) granting such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 502(b) and 553, Federal Rules of Bankruptcy Procedure 3007 and 9014, and applicable Local Rules of this Court.

## BACKGROUND

### A. The Debtor and the Chapter 11 Case

9. On September 22, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. The Debtor continues to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. The case is jointly administered with the related Chapter 11 cases of ProPhase Diagnostics NJ, Inc. (Case No. 25-19833-CMG) and ProPhase Diagnostics NY, Inc. (Case No. 25-19834-CMG).

### B. The Parties' March 7, 2022 Written Agreement

10. On March 7, 2022, the Debtor and Drexel entered into a written services agreement (the "Agreement") under which Drexel — a limited services laboratory operating COVID-19 collection and testing sites in New York — would use the Debtor's CLIA-certified laboratory for PCR testing on specimens collected by Drexel and for billing and reporting services for Antigen tests Drexel administered.

11. The Agreement contains three integrated payment provisions, all addressed by Justice Bannon's Decision:

(a) **Section 2(a)(I) — PCR Specimen Payment.** The Debtor agreed to pay Drexel $23

per PCR specimen collected, with $13 due within ten days of receiving an invoice and $10 due within sixty days of the invoice. Drexel was to invoice every two weeks.

(b) **Section 2(b) — Antigen Specimen Payment.** The Debtor agreed to pay $27 per Antigen specimen, comprising $20 for Drexel's administration of antigen testing services and $7 for reimbursement of Drexel's costs to purchase the antigen testing kits.

(c) **Section 2(a)(ii) — The Chargeback Provision.** The Agreement expressly provides that *Drexel is entitled to a $10 chargeback per specimen collected if the specimen is not reimbursed by the HRSA Program or the patient's insurance provider*. This provision establishes the contractual mechanism by which the parties allocated the risk of unreimbursed claims. As discussed below, when the HRSA Program ended on March 22, 2022 — fifteen days after the Agreement was signed — and unreimbursed specimens accumulated in the hundreds of thousands, the Debtor properly invoked Section 2(a)(ii) and invoiced Drexel for the resulting chargebacks.

12. Critically, the entire economic premise of the Agreement was that Drexel and the Debtor would be reimbursed through the federal HRSA Uninsured Program for COVID-19 testing services rendered. The HRSA Program ended on March 22, 2022 — exactly fifteen days after the Agreement was executed. Section 2(a)(ii) is the contractual mechanism that allocated the risk of post-HRSA non-reimbursement to Drexel by entitling the Debtor to a $10 per-specimen chargeback for any specimen that could not be collected from HRSA or from a patient's insurance carrier.

## C.  The State Court Litigation and Justice Bannon's Decision

13. Drexel commenced the underlying state court action on September 23, 2022, captioned *Drexel Distribution Inc. and Drexel Distribution Inc. d/b/a EZ Test NY v. ProPhase*

*Diagnostics, Inc.*, Index No. 653503/2022, in the Supreme Court of the State of New York, New York County, Commercial Division. In its second amended complaint, Drexel asserted three causes of action — breach of contract, unjust enrichment, and quantum meruit — and sought total damages of $1,654,222.00 plus attorneys' fees.

14. The Debtor filed a verified answer asserting seventeen affirmative defenses (including, at the thirteenth affirmative defense, an express assertion of setoff) and **five Counterclaims**: (I) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) quantum meruit; (iv) promissory estoppel; and (v) unjust enrichment. The Debtor sought compensatory and punitive damages on each.

15. On November 7, 2023, while the state court action was pending, the Debtor invoked Section 2(a)(ii) of the Agreement and invoiced Drexel $1,923,623.00 for unreimbursed PCR claims and $648,219.00 for unreimbursed Antigen claims, totaling **$2,571,842.00** in contractual chargebacks (the "Chargeback Invoice"). Drexel did not pay the Chargeback Invoice and disputes its validity. The Debtor's Counterclaims and Section 2(a)(ii) chargeback assertion remain live and unadjudicated.

