| |
|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-2(c) |
| **STARK & STARK, PC** <br> Joseph H. Lemkin, Esq. <br> 100 American Metro Blvd. <br> Hamilton, NJ 08619 <br> Telephone (609) 791-7022 <br> jlemkin@stark-stark.com <br><br> *Attorneys for Drexel Distribution, Inc. d/b/a EZ Test NY* |

| | |
|---|---|
| In re: <br><br> ProPhase Diagnostics, Inc., et. al., <br><br>          Debtors. | Chapter 11 <br><br> Case No. 25-19833 (CMG) <br><br> Jointly Administered <br><br> Ref. Docket Nos. 131 & 137 |

**DREXEL DISTRIBUTOR, INC.'S SUPPLEMENTAL OBJECTION TO (I) DEBTORS' SECOND MOTION TO EXTEND EXCLUSIVITY PERIODS AND (II) MOTION FOR ENTRY OF ORDER ESTABLISHING TERMS AND CONDITIONS OF DIP RECEIVABLES TRUST ACCOUNT**

Drexel Distribution, Inc. d/b/a EZ Test NY ("Drexel"), by and through undersigned

counsel, submits this supplemental objection (the "Supplemental Objection") to: (I) Debtors'

second motion to extend exclusivity periods, and (II) Motion for Entry of Order Establishing

Terms and Conditions of DIP Receivables Trust Account (the "Exclusivity Motion"), and states:

1. Drexel files this Supplemental Objection to bring to the Court's attention a material

   development that occurred after the filing of its original Objection.

2. Following months of representations that the Debtors were working toward a consensual

   resolution of Drexel's claim—including representations that a term sheet would be

1

provided—the Debtors instead filed a formal objection to Drexel's claim, which claim objection also reveals that Debtors plan to file an adversary proceeding relating to Drexel's claim [Doc No. 134](the "Claim Objection").

**Rule 408 Does Not Immunize Procedural Facts or Sanitize Mischaracterizations**

3.  Rule 408 is a rule of admissibility for compromise evidence offered to prove or disprove liability of the amount of a disputed claim – not a blanket confidentiality privilege, and certainly not a shield against pointing out objective procedural facts.

4.  Through this submission and Drexel's prior pleadings, it is not asking the Court to determine the validity or amount of Drexel's contract claims based upon settlement discussions.  Rather, Drexel hereby submits objective procedural facts regarding: (i) whether negotiations occurred; (ii) whether the negotiations progressed; (iii) whether the Debtors' own representations to Drexel and this Court regarding creditor negotiations were accurate; and (iv) whether "cause" exists under Section 1121(d).

5.  Under the *Central Jersey* factors, good faith progress and reasonable prospects for a plan are directly relevant.

6.  Evidence showing negotiations have stalled, deteriorated, or transformed into claim objections and threatened litigation goes directly to those factors – not liability.

7.  To recap some of the communications summarized in Drexel's Objection, on numerous occasions, Debtor's counsel advised that a term-sheet was forthcoming, as evidenced by the following email received on April 4th, from Debtor's counsel:

Joe:

   Thanks for your email.  We have had some unexpected  delays with people (including me and my family) being away for the Easter holiday week; I expect to have something to you in writing by no later than Thursday 4/8 (and I respectfully ask that you and your clients please bear in mind that when you were more or less incommunicado for several weeks during your family crisis, I in turn gave you some time when the delays were at your end --- in any case, I will have something to you in writing this week.  Thanks for understanding).

4934-4869-0600, v. 2

- Ted Maciag

8.  No writing was provided on April 8th, by the end of that week, or to date.  Nothing was ever sent.

9.  After multiple follow-up emails and phone calls to Debtors' counsel, Drexel was advised via phone call that the principals of the Debtors had an internal dispute and could not agree upon terms, although the claim amount had already been agreed upon.  Debtors' counsel requested that Drexel propose terms for Debtors' consideration.  Accordingly, on April 14th, Drexel sent the following redacted email

PRIVILEGED SETTLEMENT COMMUNICATION

Hi Ted –

I understand that you spoke with Jennifer yesterday and requested terms from us for a proposed resolution.  We note that we were promised these terms weeks ago – however given your clients' inability to reach agreed upon terms, my client was asked to provide acceptable terms:



Please confirm your client's acceptance of this proposal and we will proceed to draft the agreement.  Our client reserves all rights, claims, remedies and causes of action until such time that a final written agreement is approved by the bankruptcy court.

10. On the same date, Drexel's counsel appeared for a status conference before this Court.  At that time, Debtors' counsel again represented to the Court that they were working toward a settlement and resolution of our claim. This was not true.  Debtors and counsel for the Debtors never responded to Drexel's communications.

11. Rather, on April 30th Debtors filed the Claim Objection.

3

12. The timing is significant. The Claim Objection was filed only after Drexel objected to the extension of exclusivity.

13. This development confirms that the Debtors are not making meaningful progress toward a consensual plan. Rather than advancing negotiations with a significant creditor, the Debtors have refused to meaningfully engage in negotiations and instead are pursuing a litigation posture.

14. The foregoing is in stark contrast to the repeated representations to Drexel and this Court that the Debtors were working towards a Consent Order with large creditors.  Mr. Karkus explicitly noted in his certification in support of the Exclusivity Motion that Debtors:

(o)  worked with large creditors seeking to negotiate Consent Orders fixing Allowed Claims and attaining support for Plans of Reorganization.

15. To the contrary: the Debtors have never provided the promised term sheet and never responded to Drexel's term sheet.  Instead, the Debtors filed a newly minted, and wholly baseless objection to Drexel's claims.  Drexel reserves its rights vis-à-vis Federal Rules of Civil Procedure 9011 in response to the Claim Objection.

16. The Debtors' conduct demonstrates:

(a) a breakdown in creditor negotiations;

(b) a lack of progress toward plan formulation; and

(c) use of exclusivity to maintain control of the case while deferring resolution of disputes.

17. Courts evaluating "cause" under section 1121(d) consider whether a debtor is making good faith progress in negotiations. The Debtors' actions now demonstrate the opposite. After seven months in bankruptcy and despite representations to this Court, the Debtors

4

only this past week filed a claim objection seeking to entirely expunge Drexel's claim based on factual and legal arguments that have no merit whatsoever.

18. Accordingly, this development provides additional grounds to deny the requested extension of exclusivity.

19. These facts also further support that there is no reasonable likelihood of rehabilitation and that cause may exist under section 1112(d) to convert or dismiss these cases. Filing claims objections and threatening adversary litigation may be a litigation strategy, but it is not evidence of "meaningful progress toward consensual plan negotiations," which is what section 1121(d) contemplates.

20. The record now firmly reflects that exclusivity is not being used to build creditor consensus, but rather to preserve unilateral control while the Debtors escalate litigation against a dissenting creditor.

**WHEREFORE**, Drexel respectfully requests that the Court: (i) deny the Exclusivity Motion; (ii) deny the DIP Receivable Trust Account motion; and (iii) grant such other relief as the Court deems just and proper.

Dated: May 4, 2026

**STARK & STARK, PC**

By: /s/ *Joseph H. Lemkin*
Joseph H. Lemkin, Esq.
100 American Metro Blvd.
Hamilton, NJ 08619
Telephone (609) 791-7022
jlemkin@stark-stark.com
*Attorneys for Drexel Distribution, Inc. d/b/a*
*EZ Test NY*

4934-4869-0600, v. 2