**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
*Attorney for the Debtors*

In re:

    ProPhase Diagnostics NJ, Inc., *et al.*,

                      Debtors.

    (Jointly Administered)

Case No.: 25-19833-CMG
Chapter 11 Reorganization
Judge:  Gravelle
Hearing Date: May 5, 2026, 10:00am

### DEBTOR'S RESPONSE TO DREXEL DISTRIBUTION'S "SUPPLEMENTAL OPPOSITION" TO DEBTOR'S MOTION TO EXTEND EXCLUSIVITY

(1)     The undersigned was already rather dismayed by Drexel having in its prior (*ecf-131*) filing revealed selective portions details of settlement negotiations, presented so as to place Debtor in a false light. It is with further dismay that we now see Drexel revealing further selective aspects of settlement discussions, so as to further endeavor to place Debtor in a false light, and it is with yet further dismay that we see the filing on the eve of the hearing of a Drexel **sur-rebuttal** (*ecf-140*) which sur-rebuttal is not permitted by the Rules. Since the Court and counsel should already not be wasting time reviewing unpermitted sur-rebuttals, this reply will be simple and short:

    A)   At the time of the February 10 Status Conference, Debtors and Drexel had been making some progress in settlement discussions,

    B)     Immediately after February 10, Drexel and its counsel went incommunicado for **44 days**, failing to reply to phone calls or emails, and not re-surfacing until March 26. Drexel complains that when it was then all of a sudden firing off almost daily emails on (as Drexel notes in *ecf-131*, *¶7*) on April 1 (Wednesday), on April 3 (Good Friday ) and ib April 5 (Easter Sunday) — after **44 days** of failing to communicate — Drexel was suddenly concerned that its every email was not being promptly replied to (and during a holiday week).

    C)     **Then on April 14, Drexel (not the Debtor) suddenly blew up the negotiations by presenting an over-reaching settlement demand for the payment of several tens of thousands of dollar each month, PRE-confirmation of a plan, AND for the payment of several hundred thousands of dollars within six months, whether a Plan had been confirmed or not!**  Set forth below is a still-redacted as to actual dollars, but less-redacted copy of the same email which Drexel

embedded in its sur-rebuttal.---- Forwarded Message -----

From: Joseph H. Lemkin <   >
To: Maciag Law LLC <    >
Cc: Jennifer Adams <    >
Sent: Tuesday, April 14, 2026 at 11:42:25 AM EDT
Subject: RULE 408 PRIVELEGED [*sic*] COMMUNICATION

PRIVILEGED SETTLEMENT COMMUNICATION

Hi Ted –

I understand that you spoke with Jennifer yesterday and requested terms from us for a proposed resolution.  We note that we were promised these [*sic*] terms weeks ago – however given your clients' inability to reach agreed upon terms, my client was asked to provide acceptable terms:

   As previously agreed, our client will accept a reduction of its claim to $▮,000 to be paid in full as follows

      Monthly payments of $▮,000 commencing April 20, 2026;

      Payments to continue pending the effective date of a confirmed plan, but no longer than six months, at which point  the entire balance will be paid in full.

      In return, assuming compliance with these terms, our client will forbear from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

      Also, assuming compliance of these terms ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

         Please confirm your client's acceptance of this proposal and we will proceed to draft the agreement.  Our client reserves all rights, claims, remedies and causes of action until such time that a final written agreement is approved by the bankruptcy court.

Thank you,

Joe

Joseph H. Lemkin, Esq.   Shareholder

   D)   Drexel and its representatives were of course fighting for as much money as they could get, and Drexel's able and learned counsel Mr. Lemkin was of course zealously representing his client; for which no one can fault them. Nonetheless, it must be noted that it is of course axiomatic that not only is a settlement not a settlement until it is over, but it is inappropriate for Drexel to selectively present just a fraction of settlement discussions in a fashion which would place the Debtor in a false light. **It was Drexel — nobody else — who elected to blow up the settlement negotiations with its immoderate demand for the payment of *tens of thousands of dollars every month* — on a contested and <u>unsecured</u> claim — PRE-confirmation, and then the "entire balance" of several hundreds of thousands of dollars – on a contested and <u>unsecured</u> claim — within six months, even if that was still PRE-confirmation.** Again, no one is faulting Drexel and its able counsel for zealously and aggressively negotiating for as much as they could get — but it can not be denied that it was Drexel's immoderate and over-reaching April 14 demand that blew up the settlement negotiations.

MACIAG LAW, LLC

 /s/Thaddeus R. Maciag
Date: May 5, 2026                Thaddeus R. Maciag, Esq.
                                 *Attorney for the Debtors*