<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

**STARK & STARK, PC**
Joseph H. Lemkin, Esq.
100 American Metro Blvd.
Hamilton, NJ 08619
Telephone (609) 791-7022
*Attorneys for Drexel Distribution, Inc.*

In re:

PROPHASE DIAGNOSTICS NJ, INC., et al.,

    Debtors.

</td><td>

**Hearing Date: June 23, 2026
Time:              10:00 a.m.**

Chapter 11

Case Nos. 25-19833 (CMG)

Jointly Administered

Hon. Chief Judge
Christine M. Gravelle

</td></tr>
</table>

## OPPOSITION OF DREXEL DISTRIBUTION, INC. d/b/a EZ TEST NY TO DEBTORS' OBJECTION TO PROOF OF CLAIM

### PRELIMINARY STATEMENT

Drexel Distribution, Inc. d/b/a EZ Test NY ("Drexel") respectfully submits this Opposition

to the Debtors' Objection to the Proof of Claim of Drexel Distribution, Inc. d/b/a EZ Test NY (ECF

#134) (the "Claim Objection"). The Claim Objection should be overruled for *at least* three

independent and dispositive reasons. First, the Debtors have not carried - and cannot carry - their

burden of rebutting the prima facie validity of Drexel's proof of claim. Drexel's claim is supported

by a written agreement, invoices, and a September 8, 2025 Decision and Order entered by the New

York State Supreme Court (the "N.Y. State Court Decision") that granted Drexel partial summary

judgment after full briefing and consideration of all defenses that ProPhase chose to raise on

Drexel's motion.   That N.Y. State Court Decision was subsequently reduced to a judgment.   The

Debtors bear the burden of producing specific, admissible evidence sufficient to overcome the

1

presumptive validity of a filed proof of claim. The Debtors' conclusory allegations and speculation do not suffice.

Second, the Debtors fundamentally misread the N.Y. State Court Decision. Indeed, Justice Bannon did not "fix" Drexel's claim at $125,235.00 and extinguish the balance; rather, the Court granted Drexel partial summary judgment on two specific invoices (EZ-0026 and EZ-0026A) and expressly reserved the remaining claims - including all unpaid invoices - for trial. Drexel's proof of claim encompasses the full amount of the parties' dispute; it is not limited to the partial summary judgment amount.

Third, and alternatively, Drexel is entitled to discovery before this Court adjudicates the merits of the Claim Objection. The Debtors' Claim Objection raises disputed factual issues, including the validity and calculation of the "chargebacks," and the alleged recoupment and/or set-off rights under Section 2(a)(ii) of the parties' March 7, 2022 Specimen Collection and Laboratory Services Agreement (the "Agreement"), none of which were resolved by the N.Y. State Court Decision. These are fact-intensive disputes requiring discovery and, if necessary, an evidentiary hearing. The Claim Objection should not be sustained without affording Drexel an adequate opportunity to conduct discovery and present its defenses.

## STATEMENT OF FACTS

### A. Drexel's Proof of Claim and Its Basis

Drexel filed its Proof of Claim in these cases asserting a claim of approximately $1,754,088.00. That claim is based on: (a) the N.Y. State Court Decision, which recognized Drexel's entitlement to payment of certain of the unpaid invoices under the parties' Agreement, defined below, and granted partial summary judgment in the amount of $125,235.00, plus statutory interest from May 29, 2022 (*see* Accompanying Declaration of Bedis Zormati [the "Zormati Decl."] at ¶ 5, fn. 2; and (b) the remaining disputed invoice amounts and claims that the N.Y. State Court expressly

