**WESTERMAN BALL EDERER**
**MILLER ZUCKER & SHARFSTEIN, LLP**
1201 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 622-9200
William H. Heuer
Michele L. Angell
*Attorneys for ATC Testing*
*and Screening Services LLC*

and

**THE KELLY FIRM, P.C.**
Andrew J. Kelly, Esq.
Nicholas D. Norcia, Esq.
1011 Highway 71, Suite 200
Spring Lake, New Jersey 07762
(732)449-0525
akelly@kbtlaw.com
nnorcia@kbtlaw.com
*Local Counsel for ATC Testing*
*and Screening Services LLC*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ProPhase Diagnostics NJ, Inc., *et al*.,<br><br>                        Debtors.[1] | Chapter 11<br><br>Case No. 25-19833 (CMG)<br><br>Jointly Administered<br><br>**Hearing Date: June 23, 2026** |

### JOINDER TO MOTION TO CONVERT CHAPTER 11 CASES
### TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b)

---

[1] The debtors in the above-captioned chapter 11 cases (the "Bankruptcy Cases," and each, a "Bankruptcy Case") are: ProPhase Diagnostics NJ, Inc. ("ProPhase NJ"), ProPhase Diagnostics NY, Inc. ("ProPhase NY"), and ProPhase Diagnostics, Inc. ("ProPhase Inc.," and together with ProPhase NJ and ProPhase NY, the "Debtors," and each, a "Debtor").

1

ATC Testing and Screening Services LLC ("ATC"), a creditor of Debtor ProPhase Inc., respectfully submits this joinder (the "Joinder") to the motion [Docket No. 150] (the "Motion") filed by Drexel Distribution, Inc. d/b/a EZ Test NY ("Drexel") to convert these chapter 11 Bankruptcy Cases to chapter 7 of title 11, United States Code (the "Bankruptcy Code") pursuant to 11 U.S.C. § 1112(b).

## PRELIMINARY STATEMENT[2]

ATC holds a nearly $650,000 claim against Prophase Inc. in its Bankruptcy Case arising from a Final Award issued in arbitration based on Prophase Inc.'s breach of contract. ATC fully agrees with Drexel's position that the Debtors – who have no business, operations, customers, revenue stream, or employees – have no reasonable prospect of reorganizing and thus, that the Bankruptcy Cases should be converted to cases under chapter 7 of the Bankruptcy Code.

While the Debtors, in breach of their statutory and fiduciary obligations, have failed to file monthly operating reports since February 2026, they had by then incurred cumulative operating losses exceeding $351,000. No plan has been filed, nine months into these Bankruptcy Cases. The Debtors appear to be primarily focused on their litigation with Drexel that can proceed (and was proceeding) in state court, rather than preparing any plan to pay ATC's Final Award. Moreover, the Debtors are burning through professional fees with funds that could have been utilized towards paying the Final Award, to the tune of over $147,000 through the first quarter of 2026 alone – with only *de minimis* time spent on plan preparation. Thus, the appointment of a chapter 7 trustee is necessary here for, *inter alia*:

---

[2] Capitalized terms used in this Preliminary Statement that are not otherwise defined herein have the meanings ascribed to them in the body of the Joinder.

o   The orderly collection and distribution of potentially significant receivables owed by insurance carriers to the Debtors.

o   The evaluation and, if appropriate, prosecution, of estate causes of action (including the Debtors' alleged chargeback claims against Drexel, if meritorious).

o   The elimination of the continuing drain of the Debtors' professionals, whose billing has thus far been heavily weighted toward litigation with no more than *de minimis* time spent on any plan preparation.

o   Independent oversight for the creditor body.

Only through conversion can creditors be assured that assets will be preserved, investigated and administered for their collective benefit.  Thus, conversion is plainly in the best interests of the creditors and Debtors' estates, and ATC therefore urges this Court to convert the Bankruptcy Cases to chapter 7.

## FACTUAL AND PROCEDURAL BACKGROUND

1.      On or about February 19, 2021, ATC and Prophase Inc. entered into a *Specimen Collection and Laboratory Services Agreement* (the "Agreement"), pursuant to which ATC would collect specimens and perform preliminary processing for COVID-19 testing which would be sent to Prophase Inc. laboratories.

2.      On January 11, 2024, ATC initiated an arbitration against Prophase Inc., seeking damages for Prophase Inc.'s breach of the Agreement.  An arbitrator (the "Arbitrator") was appointed in accordance with the mandatory arbitration provision set forth in the Agreement.

