**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

MACIAG LAW, LLC
Thaddeus R. Maciag, Esq.
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
*Attorney for the Debtors*


WALLACE NEEL, PLLC
Wallace B. Neel, Esq. (Admitted Pro Hac Vice)
1 Blue Hill Plaza, LL Suite 1509
Pearl River, New York 10965
*Special Counsel to the Debtors*

|  |  |
|---|---|
| In re:<br><br>  ProPhase Diagnostics NJ, Inc.*, et al.,*<br><br>Debtors.<br><br>  (jointly administered) | Case No.: 25-19833-CMG<br> Chapter 11<br> Judge: Hon. Christine M. Gravelle |


# ORIGINAL JOINT PLAN OF REORGANIZATION


Debtors, as Plan Proponents, respectfully submits their Original Joint Plan of

Reorganization pursuant to Chapter 11, Title 11 of the United States Code, in the form

annexed hereto and made a part hereof.

Plan Proponents:


ProPhase Diagnostics NJ, Inc.
ProPhase Diagnostics NY, Inc.
ProPhase Diagnostics, Inc.
(*jointly administered debtors*)

by: *Ted Karkus*

Date: June 29, 2026                    Ted Karkus
                                       Chief Executive Officer
                                        of the jointly administered debtors

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | 4 |
|   | A.   General Overview | 4 |
|   | B.   Definitions | 4 |
|   | C.   Unclassified Claims | 10 |
|   |      1.   Administrative Expenses and Fees | 10 |
|   |      2.   Priority Tax Claims | 11 |
|   | D.   Classified Claims and Interests | 12 |
|   |      1.   Classes of Secured Claims | 12 |
|   |      2.   Priority Unsecured Non-Tax Claims | 12 |
|   |      3.   Class(es) of General Unsecured Claims | 13 |
|   |      4.   Priority Non-Tax Claims | 15 |
|   |      5.   Class(es) of Equity Interest Holders | 15 |
|   |      6.   Other Claims | 15 |
|   | E.   Acceptance or Rejection of Plan | 15 |
|   | F.   Means of Effectuating the Plan | 16 |
|   |      1.   Funding for the Plan | 16 |
|   |      2.   Post-Confirmation Management | 17 |
|   |      3.   Disbursing Agent | 18 |
| III. | TREATMENT OF MISCELLANEOUS ITEMS | 18 |
|   | A.   Executory Contracts and Unexpired Leases | 18 |
|   |      1.   Assumptions | 18 |
|   |      2.   Rejections | 18 |
|   | B.   Changes in Rates Subject to Regulatory Commission Approval | 19 |
|   | C.   Retention of Jurisdiction | 19 |

D.    Procedures for Resolving Contested Claims.............................................................20

E.    Effective Date............................................................................................................20

F.    Notices under the Plan..............................................................................................20

IV.    EFFECT OF CONFIRMATION OF PLAN................................................................20

A.    Discharge...................................................................................................................20

B.    Revesting of Property in the Debtor.........................................................................21

C.    Modification of Plan.................................................................................................21

D.    Post-Confirmation Conversion/Dismissal................................................................22

E.    Post-Confirmation Quarterly Fees...........................................................................22

## I.

**INTRODUCTION**

ProPhase Diagnostics NJ Inc., ProPhase Diagnostics NY Inc., and Prophase Diagnostics Inc., as Jointly Administered Debtors  (the "Debtors" or the "Proponents" of this Original Plan of Reorganization) are the Debtors in a Chapter 11 Reorganization case.  On September 22, 2025, the Debtors commenced three Chapter 11 Reorganization cases in the District of New Jersey, under the United States Bankruptcy Code ("Bankruptcy Code "), 11 U.S.C. § 101 et seq., captioned and numbered as

In re ProPhase Diagnostics, NJ Inc. (Case # 25-19833-CMG)

In re ProPhase Diagnostics, NY Inc. (Case #25-19834-CMG)

In re Prophase Diagnostics, Inc. (Case #25-19836-CMG)

On October 1, 2025, a Court Order (ecf #18) was entered which provides for Joint Administration of the three cases, under the "Lead Case" name and case number of "ProPhase Diagnostics, NJ Inc. (Case # 25-19833-CMG)" as captioned on the first page of this Plan of Reorganization.

