**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
*Attorney for the Debtors*

| | |
|---|---|
| In re:<br><br>   ProPhase Diagnostics NJ, Inc., *et al.*,<br><br>                 Debtors.<br><br>     (Jointly Administered) | Case No.: 25-19833-CMG<br>Chapter 11 Reorganization<br>Judge:  Gravelle<br>Hearing Date: August 11, 2026, 10:00am |

## DEBTOR'S RESPONSE TO PPFB, LLC'S OBJECTION
## TO FIRST MODIFIED DISCLOSURE STATEMENT

(1)     The jointly administered Debtors, as plan proponents, filed a First Modified Disclosure Statement on July 1, 2026 [ECF Doc. No. 179].  On July 28, 2026, PPFB, LLC ("PPFB") filed a limited Objection [ECF No. 194] to the First Modified Disclosure Statement.

(2)     Previously, on April 10, 2026, this Court entered a Consent Order [ECF No. 106], whereby it was ordered that the Stay was lifted for the limited purpose of permitting PPFB's claim to be addressed in the underlying trial court (U.S. District Court, E.D.N.Y.) provided that said April 10, 2026 Order unambiguously ordered "provided, however, that allowance, collection, or distribution on account of such claims shall remain subject to the jurisdiction of and further order of this Court [i.e., in the instant proceeding in U.S. Bankruptcy Court, D.N.J"].

(3)      In the E.D.N.Y. action, PPFB has filed a purported qui tam claim in which it postures itself as a bona fide "Realtor', but, notably, all three government entities – i.e., the United States the State of New York, and the State of New Jersey) in the E.D.N.Y. formally filed on November 25, 2025 a formal NOTICE OF ELECTION TO DECLINE INTERVENTION [*see Doc. No. 25* in *the E.D.N.Y. action*, a copy of which is annexed as **Exhibit A** to this response].

(4)      PPFB's Objection essentially raises three points, as set forth at paragraphs 6, 7 and 8 of its objection).

a)      **PPFB's first point** is its request that the Disclosure Statement should be modified to include a factual description of the Adversary Proceedings. The Debtors agree to make this requested modification, and will therefore include such a description in a Second Modified Disclosure Statement, stating as follows:

### Adversary Proceedings and Claims filed by PPFB, LLC

PPFB has filed duplicate (or "triplicate") Proofs of Claim (as amended, the "PPFB Claim") asserting $75,928,404 against each of the three jointly administered Debtor, and has also filed three duplicate Adversary Proceedings against each of the three jointly administered Debtors, based on the PPFB Claim. The three duplicate claims are based entirely on an unadjudicated *qui tam* complaint under the federal and state False Claims Acts that the United States, New York, and New Jersey each investigated and declined to prosecute, and which *qui tam* Complaint, at the time the Proofs of Claim were filed, did not even include any of the three Debtors as Defendants. No court has entered any judgment in the *qui tam* case, and no tribunal has made any finding of liability, in any amount.  To the contrary, all three government entities involved — the United States, the State of New York, and the State of New Jersey on November 25, 2025 all formally filed with the Court a Notice of Election to Decline Intervention after spending months investigating the alleged *qui tam* accusations and finding no reason to proceed with the case.

The Proponents believe that the PPFB Claim should be disallowed under 11 U.S.C. § 502(b) because it is legally deficient and unsupported. PPFB

pleads a laboratory-licensure issue, not a false claim; a licensure question does not render a claim "false" under the False Claims Act, particularly where, as here, the tests were real, medically necessary, actually performed, and truthfully billed, and the laboratory's certification was never revoked. Under the demanding materiality standard set by the United States Supreme Court in of *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), the claim fails as a matter of law.

The *qui tam* case seeks to bring a false claims act case based on the alleged absence of a lab license that in fact was never absent. It must also be noted that a qui tam recovery requires clean hands; in the opinion of the Proponents, it is the individuals *who are behind the* qui tam *Relator (PPFB, LLC) who were themselves the bad* actors, who when they left ProPhase Labs, turned around and tried to assert a *qui tam* claim. No license was ever suspended, and no invoices sent to the government were false or fraudulent in any way.

The Proponents for the above reasons are filing a Motion to Estimate the PPFB, LLC Claim at zero ($0), and believe the claim will be found to be of no value.

**b)**     **PPFB's second point** is its argument that it disagrees with the classification and treatment of claims as set forth in the First Modified Disclosure Statement. This second point by PPFB actually goes as to Confirmation, not as to Disclosure. Nonetheless, in the interest of judicial economy, the Debtors will briefly address same here.

PPFB in its Objection to Disclosure Statements relies on a single cited case, *In re Orla Enterprises*, 2009 WL 2447607 (Bankr. N.D.Ill. 2009. *Orla Enterprises* is an unreported decision in a N.D. Ill. Bankruptcy Court case, which has never been cited in any reported decision in any Third Circuit Bankruptcy Court or District Courts, nor in any Third Circuit Court of Appeals case. Moreover, PPFB's opposition misstates the actual holding of *Orla Enterprises*. The actual holding in *Orla Enterprises* actually supports the Classification of PPFB's claim as set forth in the Proposed First Modified Disclosure Statement. PPFB argues that the Debtors cannot separately classify their claim, citing only to *Orla Enterprises*.

