**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
*Attorney for the Debtors*

Wallace B. Neel, Esq.
*(pro hac vice)*
WALLACE NEEL, PLLC
1 Blue Hill Plaza, LL Suite 1509
Pearl River, New York 10965
(646) 524-6502
*Special Counsel to the Debtors*

| | |
|---|---|
| In re:<br><br>ProPhase Diagnostics NJ, Inc., *et al.*,<br><br>Debtors. | Case No.: 25-19833-CMG<br>Chapter 11 Reorganization<br>Judge:  Gravelle<br>Hearing Date: June 9, 2026, 10:00am<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY PPFB, LLC,**

**OR, IN THE ALTERNATIVE,**

**TO ESTIMATE THE CLAIMs**

**AT $0,  PURSUANT TO 11 U.S.C. §§ 502(b) AND 502[c]**

**Jurisdiction, Venue, and Statutory Basis for the Relief Sought**

a)      The Bankruptcy Court has jurisdiction over this Objection pursuant to 28 U.S.C.

§§157 and §1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

b)      The statutory and procedural predicate for the relief here requested is 11 U.S.C.

§105, §502, §541, §553, Rule 3007 of the Federal Rules of Bankruptcy Procedure, and Local

Bankruptcy Rule 3007-1.

c)      The United States Bankruptcy Court for the New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334(b) and the Standing Order of Reference to the Bankruptcy Court Under Title 11, entered on July 23, 1984, and amended on June 6, 2025 (Hon. Renée Marie Bumb, Chief Judge, United States District Court,  D.N.J.) (the "Standing Order").

d)      This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

e)   Venue is proper in this District pursuant to 28 U.S.C. §1334(b), §1408, and  §1409.

f)      No prior request for the relief sought in this Motion has been made to this or any other court in connection with the Chapter 11 case.

g)      Jointly Administered Debtors.   The three instant Debtors' respective cases are presently jointly administered per this Court's Amended Order for Joint Administration entered September 30, 2025.

**Debtors' Objection to Proofs of Claim  Filed by Ppfb, Llc,**
**or, in the Alternative,**
**to Estimate the Claim**
**at $0,  Pursuant to 11 U.S.C. §§ 502(b) and 502[c]**

The jointly Administered Debtors, (collectively, the "Debtors"), by and through undersigned counsel, respectfully submit this objection (the "Objection") to Proof of Claim No. 6 filed by PPFB, LLC ("PPFB" or the "Relator"), or, in the alternative, to Estimate the claim at $0 pursuant to 11 U.S.C. § 502[c].  In support, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates are 11 U.S.C. §§ 502(b) and 502[c] and Fed. R. Bankr. P. 3007 and 9014.

## BACKGROUND

5. PPFB is the relator in the case *United States, et al., ex rel. PPFB, LLC v. ProPhase Labs, Inc., et al.*, No. 2:23-cv-00627-NCM-AYS (E.D.N.Y.) (the "EDNY Action"), a "*qui tam*" case alleging that the Debtors' non-debtor parent submitted false claims to government healthcare programs in connection with COVID-19 testing. PPFB also commenced Adversary Proceeding Nos. 25-02526, 25-02527, and 25-02528 in each of the three jointly administered Chapter 11 cases, seeking to hold each Debtor liable as the alleged alter ego of the parent and to declare such liability non-dischargeable. Notably, the EDNY Action was filed **January 27, 2023**, and PPFB failed to name **any** of the three Debtor entities as Defendants until 39 Months (1,186 Days) later, on **April 27, 2026**, more than **three years** after the individual *Qui Tam* complaint was filed; 217 days after the instant Chapter 11 case was filed, and **147** days after the PPFB proofs of claim were filed.  In fact, at the time the Proofs of Claim were filed, none of the three Debtor entities were even Defendants in the underlying *qui tam* lawsuit, even though that lawsuit had been filed 35 months prior to the Proof of Claim being filed.

6.    In the E.D.N.Y. action, PPFB filed a purported *qui tam* claim in which it postures itself as a bona fide "Realtor', but, notably, all three government entities – i.e., the United States

the State of New York, and the State of New Jersey) in the E.D.N.Y. formally filed on November 25, 2025 a formal NOTICE OF ELECTION TO DECLINE INTERVENTION [*see Doc. No. 25* in *the E.D.N.Y. action.* The United States, the State of New York, and the State of New Jersey each had the statutory right under 31 U.S.C. § 3730(b) to intervene in the EDNY Action, and each declined to do so. Thus the EDNY action presently proceeds, if at all, solely by the Relator, given that all three of the governmental entities have formally exercised Declination.

