**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
*Attorney for the Debtors*

Wallace B. Neel, Esq.
*(pro hac vice)*
WALLACE NEEL, PLLC
1 Blue Hill Plaza, LL Suite 1509
Pearl River, New York 10965
(646) 524-6502
*Special Counsel to the Debtors*

In re:

ProPhase Diagnostics NJ, Inc., *et al.*,

Debtors.

Case No.: 25-19833-CMG
Chapter 11 Reorganization
Judge: Gravelle
Hearing Date: June 9, 2026, 10:00am

(Jointly Administered)

**DEBTORS' SUPPLEMENTAL RESPONSE**
**TO THE "JOINDER" BY CREDITOR ATC TESTING AND SCREENING SERVICES)**
**TO THE DREXEL DISTRIBUTION INC. MOTION TO CONVERT**

The jointly administered Debtors submit this Supplemental Response to the June 16, 2026 "joinder" filed by ATC Testing and Screening Services LLC ("ATC") at ECF Doc 163 (the "Joinder") in the motion to convert these cases to Chapter 7, and respectfully state as follows.

## PRELIMINARY STATEMENT

1. ATC's "Joinder", filed June 16, 2026, advanced four arguments in support of conversion. In the two months since June 16, 2026, the factual predicate for each of ATC's arguments has been overtaken by updated factual events.

2. Two of ATC's four arguments are now entirely factually moot; the third is substantively moot given the very substantial actual receivables collections and a robust collection pipeline; and the fourth is affirmatively refuted by results that have saved the estate more than $1.6 million. The Debtors submit this Supplemental Response to bring these changed circumstances before the Court.

3. Separately, and as a procedural matter, the "joinder" is nothing more than, in effect, a support of the Motion filed by Drexel Distribution, Inc. That motion has been resolved by a settlement now before the Court for approval under Fed. R. Bankr. P. 9019, and upon approval the underlying conversion motion will be withdrawn. A joinder has no independent existence apart from the motion it supports; upon withdrawal of the underlying motion, there is no motion remaining for ATC to have joined.

## ATC's FOUR ARGUMENTS ARE NO LONGER APPLICABLE TO THE FACTS OF THE CASE, AS THEY HAVE BEEN OVERTAKEN BY SUBSEQUENT FACTUAL EVENTS:

4. **First, ATC argued that the Debtors' monthly operating reports were delinquent.** At the time of the Joinder the Debtors were one month behind. The Debtors' monthly operating reports are now current. This argument is accordingly moot.

5. **Second, ATC argued that no plan had been filed.** Even at the time of the Joinder the Debtors were within their exclusivity period, so this argument was groundless from the start. In any case, the Debtors filed their Plan on June 29, 2026. This argument is

therefore also moot.

6. **Third, ATC argued that the Debtors had shown no prospects of a successful reorganization because no collections had yet been deposited.** That premise is no longer accurate. Since the Joinder, $367,200.81 in actual collected Receivables has been deposited into the DIP Receivables Trust Account, as reflected in the bank account records previously submitted to this Court (ECF Doc 173; ECF Doc 190). Beyond that, and as set forth in the accompanying Certification of Richard Hersperger, the Debtors' collection pipeline includes approximately $3,000,000 in confirmed settlements now being documented, expected to fund within approximately thirty to sixty days, and in excess of $25,000,000 in additional Receivables in active negotiation. As the Hersperger Certification explains, the collection effort proceeds through complex bulk settlements that resolve in large tranches, and compromised settlements require Rule 9019 approval before funds are released, so the timing of deposits reflects the nature of the work and the approval process, not any absence of prospects. The Debtors have a substantial and demonstrated basis for a successful reorganization.