16. On March 14, 2025, Drexel moved for partial summary judgment on its breach-of-contract claim or, alternatively, on its unjust enrichment and quantum meruit claims, seeking damages of $462,506.00. After full briefing and submission of evidence by both parties, on September 8, 2025, Justice Bannon issued a Decision and Order (the "Justice Bannon Decision") that is critical to the proper analysis of the Drexel Claim. The Justice Bannon Decision is attached hereto as *Exhibit A*.

17. Justice Bannon's rulings are summarized as follows:

| Invoice / Claim | Type | Drexel Demand | Justice Bannon Decision |
|---|---|---|---|
| EZ-0026 | PCR (3/30/22) | $52,659.00 | GRANTED — summary judgment in Drexel's favor |
| EZ-0026A | Antigen (3/30/22) | $72,576.00 | GRANTED — summary judgment in Drexel's favor |
| EZ-0028 | PCR (3/20–4/2/22) | $18,885.00 (claimed) | LIABILITY ONLY — damages denied; remaining for trial |
| EZ-0028A | Antigen (3/20–4/2/22) | $5,620.00 (claimed) | LIABILITY ONLY — damages denied; remaining for trial |
| EZ-0014 | PCR (11/10/21) | Various (predates Agreement) | DENIED — predates the Agreement; not pleaded; pleadings affirmatively allege these were paid |
| EZ-0019A | Antigen (1/20/22) | Various (predates Agreement) | DENIED — predates the Agreement; not pleaded; pleadings affirmatively allege these were paid |
| EZ-0033B through EZ-0037B | Delivery (6/13–8/22/22) | $45,500.00 | DENIED — Agreement does not obligate the Debtor to pay for delivery services |
| Unjust Enrichment | Second cause of action | Unspecified | DENIED — adequate legal remedy exists; failed to establish elements |
| Quantum Meruit | Third cause of action | Unspecified | DENIED — failed to meet prima facie burden |

18. The total liquidated amount granted by the Justice Bannon Decision is **$125,235.00**, plus statutory interest at 9% from May 29, 2022. All other components of Drexel's $1,654,222.00 demand were either denied outright or remain undetermined and require trial.

19. Significantly, Justice Bannon's Decision expressly preserved the Debtor's contractual chargeback Counterclaim under Section 2(a)(ii) of the Agreement. The Decision states: "*should Prophase establish at trial that it is entitled to any amount as chargebacks, it would be entitled to a money judgment in that amount.*" Justice Bannon Decision at 5. The Court further noted that *the Debtor's thirteenth affirmative defense also asserts that*

*Prophase is entitled to a set-off. Id.*

20. Judgment in the amount of $125,235.00 plus 9% statutory interest from May 29, 2022 was entered by the Clerk of New York County on September 11, 2025 (the "State Court Judgment"). Eleven days later, on September 22, 2025, the Debtor filed its voluntary petition under Chapter 11. The State Court Action has been stayed since the Petition Date pursuant to 11 U.S.C. §362(a). Notice of Entry of the Justice Bannon Decision was filed at NYSCEF Doc. No. 230 on September 11, 2025, a true and correct copy of which is attached as *Exhibit A*.

**D.  The Drexel Proof of Claim**

21. Drexel filed a proof of claim in this Chapter 11 case (the "Drexel Claim") asserting an amount of approximately $1,754,088.00. To the extent the Drexel Claim seeks any amount in excess of $125,235.00 plus statutory interest from May 29, 2022, it improperly seeks to relitigate components of Drexel's claims that were denied by the Justice Bannon Decision or that remain unliquidated and unadjudicated, all of which arise from a pre-petition contract that is also the source of the Debtor's $2,571,842.00 chargeback Counterclaim.

## LEGAL STANDARD

22. Pursuant to 11 U.S.C. §502(b), a claim may be disallowed to the extent it is unenforceeable under any agreement or applicable law against the debtor. A properly filed proof of claim is prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy Procedure 3001(f). However, the prima facie effect of a proof of claim is rebuttable, and the burden shifts to the claimant to prove the validity and amount of the claim once a debtor presents evidence sufficient to overcome the prima facie effect.