2

preserved for trial, including: (i) unpaid invoices under the parties' agreement beginning in or about May 2021, for Drexel's collection of patient samples for polymerase chain reaction ("PCR") testing to be performed by ProPhase during the COVID-19 pandemic, which costs were reimbursed to ProPhase under the Health Resources and Services Administration ("HRSA") (Zormati Decl., ¶¶ 4-5 & 11-17); (ii) unpaid invoices under the parties' agreement beginning in or about October 2021, for rapid antigen ("Antigen") testing performed by Drexel and reported by ProPhase, which costs were reimbursed to ProPhase under HRSA (*Id.*); (iii) unpaid invoices under the parties' Agreement for Drexel's collection of PCR samples and Antigen testing (*Id.*, at ¶¶ 19-24); and (iv) the agreement of the parties' for Drexel to provide logistical support by, among other things, picking up supplies from ProPhase, distributing them, and collecting completed specimen samples from various routes and then delivered to ProPhase (*Id.*, at ¶ 8).

## B. The N.Y. State Court Decision

The Debtors' Claim Objection mischaracterizes the N.Y. State Court Decision as having "reduced" Drexel's claim to $125,235.00 and resolved the parties' dispute. But that is *not* what Justice Bannon held. Rather, the N.Y. State Court Decision did the following: first, it granted partial summary judgment to Drexel on two invoices - EZ-0026 ($52,659.00) and EZ-0026A ($72,576.00) - for a combined total of $125,235.00. *See* ECF Doc. No. 134-1. The Decision next reserved for trial the remainder of Drexel's claims on its unpaid invoices on the grounds that they were insufficiently supported on the summary judgment record, *not* on the merits. *Id.* In the conclusion of the Court's decision, Justice Bannon specifically held:

> In light of the court's rulings herein, remaining for trial are the invoices referenced in Drexel's first cause of action for which summary judgment was not granted, Drexel's two remaining causes of action (*i.e.*, unjust enrichment and quantum meruit), and ProPhase's defenses and counterclaims.

*Id.* at p. 8 of 8.

3

In that regard, in response to ProPhase's argument on "chargebacks" the State Court noted that it was "not a valid basis to deny Drexel's motion" and that ProPhase did not "cross-move for summary judgment on its counterclaims." *Id.* at p. 7 of 8. Therefore, the Court noted that: "***should*** Prophase establish at trial that it is entitled to any amount as chargebacks, it would be entitled to a money judgment in that amount." *Id.* (emphasis added). Simply put, the State Court did ***not*** adjudicate the full $1,654,222.00 asserted in Drexel's second amended complaint. The State Court denied portions of the motion on procedural or evidentiary grounds, but ***not*** with prejudice and ***not*** on the merits. The State Court's decision is a non-final order which is explicitly marked "NON-FINAL DISPOSITION" on its face. *Id.* at p. 8 of 8. It was not a final judgment resolving the parties' entire dispute. The case was scheduled for a pre-trial settlement conference on October 9, 2025, which never occurred because ProPhase filed this bankruptcy eleven days after the N.Y. State Court Decision was decided.

## C. **Drexel's Claim Is Properly Stated**

Drexel's proof of claim includes $125,235.00, the liquidated partial summary judgment amount, plus statutory interest at the New York State judgment rate of 9% per annum from May 29, 2022 (accruing since that date through the petition filing date and post-petition). The Claim also includes amounts reserved for trial on the unpaid invoices. Those amounts were not dismissed with prejudice; rather, they were preserved for trial, at which Drexel is entitled to present its damages evidence. The amounts include:

- Invoice EZ-0014, calculated by multiplying the number of PCR samples collected as confirmed by ProPhase (2,342) by the unit price of $23.00 per specimen collected, for a total of $99,866 (Zormati Decl., at ¶¶ 5, 13, 16, and Exh. 6);

- Invoice EZ-0019A, calculated by multiplying the number of Antigen tests performed as confirmed by ProPhase (16,776) by the unit price of $27.00 per test performed, less the amount already paid under EZ-0019A, for a total due and owing of $167,760 (*Id.*, at ¶¶ 5, 15, 16, and Exh. 6);

4

- Invoice EZ-0028, calculated by multiplying the number of PCR samples collected as confirmed by ProPhase (10,747) by the unit price of $23.00 per specimen collected, for a total of $247,181 (Zormati Decl., at ¶¶ 5, 13, 16, and Exh. 6);[1]