3.      On July 3, 2025, after reviewing the evidence presented, including witness affidavits, and considering the parties' arguments submitted in memoranda of law, the Arbitrator issued a final award (the "Final Award").  Therein, the Commercial Arbitral Tribunal rejected all of Prophase Inc.'s counterclaims and found in favor of ATC.

4.      The Arbitrator awarded ATC $544.027.42, plus interest at a rate of 9% per annum commencing from the date of the breach and running through the date of the Final Award,

totaling $97,924.94. The administrative fees of the American Arbitration Association, totaling $13,200.00 and the compensation of the Arbitrator, totaling $40,410, were to be borne equally by ATC and Prophase Inc. Thus, the Final Award directed Prophase Inc. to additionally pay ATC the sum of $1,100.00 to reimburse ATC's payment of the foregoing administrative fees and Arbitrator compensation incurred, due and owing, from amounts deposited with the American Arbitration Association.

5. The total monetary award in ATC's favor to be paid by Prophase Inc. is therefore $643,052.36, which ATC was supposed to be paid. Specifically, the Final Award directed Prophase Inc. to pay the amount set forth therein within thirty (30) days of the date of the Final Award. This amount remains wholly unpaid to date.

6. On or around August 18, 2025, ATC filed the *Petition to Confirm Arbitration Award* in the Supreme Court for the State of New York, Nassau County (the "Arbitration Petition").

7. On September 22, 2025 (the "Petition Date"), the Debtors filed the Bankruptcy Cases in this Court.

8. On November 21, 2025, ATC timely filed Proof of Claim No. 2-1 in Prophase Inc.'s Bankruptcy Case in the amount of $643,052.36 based on the Final Award arising from ATC's breach of contract claim under the Agreement (the "Proof of Claim"). ATC annexed the Final Award, Arbitration Petition and Agreement as exhibits to the Proof of Claim.

9. On January 13, 2026, the United States Trustee for Regions 3 and 9 (the "UST") sought to dismiss the Bankruptcy Cases, or in the alternative, to convert them to chapter 7 [Docket No. 59] (the "UST Motion").

10. On February 2, 2026, Drexel joined the UST Motion [Docket No. 69].

11.     On February 3, 2026, Drexel objected to the Debtors' first motion to extend exclusivity [Docket No. 84].

12.     This Court deferred the conversion or dismissal question and granted the Debtors an additional period to attempt to file a plan, subject to further review.

13.     The Debtors' situation has only declined further since February 2026.  Their most recent monthly operating reports, filed on March 30, 2026, for the period ending February 28, 2026 [Docket No. 104], disclose combined, cumulative operating losses exceeding $351,000, while their total professional fees requested through the first quarter of 2026 exceed $147,400 for lead counsel alone [Docket Nos. 62, 124].

## LEGAL ARGUMENT

14.     Section 1112(b) of the Bankruptcy Code provides that "after notice and a hearing, the court *shall* convert a case under this chapter [11] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause…"  11 U.S.C. § 1112(b) (emphasis added).  The term "cause" includes, but is not limited to:

- o  Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
- o  Gross mismanagement of the estate;
- o  Unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; and
- o  Failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

*See* 11 U.S.C. § 1112(b)(4)(A)-(B), (F), (J).

15.     Pursuant to section 1112(b)(1), the initial burden lies with the movant to establish "cause" for conversion.  *See* 11 U.S.C. § 1112(b)(1); *In re Gateway Access Sols., Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007).  If a movant establishes "cause," the burden then shifts to the debtor to prove it falls within the section 1112(b)(2) "unusual circumstances" exception to

5

section 1112(b)(1)'s "*mandatory* conversion." *Id.* (emphasis added). "Congress explained the exception, stating it only applies if: '(1) the debtor or a party in interest objects and establishes that there is a reasonable likelihood that a plan will be confirmed within the time periods set forth in section 1121(e) and 1129(e), or if these provisions are inapplicable, within a reasonable period of time; (2) the grounds for granting such relief include an act or omission of the debtor for which there exists a reasonable justification for such act or omission; and (3) such act or omission will be cured within a reasonable period of time.'" *Id.* (quoting H.R. Rep. No. 109-31(I) at 94 (April 8, 2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 2005 WL 832198).

16.     As correctly argued by Drexel, conversion of the Bankruptcy Cases to chapter 7 is mandated here by at least sections 1112(b)(4)(A), (B), (F) and (J) of the Bankruptcy Code.