This document (the "Original Plan") is the Chapter 11 plan (the "Plan") proposed by the Debtors  (the "Proponents"). Sent together with this document (and enclosed in the same envelope if mailed) as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a Reorganizing Plan. In other words, the Proponent seeks to accomplish payments under the Plan by funds generated from  from operations and collection of receivables. The Effective Date of the proposed Plan is the date on which all conditions to confirmation have been met, and the confirmation order is no longer appealable; that date is estimated to be approximately 45 days from the Confirmation Date.

## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

### B.    Definitions

**Scope of Definitions.** For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.    **Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without

limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses to professionals retained with Court approval, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Proponent in connection with the proposal and confirmation of this Plan.

2. **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest",shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed  Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity  Interest from and after the Petition Date.

3. **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

4.   **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or has become an Allowed Claim.

5.   **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

6.   **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

7.   **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

8.   **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

9.   **"Case PP-NJ"** means and refers to Case #25-19833-CMG, "In re ProPhase Diagnostics NJ, Inc.

10.   **"Case PP-NY"** means and refers to Case #25-19834-CMG, "In re ProPhase Diagnostics NY, Inc.

11.   **"Case PP-INC"** means and refers to Case #25-19836-CMG, "In re ProPhase Diagnostics, Inc.

12.   **Chapter 11 Case** shall mean this case under Chapter 11 of the Bankruptcy Code in which ProPhase Diagnostics NJ Inc., ProPhase Diagnostics NY Inc., and Prophase Diagnostics Inc., as Jointly Administered Debtors  are the Debtors.

13.   **Claim** shall mean any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable

remedy for breach of performance if such breach gives rise to a right of payment from the Debtors whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims are defined as such term is defined in section 101(5) of the Bankruptcy Code.

14. **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

15. **Code** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

16. **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

17. **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

18. **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

19. **Creditor** shall mean any person that has a Claim against the Debtors that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in section 502(g), 502(h) or 502(I) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

20. **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

21. **Debtor** or Debtor-in-Possession shall mean the Debtors herein, ProPhase Diagnostics NJ Inc., ProPhase Diagnostics NY Inc., and Prophase Diagnostics Inc., as Jointly Administered Debtors .

22. **Disbursing Agent** shall mean the Debtor, or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be

distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order. This Plan proposes that the Debtors will be their own Disbursing Agent.

23. **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtors as required pursuant to Section 1125 et seq. of the Bankruptcy Code.

24. **Effective Date** shall mean the day on which the Confirmation Order becomes a Final Order, being the date on which all conditions to Confirmation have been met, and the Confirmation Order is final and non-appealable..

25. **Equity Interest Holder** shall mean the holder of an equity interest in the Debtor.

26. **Equity Interest** shall mean any interest in the Debtors represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtor.

27. **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

28. **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

29. **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

30. **Petition Date** shall mean the date on which the Debtors filed this petition for relief commencing the Chapter 11 Case.

31. **Plan** shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

32. **Priority Non-Tax Claim** shall mean a Claim entitled to priority under sections 507(a)(2),(3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

33. **Priority Tax Creditor** shall mean a Creditor holding a priority tax claim.

34. **Priority Tax Claim** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

35. **Proceedings** shall mean the Chapter 11 Case of the Debtor.

36. **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

37. **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

38. **Proponent** means the Proponents of this Plan, the ProPhase Diagnostics NJ Inc., ProPhase Diagnostics NY Inc., and Prophase Diagnostics Inc., as Jointly Administered Debtors.

39. **Reorganized Debtors** means the Debtors after confirmation of the Plan.