However what *Orla Enterprises* actually holds is that an unliquidated, disputed, and contingent claim cannot be separately classified with general unsecured claims <u>for purposes of "gerrymandering"</u>, PPFB's claim is the textbook unliquidated, disputed, and contingent claim.

Notably, the N.D. Illinois in *Orla Enterprises* in its decision recognized the right to classify claims, as the Debtors have done in the instant case:

> Section 1122(a) does not, in its own terms, prohibit separating claims. See *Sentinel*, 398 B.R. at 297. It only requires that dissimilar claims cannot be placed in the same class. Id. Otherwise, § 1122(a) provides little guidance as to how claims should be classified.
>
> > The Seventh Circuit Court of Appeals weighed in on the issue:
> >
> > A debtor in bankruptcy has considerable discretion to classify claims and interests in a chapter 11 reorganization plan. While a debtor may not separately classify claims solely in order to "gerrymander an affirmative vote on reorganization," claims may be classified separately if "significant disparities exist between the legal rights of the holder[s of the different claims] which render the two claims not substantially similar". Claims may also be separately classified if there are "good business reasons" to do so or if the claimants have sufficiently different interests in the plan.
> >
> > In re *Wabash Valley Power, 72 F.3d at 1321* (quoting *Woodbrook*, 19 F.3d at 318) (brackets in original).
>
> [*In re Orla Enterprises*, 2009 WL 2447607 (Bankr. N.D.Ill. 2009) [<u>Unreported Decision</u>]
>
> .

**"It is reasonable for the Debtors to place claims related to**

**significant, on-going litigation in a separate class"**

PPFB's Objection, while seeking to rely on an **Un**reported N.D. Illinois <u>2009</u> decision (whose holding is not as clear as PPFB asserts), fails to address pertinent, and more recent, **Reported** decisions *within the Third Circuit*. In a 2016 U.S. Bankruptcy Court District of

Delaware case, the Debtor created a "Class 5 Litigation Class" for claims that were in on-going litigation, <u>just like the PPFB, LLC claim here, and the Court approved that classification</u>

> The Debtors' classification scheme is neither arbitrary nor fraudulent. **<u>It is reasonable for the Debtors to place claims related to significant, on-going litigation in a separate class</u>**.
>
> *In re Abeinsa Holding, Inc*., 562 BR 265, 274 - Bankr. Court, D. Delaware 2016**(emphasis added)**

In the case *In re Boy Scouts of America and Delaware BSA LLC*, 642 B.R. 504, 638 n. 584 (Bankr. D. Del. 2022) the Delaware U.S. Bankruptcy Court in 2022 <u>approved the placement of Litigated Claims in a separate class from General Unsecured claims</u>. *Id*. At 634. In another 2022 case, <u>the Court held likewise, permitting, over objections, the classifying of Litigated Claims and General Unsecured claims into separate classes</u>. *In re Mallinckrodt PLC*, 639 B.R. 837, 858 (Bankr. D. Del. 2022).

The instant Disclosure Statement and Plan does not place PPFB, LLC into a class for purposes of gerrymandering; rather it "for good business reasons" places them in Class 9, the contested. And litigated claims bucket, subject to objection, estimation under Section 502©, and a reserve, with no distribution unless and until allowed by Final Order. As the Delaware U.S. Bankruptcy Court held in *Abeinsa*, <u>"It is reasonable for the Debtors to place claims related to significant, on-going litigation in a separate class</u>" and that is precisely what the Debtors have done here.

That is the appropriate treatment for a claim like PPFB's, particularly where, as noted above, the Proponents are filing filed a Motion to Estimate the PPFB, LLC Claim at zero

($0), and believe the claim will be found to be of no value.

       **c)**    **PPFB's third point** essentially requests that the Debtors modify the Disclosure statement to clarify some apparent inconsistencies in the presentation of the financial statements and charts annexed as exhibits to the First Modified Disclosure Statement.  The Debtors acknowledge that in a joint Plan of Reorganization in a jointly administered case there can sometimes arise a bit of lack of clarity in the reader reviewing and interpreting the financial exhibits, so the Debtors agree to make this requested modification, and will therefore more detail in a Second Modified Disclosure Statement, clarifying the financials by adding a footnote too the Exhibit A cover page (Balance Sheets) as follows:

> **Note:**  the Balance Sheets which follow show as the "Projected Net Liquidation Value of Accounts Receivable" the total lifetime collectible value of the entire receivables portfolio over the coming years, while the lesser sum shown in the Projections annexed at Exhibit D is the conservative three-year plan-funding projection for just the first three years (roughly one-third of the portfolio, at about 85% realization, less the 30% collection fee).

### Conclusion

The Debtors respectfully submit that, upon the modifications set forth above being made in regard to PPFB's Points 1 and 3, and the over-ruling of PPFB's objection at its Point 2, the Disclosure statement should now be approved, and a standard Order Approving Disclosure Statement, setting a balloting timeline, and scheduling a confirmation hearing, can now be entered by this Court.

MACIAG LAW, LLC

  /s/Thaddeus R. Maciag

Date: August 6, 2026          Thaddeus R. Maciag, Esq.
*Attorney for the Debtors*