7.      By Consent Order entered April 10, 2026 [Docket No. 106], on the Relator's Application [Docket No. 105], the Court modified the automatic stay to permit the Relator to liquidate its claims in the EDNY Action, provided, however, that "allowance, collection, or distribution on account of such claims shall remain subject to the jurisdiction of and further order of this Court." The Court thus reserved allowance and estimation of the PPFB Claim to itself.

8. PPFB filed Proof of Claim No. 6 on December 1, 2025, and amended it twice, most recently on February 5, 2026, asserting $75,928,404. PPFB filed substantively identical proofs of claim against each of the three jointly administered Debtors.

## INTRODUCTION

9.      PPFB has filed duplicate (actually, "triplicate') Proofs of Claim (as amended, the "PPFB Claim") asserting $75,928,404 against each of the three jointly administered Debtor, and has also filed three duplicate Adversary Proceedings against each of the three jointly administered Debtors, based on the PPFB Claim.

10.     The three duplicate claims are based entirely on an unadjudicated *qui tam* complaint under the federal and state False Claims Acts that the United States, New York, and New Jersey each investigated and declined to prosecute, and which *qui tam* Complaint, at the

time the Proofs of Claim were filed, did not even include any of the three Debtors as Defendants.

11.     No court has entered any judgment in the *qui tam* case, and no tribunal has made any finding of liability, in any amount.  To the contrary, all three government entities involved — the United States, the State of New York, and the State of New Jersey on November 25, 2025 all formally filed with the Court a <u>Notice of Election to Decline Intervention</u> after spending months investigating the alleged *qui tam* accusations and finding no reason to proceed with the case.

12.     The Proponents believe that the PPFB Claim should be disallowed under 11 U.S.C. § 502(b) because it is legally deficient and unsupported, or in the alternative the claim should now be Estimated at zero ($0).

13.      PPFB pleads a laboratory-licensure issue, not a false claim; a licensure question does not render a claim "false" under the False Claims Act, particularly where, as here, the tests were real, medically necessary, actually performed, and truthfully billed, and the laboratory's certification was never revoked. Under the demanding materiality standard set by the United States Supreme Court in  of *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), the claim fails as a matter of law.

14.     The *qui tam* case seeks to bring a false claims act case based on the alleged absence of a lab license that in fact was never absent.  It must also be noted that a qui tam recovery requires clean hands; in the opinion of the Proponents, it is the individuals who are behind the qui tam Relator itself (PPFB, LLC) who were themselves the bad actors, and who when they left ProPhase Labs, turned around and tried to assert a *qui tam* claim. No license was ever suspended, and no invoices sent to the government were false or fraudulent in any way.

15.     The Proponents for the above reasons submit that the PPFB, LLC claims should either be Disallowed, or that this Court should in the alternative enter an Order Estimating the PPFB, LLC Claims at zero ($0).

**THE CLAIM SHOULD BE DISALLOWED UNDER 11 U.S.C. § 502(b)**

### A.  A Licensure Issue Is Not a "False Claim."

16. The False Claims Act imposes liability for a *false* claim, a claim for payment that misrepresents the goods or services provided. It does not convert every regulatory or licensing violation into fraud. The PPFB Claim rests on the allegation that the laboratory billed for COVID-19 testing during a period in which it allegedly lacked a particular state clinical-laboratory license. But PPFB does not allege that the tests were not performed, were medically unnecessary, produced false results, or were billed as something other than what they were. The claims for payment truthfully represented that COVID-19 tests were performed for patients who needed them, and they were. A licensure question concerning the provider does not make a truthful claim for a genuinely-performed service "false."

### B.  The Claim Fails Escobar's Demanding Materiality Standard.

17. Even if a licensure lapse could bear on falsity, *Escobar* requires that the alleged noncompliance be *material* to the Government's payment decision, a standard the Supreme Court described as "rigorous" and "demanding." 579 U.S. at 194. The test is whether the Government would have refused to pay had it known of the violation. Here, the Government paid for real, medically-necessary COVID-19 tests actually performed, and the laboratory's CLIA certification was never revoked. There is no basis to conclude the Government would have refused to pay for legitimately-performed testing on account of a state-licensure-renewal

question that never resulted in decertification. Thus the licensure status was not material to payment, and the claim fails as a matter of law. PPFB pleads a laboratory-licensure issue, not a false claim; a licensure question does not render a claim "false" under the False Claims Act, particularly where, as here, the tests were real, medically necessary, actually performed, and truthfully billed, and the laboratory's certification was never revoked. Under the demanding materiality standard of *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), the claim fails as a matter of law.    In Escobar, the United State Supreme Court held that

> The False Claims Act is not "an all-purpose antifraud statute," or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance."
>
> *Id.* at 177 (internal citations omitted).