7. **Fourth, ATC argued generalized mismanagement, contending that the Debtors had collected nothing and had wasted estate resources litigating with Drexel and pursuing discovery against Drexel.** The results refute this argument. The Debtors have now already collected and deposited $367,200.81 and deposited same into the DIP Receivables Trust Account. The litigation ATC characterizes as wasteful produced the Drexel settlement now before the Court, which reduces Drexel's claim against the estate from $1,754,088 to $125,000, a reduction of $1,629,088. A cost savings to the estate of more than $1.6 Million dollars, achieved through modest legal efforts, is not at all mismanagement! The savings of more than $1.6 Million has been a substantial and successful return for the benefit of the estate and its creditors, it reflects sound and diligent administration, and the Debtors management and professionals should be applauded for that successful effort.

8. Finally, the Court should weigh ATC's Joinder in light of the status of ATC's own claim. ATC is scheduled to be paid 100% of its Allowed Claim in full, in Class 7 under the

Original Plan. The Debtors do reserve their right to file an objection to ATC's Proof of Claim No. 2, seeking Estimation under 11 U.S.C. §502[c] or Disallowance under 11 U.S.C. §502[c].

9. As to the threshold procedural defect in ATC's position, ATC has only filed a joinder to a Motion filed by another party (Drexel), which is withdrawing its Motion. Conversion of a Chapter 11 case is significant relief that the Bankruptcy Code permits only upon motion, notice and hearing, per 11 U.S.C. §1112. A party seeking conversion must carry the movant's burden to establish cause and must satisfy the movant's procedural obligations. ATC has no independently pending request for conversion before the Court, and Drexel is withdrawing its motion.

**To the extent that ATC might wish to argue that the 100% payment to its Class as a whole should be accelerated or paid in a different manner, it is entitled to do make that argument, but ATC can not validly argue for preferential treatment, and any argument to change the treatment of its Class as a whole (to the extent it has any validity) is an issue for Confirmation, not conversion**

10. Under the filed Plan, ATC is being paid in full in Class 7, at one hundred cents on the dollar, but ATC apparently seeks to somehow be paid more than 100%, or to be paid ahead of other similarly situated creditors, by endeavoring to hold the case hostage and to threaten to delay confirmation of a Plan that pays all creditors in full, to the detriment of every other creditor awaiting payment, by joining a motion that is being withdrawn. ATC has no valid grounds to argue for preferential treatment of its claim.

11. The Debtors submit that it is not in the interest of judicial economy, nor in the best interests of creditors and the debtors' estate, to permit one over-reaching creditor to hold the entire case hostage in this manner, as ATC apparently seeks to be paid more, or on better terms, than the same 100% being paid to similarly situated creditors. To the extent that ATC might wish to argue that the 100% payment to its Class as a whole should be accelerated or paid in a different manner, it is entitled to do so, but ATC can not validly argue for preferential treatment, and any ATC argument re the treatment of its Class as a whole (to the extent it has any validity at all) is an issue for confirmation, not conversion.

## Conclusion

12. For the foregoing reasons, Debtor respectfully submits that the factual bases for ATC's Joinder have been overtaken by events, and that ATC's arguments are now moot. The Plan was timely filed. MORs are fully up to date. The Debtors are being well-managed as shown by significant financial collections and a robust pipeline of imminent further collections. The argument that the Debtors had allegedly been wasting time on litigating a substantial claim is emphatically refuted by the fact those efforts have resulted in a $1.6 Million savings to the Debtors' estate! Moreover, upon approval of the Drexel settlement, the underlying conversion motion will be withdrawn, leaving no motion for ATC to join.

13. The Debtors accordingly respectfully submit that the ATC "joinder" should accordingly now be overruled, and that it is in the Best Interest of Creditors and the Debtors' Estate that these cases should proceed toward a confirmation hearing on the Debtors' Plan, which provides for 100% payment in full of all Allowed Claims.

MACIAG LAW, LLC

/s/Thaddeus R. Maciag
Thaddeus R. Maciag, Esq.
Attorney for the Debtors

Date: August 14, 2026