23. An objection to a claim is a contested matter governed by Federal Rule of Bankruptcy Procedure 9014. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) (setting forth burden-shifting framework). The Third Circuit has held that once the objector "produces evidence sufficient to negate the prima facie validity of the claim," the burden shifts back to the claimant to establish entitlement to the claim by a preponderance of the evidence. *Id.*

24. The doctrine of recoupment is well-established in this Circuit. Recoupment permits a debtor to assert a claim against the creditor that arises from the same transaction as the creditor's claim, reducing the creditor's claim by the amount of the debtor's claim. *See University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992); *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 257 (3d Cir. 2000). Critically, recoupment is **not** subject to the limitations of 11 U.S.C. § 553 because it is not a setoff — it operates as a defense that reduces the creditor's claim itself, rather than as the assertion of an independent counter-claim. *Folger Adam*, 209 F.3d at 263.

25. The Third Circuit applies a "same transaction" test to determine whether recoupment is available, which is satisfied where "both debts arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *University Med. Ctr.*, 973 F.2d at 1081. Where claims arise from the *same contract*, as is the case here, the recoupment requirement is satisfied. *See Folger Adam*, 209 F.3d at 257.

26. Setoff under 11 U.S.C. §553 is available in the alternative. Code Section 553 permits the offset of "a mutual debt owing by such creditor to the debtor that arose before the commencement of the case" against a claim of the creditor against the debtor that arose before the commencement of the case. The requirements are mutuality, pre-petition

character of both obligations, and the absence of statutory exclusion. All three are satisfied here.

## ARGUMENT

### I.  The Drexel Claim Must Be Reduced to $125,235.00 plus Statutory Interest, with all other Components of the Drexel Claim Disallowed

*A.  The Justice Bannon Decision is res judicata, and the Drexel Claim Cannot Exceed the Justice Bannon Decision's Liquidated Award of $125,235.00 plus up to a maximum of $24,505.00 for those claims reserved for Trial by the State Court*

27. The Justice Bannon Decision is *res judicata*, as a final, on-the-merits adjudication of all components of Drexel's pre-petition claim that were submitted for summary judgment. The Decision granted summary judgment of $125,235.00 only — the combined unpaid balance of invoices EZ-0026 ($52,659.00) and EZ-0026A ($72,576.00). All other liquidated amounts sought by Drexel were <u>denied</u>.

28. Specifically, Justice Bannon **denied** Drexel's claim for $45,500.00 in delivery service invoices (EZ-0033B through EZ-0037B) on the merits, holding that the Agreement "does not obligate Prophase to pay Drexel for delivering specimens to Prophase's laboratory" and that Drexel "does not point to a separate agreement obligating Prophase to pay for these delivery services." Justice Bannon Decision at 4. To the extent the Drexel Claim includes any amount on account of these delivery invoices, that portion of the claim is barred by the doctrines of res judicata and collateral estoppel and must be disallowed.

29. Justice Bannon similarly **denied** Drexel's claims under invoices EZ-0014 (dated November 10, 2021) and EZ-0019A (dated January 20, 2022) on multiple grounds. Justice Bannon Decision at 4. These invoices predated the March 7, 2022 Agreement, were not pleaded

in Drexel's second amended complaint, and indeed Drexel's own pleading affirmatively alleged that all invoices prior to EZ-0025 had been paid in full. *Id.* To the extent the Drexel Claim includes any amount on account of these invoices, that portion of the claim is also barred by res judicata and must be disallowed.

30. Justice Bannon **denied** Drexel's second cause of action for unjust enrichment and third cause of action for quantum meruit on the merits, holding that Drexel "failed to meet its burden in the first instance." Justice Bannon Decision at 5. To the extent the Drexel Claim asserts any amount under those equitable theories, that portion of the claim must be disallowed by operation of *res judicata*.

31. Finally, with respect to invoices EZ-0028 and EZ-0028A, Justice Bannon held that **Drexel had failed to establish damages on the summary judgment record**, granting only liability and reserving the damages question for trial. Justice Bannon Decision at 4. To the extent the Drexel Claim asserts liquidated damages on these invoices, those amounts are unliquidated, contingent, and disputed and must be estimated conservatively (or at zero) under 11 U.S.C. § 502© for distribution purposes. The amounts Drexel previously claimed on these invoices ($18,885.00 and $5,620.00, respectively) were rejected as unsupported. Even if Drexel were to prevail at trial in these full amounts, the total remaining claim to be adjudicated is only <u>a maximum of $24,505.00</u> ($18,885.00 + $5,620.00).