- Invoice EZ-0028A, calculated by multiplying the number of Antigen tests performed as confirmed by ProPhase (2,989) by the unit price of $27.00 per test, for a total of $80,703 (*Id.*, at ¶¶ 5, 15, 16, and Exh. 6);[2]

- The Claim also includes other unpaid invoices that were not part of the summary judgment motion, but were included in the State Court lawsuit (*i.e.*, unpaid invoices EZ-0029 ($243,945), EZ-0029A ($43,686), EZ-0030 ($199,838), EZ-0030A ($64,955), EZ-0031 ($97,338), EZ-0031A ($48,025), EZ-0032 ($32,248), EZ-0032A ($58162), EZ-0033 ($54,947), EZ-0033A ($68,580), EZ-0034 ($64,975), EZ-0034A ($61,452), EZ-0035 ($66,999), EZ-0035A ($64,827), EZ-0036 ($73,347), EZ-0036A ($61,263), EZ-0037 ($35,512) and EZ-0037A ($30,672), all calculated using similar methodology as the other invoices that were included in the partial summary judgment motion (*Id.*, at ¶ 9 and Exh 6).

- The Claim also includes invoices that were included in the partial summary judgment motion, for the logistical services Drexel provided (*i.e.*, invoices EZ-0033B through EZ-0037B, in the sum of $9,100 per invoice) totaling $45,500.00. (*Id.*, at ¶ 8 and Exh 6). Although Justice Bannon denied recovery on these invoices for logistical services under the Agreement, Drexel asserted that there was a separate oral agreement for those services. That agreement was made beginning in approximately December 2021, and Drexel was paid $9,100 every two weeks for those services consistent with the parties' agreement. (*Id.*) However, beginning in June 2022, ProPhase failed and/or refused to pay Drexel's invoices for those services. (*Id.*)  Had ProPhase not filed for bankruptcy protection, Drexel would have appealed this aspect (and, perhaps other aspects) of the N.Y. State Court Decision.

Finally, pre- and post-petition statutory interest continues to accrue on the judgment amount.

## D.  The Debtors' Claim Objection Is Retaliatory and Procedurally Improper

As documented in Drexel's Supplemental Objection to the second exclusivity motion (ECF #140), the Claim Objection was filed on April 30, 2026 - the day after Drexel filed its objection to the Debtors' second exclusivity motion. This timing is not coincidental. The Debtors had represented to this Court for months that they were working toward a consensual resolution of

---

[1] Because the partial summary judgment motion only sought to recover money reimbursed to ProPhase during HRSA, Drexel's motion in the State Court proceeding limited the amount sought there under this invoice to $18,885. The Claim is not so limited here.

[2] Like Drexel's partial summary judgment motion on invoice EZ-0028, we also sought only those funds paid to ProPhase during HRSA, and so the motion was limited to $5,260 on this invoice. Once again, the Claim is not so limited here.

Drexel's Claim. Instead of providing the promised term sheet, however, they filed the Claim Objection seeking to expunge Drexel's Claim entirely. The Debtors then filed an adversary complaint (Adv. Pro. No. 26-01208-CMG) asserting $2,571,842.00 in claims against Drexel - all while arguing in the Claim Objection that Drexel's Claim should be expunged. The Debtors cannot simultaneously argue that Drexel owes ProPhase over $2.5 million while seeking to extinguish Drexel's Proof of Claim without first adjudicating those counterclaims through a full and fair evidentiary process.[3]

## LEGAL ARGUMENT

### I.

### STANDARD FOR OBJECTION TO A PROOF OF CLAIM

A proof of claim filed in accordance with the Federal Rules of Bankruptcy Procedure "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Once a claimant files a proof of claim that complies with Rule 3001, the burden of going forward shifts to the objecting party to produce evidence sufficient to rebut the presumption of the claim's validity. *Id.*

The Third Circuit has established a burden-shifting framework for claim objections:

1. The claimant must allege facts sufficient to support the claim. If the allegation is sufficient to support the claim, the claimant has a prima facie case.