**A.     <u>Conversion is Mandated Under 11 U.S.C. § 1112(b)(4)(A)</u>**

17.     *First*, the Debtors have incurred substantial and continuing losses and diminution to their estates and there is no reasonable likelihood of rehabilitation here. *See* 11 U.S.C. § 1112(b)(4)(A). "[T]here must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991) (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988)). "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *Id.* (quotation omitted). "Thus, the inquiry…is twofold. First, the Court must look at the track record of the Debtor to determine if it is suffering losses or making gains. Second, the Court must determine whether rehabilitation is likely…" *Gateway Access Sols.*, 374 B.R. at 562.

18.     Here, as Drexel observes, the Debtors' most recent monthly operating reports, for the period ending February 28, 2026, disclose combined, cumulative operating losses exceeding $351,000. At the same time, the Debtors requested professional fees through the first quarter of

2026 exceeding $147,400 for lead counsel alone, without even accounting for their special counsel handling their litigation against Drexel, which appears to be the focus of these Bankruptcy Cases rather than liquidation through the collection of insurance receivables.  Nor do the Debtors generate income, because they have no business, operations or employees, inasmuch as they ceased providing COVID-19 diagnostic testing in May 2025.  (*See Certification of Bedis Zormati in Support of Motion by Drexel Under 11 U.S.C. § 1112(b) for an Order Converting the Cases to Chapter 7, or in the Alternative Appointment of a Chapter 11 Trustee or Examiner*, dated May 15, 2026 [Docket No. 150] (the "Zormati Decl."), ¶ 22.)  ATC thus respectfully submits that the appointment of a chapter 7 trustee to collect insurance receivables for the benefit of creditors would best enable the Debtors to pay ATC's claim, as well as those of other creditors.

**B.**     **Conversion is Mandated Under 11 U.S.C. § 1112(b)(4)(B)**

19.     *Second*, based on the Motion, the Debtors appear to be grossly mismanaging their estates as debtors-in-possession.  The Motion's allegations in this regard are troubling to ATC. (*See* Motion at 15-16.)  Plainly, the Debtors should not be expending estate resources that could be used to pay the Final Award to seek Bankruptcy Rule 2004 discovery on topics of a pending adversary proceeding or contested matter.  *See, e.g.*, *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Indeed, a Rule 2004 examination is generally not available once an adversary proceeding or contested matter has been commenced; at that point, discovery is made pursuant to the Federal Rules of Bankruptcy Procedure.").  Nor should the Debtors be misleading the Court about potential creditor settlements or anything else.  (*See* Motion at 15.)  Moreover, ATC agrees with Drexel that in non-operating, liquidation cases like these Bankruptcy Cases, where estate value is steadily eroding through professional fees,

deploying expansive discovery against a single creditor and its principals will increase administrative expense without demonstrated net benefit to general unsecured creditors like ATC. (*See* Motion at 16.) Yet, the Debtors as debtors-in-possession appear to have expended little to no effort whatsoever towards preparing a plan or collecting insurance receivables that could potentially repay the Final Award.

**C.** **Conversion is Mandated Under 11 U.S.C. § 1112(b)(4)(F) and/or (H)**

20.     *Third*, the Debtors have failed to satisfy the requirement that they timely file monthly operating reports. "Monthly reports and the financial disclosures contained within them are the life-blood of the Chapter 11 process…" *In re Whetten*, 473 B.R. 380, 383 (Bankr. D. Colo. 2012) (quotation omitted). "Without these reports, the UST and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization." *Id.* "The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize." *Id.* at 384. "'[H]abitual non-compliance…calls in to question a debtor's ability to effectively reorganize.'" *Id.* (quoting *In re Tucker*, 411 B.R. 530, 535 (Bankr. S.D. Ga. 2009), quoting *In re 210 West Liberty Holdings, LLC*, 2009 WL 1522047, at *7 (Bankr. N.D. W. Va. May 29, 2009)). "If a debtor does not fulfill this basic obligation during the Chapter 11 case, when it knows it will have to come before the court on any number of occasions, how can the creditors have any confidence that the debtor will timely and accurately report its income and make the required distributions under its plan, when the court and the UST are no longer monitoring the case? Consequently, the 'importance of filing monthly reports cannot be over-emphasized.'" *Id.* (quoting *In re Myers*, 2005 WL

1324019, at *2 (10th Cir. BAP May 25, 2005)) (brackets and ellipses omitted).  "A debtor ignores this basic duty at its own peril." *Id.*