40. **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtors have an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

41. **Unsecured Claim** shall mean any Claim against which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not (I) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtors that are not expressly otherwise dealt with in the Plan.

42. **Other Definitions,** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", "hereof", "hereto, "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover some terms defined herein are defined in the section in which they are used.

### What Creditors and Interest Holders Will Receive Under the Plan

The Plan classifies claims and interests in various classes. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**Definitions**: in the treatment of claims below, the following three Definitions apply, as set forth in Section B.9 through B.11 hereinabove:

**"Case PP-NJ"** means Case #25-19833-CMG, "In re ProPhase Diagnostics NJ, Inc.

**"Case PP-NY"** means Case #25-19834-CMG, "In re ProPhase Diagnostics NY, Inc.

**"Case PP-INC"** means Case #25-19836-CMG, "In re ProPhase Diagnostics, Inc.

**C.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class. The treatment of these claims is

provided below.

### 1.      Administrative Expenses and Fees

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case. The Debtor shall pay same in accord with the Bankruptcy Code; the Code requires that all administrative expenses be paid in full on or before Confirmation of the Plan, unless a particular claimant agrees to a different treatment. All Administrative Claims approved by the Court as of the Effective Date shall be paid in full on the Effective Date; any Administrative claims approved by the court after the Effective Date shall be paid within five days of approval of same.

Court Approval of Professional Compensation and Expenses Required:

The Court must approve all professional compensation and expenses. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan.

No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

### 2.      Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires, and thus this Plan provides, that each holder of such a 507(a)(8) priority tax claim receives the present value of such claim in deferred cash payments, over a period not exceeding five years from the date of the order for relief, in

accordance with Section 1129(a)(9)(C) of the Bankruptcy Code.

The Debtor has one Priority Tax Claim:

**Priority Tax Claim of the United States Internal Revenue Service.**

The Priority Tax Claim of the United States Internal Revenue Service shall consist of all allowed Priority Claims of said creditor, which has filed duplicate Priority Claims in each of the three jointly administered cases in the amount of **$928,916.96**. Unless otherwise agreed in a Consent Order with the U.S. Internal Revenue Service, this priority claim shall be paid in full, in 36 monthly installments at 4.0% interest, at $27,425.33 per month. This Class is Impaired.

**D.     Classified Claims and Interests**

**1. Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate.  The classes of Secured Creditors include the following:

**Class 1: – Secured Claim of ProPhase Labs Inc. in Case PP-NY.** The Allowed Claims of Class 1 shall consist of all Allowed Secured Claims of ProPhase Labs, Inc. (the parent company of the Debtors, per 11 U.S.C. §101(31)(B)), in the amount of $9,998,503.80, asserted as Secured by recorded UCC-1 financing statements against the assets of the Debtor. As of the date of this Plan, no party has filed an Objection to the Secured status of this claim. This Class 1 Creditor shall be paid in full as a Secured Claim in such amount as the Court may allow, estimated at $9,998,503.80, inclusive of all sums due, over an estimated 9 months, beginning in Month 1 and ending in Month 9 in accord with the Revenue Projections annexed as Exhibit E to the Disclosure Statement. This Class is Impaired.

**Class 2: – Secured Claim of the Township of Old Bridge in Case PP-NJ.** The Allowed Claims of Class 2 shall consist of all Allowed Secured Claims of the Township of Old Bridge, which holds a statutory lien against the Debtor in the amount of $13,669.00. This

Class 2 Creditor shall be paid in full, at the projected Allowed amount of $13,669.00, 60 days after the Effective Date.  This Class is Impaired.

### 2.  Classes of Priority Unsecured Non-Tax Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.  The Debtor has no claims of this kind.

### 3.  Classes of General Unsecured Claims

General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a).