18.    Notably, the Escobar "materiality" standard has recently been reaffirmed by the Third Circuit in the case *United States v. Care Alternatives*, 81 F. 4th 361 (3rd Circuit 2023), where the Court stated:

> The False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq., is a flexible, far-reaching 365*365 tool that empowers the federal government and private individuals acting in the government's name, known as relators, to bring claims for fraud against the United States. **At the same time, it is not "an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations."** *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194, 136 S.Ct. 1989, 195 L.Ed.2d 348 (2016). So when a government contractor submits a claim for payment but fails to disclose a statutory, regulatory, or contractual violation, that claim does **not** automatically trigger FCA liability. Instead, the Act requires that

the contractor's alleged violation be, among other things, "material" to the government's decision to pay. Id. at 192-93, 136 S.Ct. 1989. And in Escobar, the Supreme Court identified various factors to assist courts in evaluating materiality.

*Id.* at 364-365 (emphases added)

19. *Escobar* is readily distinguished. There, unqualified personnel held themselves out as licensed professionals and provided the very services billed; the misrepresentation went to the nature and competence of the service itself. Here, by contrast, the tests were genuine, competently performed, and truthfully billed. A background licensure-renewal question does not make the claims "misleading half-truths" about the services provided.

## C.  *The Claim Lacks Scienter.*

20. The False Claims Act requires that the defendant *knowingly* submitted a false claim. The laboratory's certification was never revoked, and the sellers of the laboratory operations expressly warranted licensure compliance. The Debtors did not, and could not, knowingly submit "false" claims for real tests performed by a certified laboratory. The scienter element is absent.  The Qui Tam case thus seeks to bring a false claims act case based on the alleged absence of a lab license that in fact was never absent. No license was ever suspended, and no invoices sent to the government were false or fraudulent in any way.

## D.  *PPFB's Own Pleading Refutes Its Damages calculation.*

21. PPFB's asserted $75,928,404 is contradicted by PPFB's own complaint. The complaint's only claim-specific calculation multiplies alleged test volume by an average reimbursement rate: "(81,278 Saliva Tests + 17,223 Swabs in Saline) x $150 = $14,775,150." The complaint separately cites approximately $14.4 million in HRSA payments. Yet the complaint then asserts, without calculation, that the Debtors "fraudulently billed … at least $25

million" based on "belief" and unspecified "other reliable information," and the proof of claim

trebles that unsupported $25 million figure, plus fees, to reach $75,928,404. PPFB's own

arithmetic thus contradicts its claim amount by roughly $10 million with no bridge, and the

trebled figure rests on a base THAT PPFB never substantiates.

22. Moreover, the $150-per-test figure is expressly "average *out-of-network*

reimbursement," that is, commercial private-payor reimbursement, which is not a False Claims

Act damage. FCA damages are the Government's actual loss on false claims paid by a

government program. PPFB's own damages theory is built on the wrong category of payment,

and the only arguably-governmental figure it offers (the HRSA payments) is a gross-payment

number, not a proven false-claim loss.

**E.** ***The Alleged Kickback and Referral Arrangements Do Not Establish a False Claim or***
***Government-Program Damages.***

23. To the extent the PPFB Claim rests on alleged kickback or referral arrangements,

those allegations do not supply either falsity or cognizable False Claims Act damages. As to the

arrangement with the entity identified in the complaint as "Docs Health," that arrangement was a

straightforward contract for laboratory testing services.  The Debtors' predecessor was engaged

and paid under contract to perform testing and billed the contracting party directly for that

testing. It submitted no claims to Medicare, Medicaid, HRSA, or any other government

healthcare program in connection with that volume, and no third-party insurance was billed by

the Debtors for that testing.

24. That contract-testing model, a laboratory performing tests under a direct services

contract and billing the contracting party, was a common and legitimate arrangement during the

COVID-19 pandemic, no different in kind from a national reference laboratory performing a test and billing the ordering party directly. Because no claim was submitted to any government program in connection with the Docs Health arrangement, there can be no "false claim" as to that volume as a matter of law, and PPFB's kickback theory fails on that volume regardless of what the Debtors' predecessor paid, or was alleged to have paid, for packaging, handling, or billing services. An allegation that a provider paid a vendor above fair market value is not, without more, a false claim to the Government, and it is no claim at all where, as here, the Government was never billed.

25. As to the arrangement with the entity identified as "Alliance," the complaint's theory is, in substance, that the Debtors' predecessor billed under another laboratory's identifier, which is a billing-misrepresentation theory, not a referral-payment theory, and it fails for the same reasons set forth above: the complaint does not identify any specific false claim submitted to and paid by a government program, or any resulting government-program loss. The complaint further alleges that it was the owner of that ***other*** laboratory, not the Debtors, who was criminally indicted, which does not establish the Debtors' knowing submission of false claims.