**B.** ***The Drexel Claim Cannot Include Attorneys' Fees Without a Contractual or Statutory Basis for Same***

32. Drexel's state court complaint sought attorneys' fees, but Justice Bannon did not award any. Under New York law, attorneys' fees are recoverable only when authorized by contract, statute, or court rule. *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491

(1989). The Agreement contains no fee-shifting clause that would entitle Drexel to recover its attorneys' fees from the Debtor. To the extent the Drexel Claim includes any attorneys' fees component, it must be disallowed.

## II. The Debtor's $2,571,842.00 Chargeback Claim Reduces the Drexel Claim to Zero by Recoupment

### A.  The Chargeback Provision Is Unambiguous, Express, and Operative

33. Section 2(a)(ii) of the Agreement is clear and unambiguous: "*Drexel is entitled to a $10 chargeback per specimen collected if [the specimen] is not reimbursed by the HRSA Program or the patient's insurance provider.*" The provision identifies the contractual mechanism, the per-specimen amount, and the triggering condition. As Justice Bannon expressly recognized, the Debtor properly invoked this provision and invoiced Drexel $1,923,623.00 for unreimbursed PCR claims and $648,219.00 for unreimbursed Antigen claims, totaling $2,571,842.00.

34. Justice Bannon's Decision expressly preserves this Counterclaim, stating: "*should Prophase establish at trial that it is entitled to any amount as chargebacks, it would be entitled to a money judgment in that amount.*" Justice Bannon Decision at 5. The chargeback claim is therefore a live, judicially-recognized contractual claim that arises from the same Agreement on which Drexel's claim itself depends.

### B.  The Recoupment Requirements Are Satisfied

35. Recoupment under Third Circuit law requires that the debtor's claim and the creditor's claim arise from the "same transaction." *University Med. Ctr.*, 973 F.2d at 1081. Both claims here arise from the identical March 7, 2022 written Agreement, governed by the identical commercial relationship, addressing the identical category of services (COVID-19

specimen collection and testing during and immediately after the HRSA Program window). The Debtor's chargeback claim and Drexel's payment claim are not merely related — they are two sides of the same contractual coin.

36. Section 2(a)(ii) is the contractual mechanism the parties themselves designed to allocate the risk of unreimbursed specimens. The provision contemplates that some specimens would not be reimbursed and assigns a $10 per-specimen recovery to the Debtor as the consequence. To allow Drexel to recover under Sections 2(a)(I) and 2(b) for the same specimens for which the Debtor has a contractual chargeback claim under Section 2(a)(ii) would be to enforce one half of the parties' bargain while ignoring the other half — exactly the inequity that the recoupment doctrine prevents.

37. Where, as here, the debtor's claim and the creditor's claim arise from the same contract and the same factual transaction, courts in this Circuit and elsewhere routinely apply recoupment to reduce or extinguish the creditor's claim. *See, e.g., Folger Adam*, 209 F.3d at 257; *In re Med. Optics, Inc.*, 691 F.3d 1147, 1155 (10th Cir. 2012); *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1080-81 (3d Cir. 1992).

### C.   *The Chargeback Claim Eliminates the Drexel Claim in Its Entirety*

38. The arithmetic is straightforward. After the Justice Bannon Decision, the maximum allowable Drexel Claim is $125,235.00 plus statutory interest at 9% from May 29, 2022 — approximately $167,535.00 as of the Petition Date. The Debtor's contractual chargeback claim is $2,571,842.00 — more than **fifteen times** the maximum allowable Drexel Claim. Thus, by recoupment, *the chargeback claim entirely extinguishes the Drexel Claim*.

39. Indeed, after recoupment, Drexel will actually owe the Debtor approximately

$2,404,307.00. That net claim is the subject of a contemporaneously-filed adversary proceeding by which the Debtor seeks to recover the net balance from Drexel as an asset of the estate.