2. The burden then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim.

3. If the objector produces sufficient evidence to negate the claimant's prima facie case, the burden shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence.

---

[3] The adversary complaint is procedurally and substantively defective for several other reasons and, if the matter is to proceed, will be subject to a motion to dismiss. The adversary proceeding also invites a third-party complaint against the officers and directors of the Debtors who, while the Debtors were in the zone of insolvency, abandoned their fiduciary obligations owed to the Debtors' creditors and wasted and mismanaged the Debtors' assets.

*In re Allegheny Int'l*, 954 F.2d at 173–74. Critically, the objector must produce *actual evidence* — not bare allegations. Mere assertions that the claim is invalid or that offsetting counterclaims exist do not suffice to overcome the prima facie presumption. *See In re Giordano*, 446 B.R. 744 (Bankr. E.D. Va. 2010). To rebut the prima facie validity of a proof of claim, the objector must present "substantial evidence" that, if believed, would refute at least one of the essential allegations supporting the claim. *Kittery Point Partners, LLC v. Bayview Loan Servicing, LLC (In re Kittery Point Partners, LLC)*, 623 B.R. 825 (2021).  Courts have consistently held that the objector must produce evidence equal in probative force to the prima facie case established by the proof of claim *Id.* .

## **II.**

### **THE DEBTORS HAVE NOT CARRIED THEIR BURDEN TO REBUT THE PRIMA FACIE VALIDITY OF DREXEL'S CLAIM**

#### **A. Drexel's Proof of Claim Is Prima Facie Valid**

Drexel's proof of claim is supported by: (1) a written agreements between the parties; (2) specific invoices with the number of PCR specimens collected or Antigen tests performed, as confirmed by ProPhase itself, with corresponding dollar amounts for each service in accordance with the agreement of the parties; (3) a N.Y. State Court Decision and partial judgment for $125,235.00 entered on the merits after full briefing; and (4) preservation by the State Court of the remaining disputed amounts for trial. This is more than sufficient to establish prima facie validity. *In re Allegheny Int'l*, 954 F.2d at 173.

#### **B. The Debtors' Rely on Speculation, Not Evidence, and Misread the Agreement**

The Claim Objection asserts that Drexel's specimens were plagued by patient-eligibility issues, documentation deficiencies, and specimen-integrity problems, and that these deficiencies support the $2,571,842.00 "chargeback" which, by way of recoupment or set-off, would reduce

7

Drexel's claim to zero. But the Claim Objection offers no admissible evidence of these assertions. Rather, it relies on the same Karkus Affidavit that ProPhase submitted in the State Court action - which Justice Bannon found insufficient to defeat Drexel's motion and which the State Court effectively ignored when it noted that "[t]he only support for the purported chargebacks is a single invoice dated November 7, 2023...."[4]

The Debtors bear the burden of rebutting Drexel's prima facie case. Sworn assertions by a party's own officer, without independent documentation, corroborating records, or expert analyses, do not constitute the kind of specific, admissible evidence required to overcome the presumption of a filed proof of claim. *See In re Allegheny Int'l*, 954 F.2d at 173-74.

The Debtors' "chargeback" claim is a complete misreading of the Agreement. In fact, the Agreement states that, for PCR testing, ProPhase will pay Drexel $13.00 within 10 days of the date of Drexel's collection invoice, and then the balance of $10.00 will be paid within 60 days of the date of Drexel's invoice (for a total of $23.00 for the collection of each PCR specimen). If, however, ProPhase was not reimbursed by insurance within 180 days, then, in such instance, ProPhase will be entitled to "claw back" the $10 per PCR specimen paid for. That contractual language is significant because the Debtors have ***not*** shown any case in which ProPhase ***actually paid*** Drexel for a PCR specimen that Drexel collected, but for which ProPhase did not receive reimbursement, nor can it. Instead, the Debtors disingenuously twist the language of the Agreement in an effort to assert a claim that they are entitled to "chargeback" (not "claw back") $10 for ***all*** specimens that ProPhase tested (regardless of whether ProPhase actually paid Drexel), but that is not what the Agreement says. As mentioned, the Agreement contemplates a "claw back" of money ***actually paid*** to Drexel in cases where ProPhase paid Drexel for collection of PCR samples, which ProPhase