21.     "An unexcused failure to satisfy timely any filing or reporting requirement established by the Bankruptcy Code or by any rule applicable to a case under chapter 11 is cause for relief under § 1112(b)(4)(F)."   *Tucker*, 411 B.R. at 532 (brackets and quotation marks omitted).  Moreover, the UST "has adopted reporting requirements embodied in its Guidelines that a debtor-in-possession is required to fulfill.  Failure to timely provide information…also constitutes cause for relief."  *Id.* (citing 11 U.S.C. § 1112(b)(4)(H)) (internal quotation marks omitted); *see Whetton*, 473 B.R. at 384-85 (finding that debtors' persistent failure to file periodic operating reports and summaries required of chapter 11 debtors constituted cause to convert or dismiss); *Tucker*, 411 B.R. at 532, 535 (concluding "that conversion to Chapter 7 is in the best interest of creditors and the estate" where "Debtor's monthly operating reports are incomplete, misleading, and materially false in some respects.").

22.     As of the date hereof – June 16, 2026 – the Debtors have failed to file monthly operating reports since March 30, 2026, for the period ending February 28, 2026.  Neither ATC nor any other creditors have any visibility into the Debtors' operating losses incurred after February 28, 2026, nearly four months ago.  The Bankruptcy Cases should be converted for cause for this reason alone.

**D.     <u>Conversion is Mandated Under 11 U.S.C. § 1112(b)(4)(J)</u>**

23.     *Fourth*, these Bankruptcy Cases have been pending since September 22, 2025, with no plan on file, and none in the works, to ATC's knowledge.  The Debtors' original 120-day exclusivity period expired, and this Court granted an extension after the Debtors' first exclusivity motion [Docket Nos. 56, 93].  The Debtors then sought a second extension of their exclusive

periods to file plans and solicit acceptances thereof through July 20, 2026, and September 18, 2026, respectively [Docket No. 109]. The Court authorized more limited extensions [Docket No. 155], the first of which is set to expire in approximately one (1) week, on June 29, 2026. Yet, there is neither a plan, nor a term sheet of which ATC is aware. There is no disclosure statement. There is no identified plan structure. ATC is deeply troubled by the revelation, as Drexel points out, that the Debtors' counsel's fee applications show that only 2.7 hours of legal work across the entire first quarter of 2026 were devoted to plan preparation. The Debtors have apparently represented that insurance collection efforts will take months. These Bankruptcy Cases simply cannot proceed toward confirmation on any realistic timeline and should be converted.

**E.**      **<u>Conversion, Rather Than Dismissal, is in the Best Interests of Creditors</u>**

24.      ATC likewise joins in Drexel's arguments that conversion of the Bankruptcy Cases to chapter 7, rather than dismissal, is in the best interest of the Debtors' creditors. *First*, the Debtors' estates hold insurance receivables that a chapter 7 trustee could collect and distribute to creditors, including ATC. *Second*, a chapter 7 trustee would evaluate and, if appropriate, prosecute estate causes of action (including the purported chargeback claims against Drexel, if meritorious), for ATC's benefit. *Third*, a chapter 7 trustee would eliminate the continuing drain of the Debtors' professionals, little if any of which has been expended on a plan process. *Fourth*, a chapter 7 trustee would provide the creditor body with independent oversight that is presently entirely absent in these Bankruptcy Cases.

25.      ATC agrees with Drexel that dismissal of the Bankruptcy Cases would simply restore the status quo and return the Debtors to state court, including in connection with ATC's Arbitration Petition, which certainly did not result in ATC being paid its Final Award. Thus, ATC respectfully submits that chapter 7 bankruptcy is the appropriate remedy.

## CONCLUSION

**WHEREFORE**, for the above reasons, ATC respectfully requests that the Court grant Drexel's Motion and ATC's Joinder to convert the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code, together with such other and further relief as is just, necessary or appropriate.

Respectfully Submitted,

**WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP**
Thomas A. Draghi, Esq.
William C. Heuer, Esq.
Michele L. Angell, Esq.
1201 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 622-9200
tdraghi@westermanllp.com
wheuer@westermanllp.com
mangell@westermanllp.com
*Attorneys for ATC Testing and
Screening Services LLC*

**AND**

**THE KELLY FIRM, P.C.**
Andrew J. Kelly, Esq.
Nicholas D. Norcia, Esq.
1011 Highway 71, Suite 200
Spring Lake, New Jersey 07762
(732)449-0525
akelly@kbtlaw.com
nnorcia@kbtlaw.com
*Local Counsel for ATC Testing
and Screening Services LLC*

By:    */s/ Andrew J. Kelly*
      **ANDREW J. KELLY**

Dated:  June 16, 2026

11