**Class 3:  Class of General Unsecured Nonpriority Claims in excess of $5,000 each, in Case PP-NJ**. This Class will be paid in full, in the projected Total amount of Allowed Claims of **$601,980.11**, after all Objections to Claims are resolved. The $601,980.11 in total Allowed Claims of Class 3 shall be paid  over an estimated 2 months, beginning in Month 9 and ending in Month 11 in accord with the Revenue Projections annexed as Exhibit E to the Disclosure Statement. The Debtor reserves the right to prepay any sums due to  Allowed Claims of Class 3 creditors, without penalty for prepayment.  This Class is Impaired.

**Class 4: Class of General Unsecured Nonpriority Claims of less than $5,000 each, in Case PP-NJ**. This Class will be paid in full, in the estimated Total amount of Allowed Claims of **$4,766.95**. All Allowed Claims of Class 4 shall for purposes of Administrative Convenience be

paid 100% in full, without interest, on the 35 days after the Effective Date.  This Class is Impaired.

**Class 5:  Class of General Unsecured Nonpriority Claims in excess of $3,000 each, in Case PP-NY**. This Class will be paid in full, in the projected Total amount of Allowed Claims of **$1,257,329.90**, after all Objections to Claims are resolved. The $1,257,329.90 in total Allowed Claims of Class 5 shall be paid over an estimated 3 months, beginning in Month 9 and ending in Month 11 in accord with the Revenue Projections annexed as Exhibit E to the Disclosure Statement. The Debtor reserves the right to prepay any sums due to  Allowed Claims of Class 5 creditors, without penalty for prepayment.  This Class is Impaired.

**Class 6:   Class of General Unsecured Nonpriority "Administrative Convenience" Claims of less than  $3,000 each, in Case PP-NY**. This Class will be paid in full, in the estimated Total amount of Allowed Claims of **$6,899.96**. All Allowed Claims of Class 6 shall be paid 100% in full, without interest, 35 days after the Effective Date.  This Class is Impaired.

**Class 7:  Class of General Unsecured Nonpriority Claims in excess of $3,000 each, in Case PP-INC**.  This Class will be paid in full, in the estimated Total amount of Allowed Claims of **$1,088,162.30**, after all Objections to Claims are resolved. This $1,088,162.30 in total Allowed Claims of Class 7 shall be paid over an estimated 1 month, in Month 12,  in accord with the Revenue Projections annexed as Exhibit E to the Disclosure Statement. The Debtor reserves the right to prepay any sums due to  Allowed Claims of Class 7 creditors, without penalty for prepayment.  This Class is Impaired.

**Class 8:   Class of General Unsecured Nonpriority "Administrative Convenience" Claims of less than  $3,000 each, in Case PP-INC**. This Class will be paid in full, in the estimated Total amount of Allowed Claims of **$1,084.88**. All Allowed Claims of Class 8 shall be paid 100% in full, without

interest, 35 days after the Effective Date.  This Class is Impaired.

**Class 9:   (Contingent, Disputed, and Unliquidated Claims):** other claims subject to objection, estimation under Section 502[c], and a reserve, including the pending Objection to Claim of Drexel Distribution Inc. dba  EZ-Test and the resolution of the contingent and unliquidated Relator claims upon the resolution of the trial court litigation where those claims are presently being addressed [per the Court Order entered at ecf Doc #106]. The Debtors presently estimate that Total Class 9 claims will be paid between a total sum between $0.00 and $125,235.00  upon final resolution and fixing of these claims. Upon the entry of any relevant Court Order, including any Settlement Consent Orders entered by the Court allowing and fixing any Class 9 claim for other than $0.00, such claim shall be paid in accord with the terms of any Court Order, whether by way of this Court ordering that such allowed claim be added same to a Class above or in such fashion as the Court may otherwise Order.  Class 9 shall thus have no distribution unless and until allowed by Final Order.  This Class is Impaired.

4.    **Priority Non-Tax Claims**

Certain priority non-tax claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are entitled to priority treatment.  The treatment of same is as described below.

The Debtor has no priority non-tax claims.