### F.  The Claim Has No Prima Facie Validity and No Evidentiary Support.

26. A proof of claim is entitled to a presumption of validity only if properly documented. The PPFB Claim attaches allegations and a summary arithmetic sheet, but no claim-by-claim data, no Government payment records establishing which specific claims were false, and no expert damages analysis. Upon this Objection, the presumption is rebutted and the burden shifts to PPFB to prove its claim by a preponderance of the evidence, a burden it cannot carry on this record.

### G. The Sellers' Warranties and Indemnification Offset Any Claim.

27. The laboratory operations at issue were acquired by stock purchase from sellers who represented and warranted licensure and regulatory compliance and who agreed to indemnify the acquiring entity. To the extent PPFB were to establish any cognizable claim predicated on a licensure deficiency, the estates hold a corresponding indemnification claim against those sellers, offsetting the PPFB Claim and independently reducing its net value to zero.

### H. The Relator's Unclean Hands given its Own Role in the Conduct at Issue .

28. On information and belief, PPFB, LLC is controlled by or affiliated with one or more individuals who held senior operational and compliance responsibility for the laboratory during the period at issue, including responsibility for the very licensure and operational matters the Relator now characterizes as fraudulent.  A Qui Tam recovery requires clean hands.  The Relators who are behind the Qui Tam lawsuit were themselves the bad actors, and when they left ProPhase Labs, they turned around and tried to feather their own nests by pointing as an purported qui tam claim the fraud which they allege they committed (which, because they mistakenly thought they had actually been ordered to stop doing tests, was not even fraud).

29.   Such a relator, with unclean hands, cannot credibly serve as a whistleblower exposing another's fraud, and the knowledge the Relator seeks to impute to the Debtors is, in substance, the Relator's own. The Debtors reserve all rights to, if need be, supplement this Objection upon further discovery and confirmation of the Relator's membership, ownership, control, and the role of former employees at ProPhase Labs.

### I. The Triplicated Assertion Cannot Yield Multiplied Recovery.

30. PPFB asserted the identical claim against each of three jointly administered Debtors arising from a single alleged course of conduct. A single alleged injury cannot be recovered three times by asserting the same claim against affiliated entities. The aggregate exceeding $225 million is, on its face, unsustainable, and confirms that the asserted amount reflects maximum theoretical exposure rather than any principled measure of recovery.

## IN THE ALTERNATIVE, THE CLAIM

## SHOULD BE ESTIMATED, AT $0, UNDER § 502[c]

31. Section 502[c] directs that a contingent or unliquidated claim be estimated where fixing or liquidating it would unduly delay administration of the case. The PPFB Claim is contingent and unliquidated, and its liquidation would require years of *qui tam* litigation. Indeed, in its own Application [Docket No. 105], PPFB represented that liquidating its claims "would likely involve complex litigation implicating substantially non-core issues" best litigated elsewhere, an admission establishing the very predicate for estimation.

32. For all the reasons set forth above, the probable, legally-adjusted value of the PPFB Claim is $0. The Government's tri-sovereign Declination, the absence of falsity and materiality under *Escobar*, the absence of scienter, the internal contradictions in PPFB's own damages, the absence of any claim-level evidence, the sellers' indemnification, and the impermissible triplication all drive the estimated value to zero. Estimation at $0 permits the Plan to be voted and confirmed without undue delay, while the PPFB Claim remains subject to final adjudication and the Plan's disputed-claim reserve.

## RESERVATION OF RIGHTS

33. The Debtors reserve all rights to amend or supplement this Objection, to object on

any additional ground, to conduct discovery (including as to the Relator's identity, membership, and role), and to seek further relief. Nothing herein waives any claim, defense, offset, or counterclaim of the Debtors or the estates.

## NOTICE

34. Notice of this Objection has been given to the Office of the United States Trustee, to counsel for PPFB, LLC, and to all parties entitled to notice. The Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request entry of an order disallowing the PPFB< LLC Proof of Claims in entirety pursuant to 11 U.S.C. § 502(b); or, in the alternative, Estimating the PPFB Claims at $0 for purposes of voting, feasibility, reserve, and distribution pursuant to 11 U.S.C. § 502[c]; and (iii) granting such other and further relief as is just and proper.

Date: August 7, 2026               Respectfully submitted,

MACIAG LAW, LLC

/s/ Thaddeus R. Maciag
Thaddeus R. Maciag, Esq.
Attorney for the Debtors


WALLACE NEEL, PLLC

/s/ Wallace B. Neel
Wallace B. Neel, Esq.
Special Counsel to the Debtors