### III.   In the Alternative, Setoff Under 11 U.S.C. §553 Eliminates the Drexel Claim

40. Even if recoupment were not available — and it plainly is available — the Debtor would be entitled to setoff under 11 U.S.C. §553. The requirements of §553 are: (a) the parties owe mutual debts to each other; (b) both debts arose pre-petition; and © the obligations are not subject to any statutory exclusion. All three requirements are met.

41. Mutuality is satisfied because Drexel and the Debtor are direct contractual counterparties under a single, integrated Agreement. Both obligations are pre-petition: Drexel's invoices are dated 2022 and the Debtor's Chargeback Invoice is dated November 7, 2023. No statutory exclusion under §553 applies. Setoff under §553 is therefore available as an independent ground for reducing the Drexel Claim by the amount of the chargeback.

### IV.   The Debtor's Counterclaims are Preserved and will Proceed

### through an Adversary Proceeding to be filed

42. In addition to the chargeback claim under Section 2(a)(ii), the Debtor pleaded five Counterclaims in the State Court Action: (I) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) quantum meruit; (iv) promissory estoppel; and (v) unjust enrichment. None of these Counterclaims was adjudicated by the Justice Bannon Decision. All remain live and unresolved.

43. The Debtor will, contemporaneously with this Objection or shortly thereafter, file an adversary proceeding in this Court asserting the chargeback claim and the five Counterclaims as affirmative claims against Drexel. The adversary proceeding will

permit full discovery into Drexel's specimen collection and billing practices, full development of the chargeback amount, and entry of a money judgment against Drexel for the net balance. The recovery on the adversary proceeding becomes property of the estate under 11 U.S.C. §541.

## V. The Drexel Claim Should Be Estimated at Zero for Distribution Purposes

44. Pursuant to 11 U.S.C. §502©, the Court may estimate any contingent or unliquidated claim, the fixing or liquidation of which would unduly delay the administration of the case. Estimation is appropriate here because: (a) the Drexel Claim is, after recoupment, valued at zero or less; (b) the $125,235.00 component is fully offset by the chargeback claim; © the EZ-0028 and EZ-0028A components are unliquidated and were rejected by Justice Bannon as unsupported on the summary judgment record; and (d) Drexel's surviving second and third causes of action were denied on the merits.

45. The Debtor accordingly requests that the Drexel Claim be estimated at $0.00 (zero) for purposes of plan formulation, voting, and distribution under 11 U.S.C. §502© and applicable case law. *See Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982) (bankruptcy court has "considerable latitude" in estimating contingent and unliquidated claims).

## Reservation of Rights

46. The Debtor reserves all rights to amend, modify, or supplement this Objection, to assert additional grounds for disallowance or reduction of the Drexel Claim, and to pursue any and all affirmative claims against Drexel and any related parties or principals (including, without limitation, Bedis Zormati). Nothing herein shall be construed as a waiver of any of the Debtor's rights, defenses, counterclaims, or affirmative claims.

47. The Debtor further reserves the right to seek discovery from Drexel and from third parties

under Federal Rule of Bankruptcy Procedure 2004 and other applicable authority concerning the matters addressed herein and the Debtor's contemplated adversary proceeding.

## CONCLUSION

48. For the reasons set forth above, the Debtor respectfully requests that the Court enter an order: (a) reducing the Drexel Claim to a maximum of $125,235.00 in liquidated principal damages, plus statutory interest from May 29, 2022, with all other components disallowed; (b) declaring that the Debtor's $2,571,842.00 contractual chargeback claim under Section 2(a)(ii) of the Agreement operates as a recoupment that reduces the Drexel Claim to zero; © in the alternative, allowing setoff of the chargeback claim against the Drexel Claim under 11 U.S.C. § 553; (d) estimating the Drexel Claim at $0.00 for plan formulation, voting, and distribution purposes under 11 U.S.C. § 502©; (e) reserving the Debtor's net affirmative claim against Drexel for adjudication in the contemporaneously-filed adversary proceeding; and (f) granting such other and further relief as the Court deems just and proper.

Date: April 30, 2026        Respectfully submitted,

MACIAG LAW, LLC

/s/ Thaddeus R. Maciag
Thaddeus R. Maciag, Esq.
Attorney for the Debtors