---

[4] The foregoing is noteworthy for a number of reasons. Among them, that the invoice was sent ***after*** the parties' relationship deteriorated in August 2022 due to ProPhase's non-payment and was sent nearly fourteen months ***after*** Drexel sued ProPhase in the State Court. Zormati Decl., at ¶ 31 and Exh. 7.

tested, but for which ProPhase was not reimbursed by insurance - but that is *not* what the Debtors are claiming here.

Even more egregious, the belated invoice purports to claim a "chargeback" of $648,219 for unreimbursed Antigen tests, but that is not contemplated even under the most generous misreading of the Agreement.

Finally, the Claim Objection completely glosses over the fact that, once the HRSA program ended, ProPhase specifically, and in writing, advised its collection partners (including Drexel) that it would assume the risk of non-payment on all testing. *See* Zormati Decl., Exh. 5.

### III.

### THE DEBTORS ALSO MISREAD THE STATE COURT DECISION

The centerpiece of the Debtors' Claim Objection appears to be the argument that the N.Y. State Court Decision resolved the parties' dispute and that Drexel's Claim should be limited accordingly. That argument is wrong as a matter of law and fact, for the following reasons:

### A. The Decision Is Non-Final

Justice Bannon's order is expressly marked "NON-FINAL DISPOSITION" on its face. ECF Doc. No. 134-1 at p. 8 of 8. It resolved two specific invoices (EZ-0026 and EZ-0026A) and expressly reserved all remaining claims, including unpaid invoices, Drexel's equitable claims, and ProPhase's own ill-conceived "chargeback" counterclaim for trial. ECF Doc, No. 134-1. A non-final order resolving some but not all claims in a case has no preclusive effect on the unresolved claims. *See Restatement (Second) of Judgments § 13* (finality required for claim preclusion). A "final" order or judgment is defined as one that disposes of all causes of action between the parties in the action or proceeding and leaves nothing for further judicial action apart from mere ministerial matters. Conversely, a "non-final" order or judgment resolves one or more, but not all, causes of action in the complaint while leaving other causes of action between the same parties for resolution

in further judicial proceedings. *Burke v. Crosson*, 85 N.Y.2d 10 (1995). Simply put, non-final orders are not considered final judgments and, therefore, do not have preclusive effect under the doctrine of *res judicata* or collateral estoppel.

## B.  Issue Preclusion Does Not Apply to the Unresolved Claims

Issue preclusion (collateral estoppel) bars relitigation only of issues that were *actually litigated and necessarily decided* in a prior proceeding. *Buechel v. Bain,* 97 N.Y.2d 295 (2001). Justice Bannon did not decide the validity or amount of Drexel's delivery service claims, the other invoices, damage calculations, or Drexel's equitable claims.  Rather, the State Court expressly *deferred* them. They cannot be precluded. Justice Bannon also explicitly *preserved* ProPhase's "chargeback" counterclaim, stating that "*should* Prophase establish at trial that it is entitled to any amount as chargebacks, it would be entitled to a money judgment in that amount." ECF Doc. No. 134-1 (emphasis added). This means the chargeback claim is an unresolved, unliquidated claim that must be adjudicated on a full evidentiary record. The Debtors cannot use a non-final state court order as a shield to extinguish Drexel's claim while simultaneously pursuing the "chargeback" claim in this Court as a sword in an adversary complaint seeking $2,571,842.00.

## IV.

## IN THE ALTERNATIVE, DREXEL IS ENTITLED
## TO DISCOVERY BEFORE THE CLAIM OBJECTION IS ADJUDICATED

Even if this Court were to conclude that the Claim Objection raises disputed factual issues that warrant further inquiry, which Drexel submits is premature and incorrect, Drexel is entitled to discovery before the Court adjudicates those issues.