**5. Class(es) of Equity Interest Holders**

Equity interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.

In this case, the Debtors are corporation.  The sole Shareholder of both PP-NJ and PP-NY is PP-INC.   The sole Shareholder of PP-INC is the parent company ProPhase Labs, Inc.

Given that this is a 100% payment Plan, and to preserve operational continuity, the

Equity Security Holders shall retain their interests in the Debtors, subject to final payments made under the Plan, and the entry of a Final Decree closing out the case.

**6.      Other Claims**

None.

**E.      Acceptance or Rejection of Plan**

Each impaired class of Creditors with claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such class that have accepted or rejected the Plan. In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

**F.      Means of Effectuating the Plan**

**1. Funding for the Plan**

The Plan will be funded by the following: revenues from operations and the collection of receivables, together with funds on hand in the Debtors' accounts on the Confirmation Date, in an amount sufficient to pay the sums due to Allowed Administrative Claims, as set forth in the Financial Projections annexed as Exhibit E to the Disclosure Statement.

**4. Continuation of the Collection Program and Preservation of Receivables**

The collection of the Debtors' receivables is the principal source of the cash that funds distributions under this Plan, and that collection effort is expected to continue over a period of several years following the Effective Date. To ensure that the collection program continues without interruption and that all rights necessary to complete it are preserved, the Plan provides as follows.

(a) Preservation of the Receivables and Related Claims. Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date all receivables of the Debtors, together with all associated claims, rights of recovery, causes

of action, and rights to pursue, prosecute, settle, compromise, collect, and enforce the same against any payer or other obligor (collectively, the "Receivables Assets"), shall vest in the Reorganized Debtors. The Receivables Assets are expressly preserved and reserved for the benefit of the Reorganized Debtors and shall not be deemed waived, released, extinguished, or compromised by reason of Confirmation, the occurrence of the Effective Date, or the entry of the Confirmation Order. The failure to list or specifically identify any individual receivable or related claim or cause of action shall not constitute a waiver or release thereof, and all such items are preserved in full.

(b) Continuation of the Collection Program. The Debtors' collection program in respect of the Receivables Assets, as conducted prior to the Effective Date by their retained special counsel for collections under Section 327 of the Bankruptcy Code, shall continue in full force and effect on and after the Effective Date without interruption, on the same terms and conditions, including the same contingency-fee compensation, as were in effect immediately prior to the Effective Date. The entry of the Confirmation Order shall constitute approval of such continued engagement and compensation as of the Effective Date, without the necessity of any further application, motion, or retention order; provided that the Court shall retain jurisdiction to resolve any dispute regarding such compensation upon the request of a party in interest and after notice and a hearing.

(c) Preservation of Enforcement and Discovery Rights. On and after the Effective Date, the Reorganized Debtors shall retain and may exercise all rights, powers, and remedies necessary or appropriate to pursue, prosecute, settle, and enforce the Receivables Assets, including the right to commence, continue, and prosecute litigation and contested matters, to conduct discovery, and to invoke such examination and discovery mechanisms as may be available under applicable law in furtherance of the collection of the Receivables Assets, for so long as is necessary to complete the collection program, which the Debtors acknowledge may extend over a period of several years.

**2. Post-Confirmation Management**.

The post-confirmation operations of the Debtor will continue to be managed by the Debtor's present officers and employees, including CEO Ted Karkus.

**3. Disbursing Agent**

The Debtor shall serve as its own disbursing agent for the purpose of making all

distributions provided for under the Plan.

The Debtor reserves the right to pay monthly installments on a quarterly basis, and reserves the right to pre-pay any financial obligation set forth in the Plan, without penalty for pre-payment.

**III.**

**TREATMENT OF MISCELLANEOUS ITEMS**

A.      **Executory Contracts and Unexpired Leases**

1.      **Assumptions**

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan: any unexpired real estate leases.

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor. The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above. If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

2.      **Rejections**

On the Effective Date, all executory contracts not assumed shall be deemed to be rejected.