## A.  The Disputed Facts Are Extensive

The Debtors' Claim Objection challenges the validity of Drexel's invoices based on: (1) the volume and calculation of unreimbursed specimens subject to "chargebacks" (which, as mentioned,

10

is a wholly incorrect reading of the Agreement); (2) ProPhase's own billing and account receivable collection practices with respect to the specimens and/or tests; (3) whether ProPhase actually collected insurance reimbursements on specimens for which it seeks "chargebacks";[5] and (4) the amount of statutory interest accrued on the judgment. None of these issues can be resolved without discovery.

### B. Bankruptcy Rule 9014 and Due Process Require an Opportunity to Conduct Discovery

Claim objection proceedings are contested matters governed by Federal Rule of Bankruptcy Procedure 9014, which incorporates the discovery rules of Part VII. *See* Fed. R. Bankr. P. 9014(c). A creditor facing a claim objection that raises disputed factual issues has a due process right to conduct discovery before its claim is adjudicated. *In re Meade*, 2019 WL 3854980, at *4 (Bankr. E.D. Pa. 2019).[6] To sustain the Claim Objection without permitting discovery would deny Drexel its right to a fair hearing.

### C. The Debtors' Own Adversary Complaint Demonstrates Discovery Is Necessary

The Debtors simultaneously filed a 29-page adversary complaint against Drexel (and, incredibly, Mr. Zormati, individually) asserting eight claims for relief based on the same agreements and bogus "chargeback" theories at issue in the Claim Objection. The Debtors themselves recognized - and represented to this Court - that those factual issues are complex enough to warrant full adversary discovery under Federal Rules of Bankruptcy Procedure 7026 through 7037. They cannot simultaneously argue that the same issues are simple enough to resolve on a claim objection without discovery.

---

[5] As set forth in the Zormati Decl., Drexel has sought this reimbursement information in the State Court and we have sought it under Fed. R. Bankr. P. 2004, here. It has never been provided. Nevertheless, through some of Drexel's own investigations, we have learned that, despite the Debtors' representations, ProPhase has in fact received reimbursement in many cases. *See* Zormati Decl., ¶¶ 25-29.

[6] In that regard, the Debtors' purported "reservation of rights" to seek information under Fed. R. Bankr. P. 2004 is misguided and procedurally improper.

11

To the extent the Debtors' "chargeback" claim is a defense to Drexel's claim, it should either be adjudicated as a contested matter or in connection with the adversary proceeding (Adv. Pro. No. 26-01208-CMG). As the Debtors themselves acknowledged in the adversary complaint, "the parties' rights and liabilities under the Agreement are most efficiently adjudicated in this Court" through the adversary proceeding. The Claim Objection should either be overruled outright or, at minimum, the matter should be subject to discovery in a contested matter or deferred pending resolution of the adversary proceeding, either of which will provide the full evidentiary record necessary to adjudicate the parties' respective claims.

## CONCLUSION

For the foregoing reasons, Drexel Distribution, Inc. d/b/a EZ Test NY respectfully requests that this Court:

1. Overrule the Debtors' Objection to Proof of Claim;

2. Allow Drexel's Proof of Claim in the full amount filed;

3. In the alternative, direct that discovery and a hearing take place in this contested matter or defer adjudication of the Claim Objection pending completion of discovery in the adversary proceeding (Adv. Pro. No. 26-01208-CMG); and

4. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**STARK & STARK, P.C.**
A Professional Corporation

*/s/ Joseph H. Lemkin*
Joseph H. Lemkin, Esq.
100 American Metro Boulevard
Hamilton, N.J. 08619-2319
(609) 791-7022
jlemkin@stark-stark.com
*Attorneys for Drexel Distribution, Inc.*
*d/b/a Drexel Distribution, Inc. d/b/a EZ*
*Test NY*

12