The order confirming the Plan shall constitute an order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Disclosure Statement for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT WAS December 21,

2025, or such later date as may be applicable to certain creditors added by Amendments to Schedules.

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**B.      Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**C.      Retention of Jurisdiction**.

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtor or the reorganized debtor elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

Without limiting the foregoing, the Court shall retain jurisdiction, during the period of the collection program described in Section II.F hereof, over all matters arising out of or related to the Receivables Assets and the collection program, including the prosecution, settlement, and enforcement of the Receivables Assets, the compensation of the Debtors' retained collection professionals in connection therewith, and the resolution of any dispute

concerning the rights, authority, or compensation of the Reorganized Debtors or such professionals with respect to the foregoing.

**D.      Procedures for Resolving Contested Claims.**

Objections to Claims and interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the reorganized debtor or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order.

**E.      Effective Date**

The Effective Date shall be the date upon which the Confirmation Order is final and nonappealable.

**F.      Notices under the Plan**

All notices, requests or demands to be sent to the Debtor for further information with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Proponent, addressed to: "PPD, c/o MACIAG LAW, LLC, 475 Wall Street, Princeton, N.J. 08540", or may be sent via email, with prior approval of Maciag Law, LLC, after first telephoning the law firm at 908-704-8800 for approval, then to confirm receipt of any email sent.

**IV.**
**EFFECT OF CONFIRMATION OF PLAN**

**A.  Discharge**

Upon Confirmation, and to the extent provided by Section 1141 of the Bankruptcy Code, the Debtors shall be discharged of liability for the payment of debts incurred before Confirmation, except as otherwise provided in the Plan. Any liability imposed by the Plan

shall not be discharged. If Confirmation does not occur, the Plan shall be deemed null and void, and nothing in the Plan shall be deemed a waiver or release of any claims by or against the Debtors or any other Person, or prejudice the rights of any party in any further proceeding. Upon Confirmation, the provisions of the Plan shall bind the Debtors, all Creditors, and all Equity Interest Holders, whether or not impaired and whether or not they accept the Plan.

## B.  Revesting of Property in the Debtor

Except as provided in Section IV. D and except as otherwise provided in the Plan, Confirmation revests all property of the estates in the Reorganized Debtors, free and clear of Claims and Interests except as provided in the Plan and the Confirmation Order. For the avoidance of doubt, the Receivables Assets described in Section II.F hereof, including all related claims, rights of recovery, and causes of action, are preserved and revest in the Reorganized Debtors for prosecution, settlement, and collection, and are not waived, released, or extinguished by Confirmation.

## C.  Modification of Plan

The Proponents may modify the Plan at any time before Confirmation, subject to the Court's authority to require a new disclosure statement or re-voting. The Proponents may also seek to modify the Plan after Confirmation so long as the Plan has not been substantially consummated and the Court authorizes the modification after notice and a hearing.

### D. Post-Confirmation Conversion / Dismissal

A creditor or party in interest may move to convert or dismiss these cases under Section 1112(b) after Confirmation if there is a default in performing under the Plan. If the Court orders conversion to Chapter 7 after Confirmation, all property that was property of the Chapter 11 estates and that has not been disbursed under the Plan shall revest in the Chapter 7 estate, and the automatic stay shall be reimposed on the revested property to the extent relief from stay was not previously granted.

### E. Post-Confirmation Quarterly Fees

Quarterly fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930(a)(6) shall continue to be payable post-confirmation until the cases are converted, dismissed, or closed by final decree.

Plan Proponents:

ProPhase Diagnostics NJ, Inc.
ProPhase Diagnostics NY, Inc.
ProPhase Diagnostics, Inc.
(jointly administered debtors)

by: _Ted Karkus_ 
DocuSigned by:
45C4B49D36E149F...

Date: June 29, 2026

Ted Karkus
Chief Executive Officer
of the jointly administered debtors