**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
*Attorney for the Debtors*

Wallace B. Neel, Esq.
*(pro hac vice)*
WALLACE NEEL, PLLC
1 Blue Hill Plaza, LL Suite 1509
Pearl River, New York 10965
(646) 524-6502
*Special Counsel to the Debtors*

In re:

ProPhase Diagnostics NJ, Inc., *et al.*,

Debtors.

Case No.: 25-19833-CMG
Chapter 11 Reorganization
Judge: Gravelle
Hearing Date: Sept. 15, 2026, 10am

(Jointly Administered)

**CERTIFICATION OF RICHARD HERSPERGER,**
**IN SUPPORT OF THE DEBTORS RESPONSE TO CREDITOR ATC TESTING & SCREENING SERVICES, REGARDING THE STATUS AND PROSPECTS OF ESTATE RECEIVABLES COLLECTIONS**

I, Richard Hersperger, of full age, hereby certify as follows:

1. I am the Chief Executive Officer of Crown Medical Collections LLC ("CMC"), which serves as Court-approved Special Counsel to the Debtors for the investigation, prosecution, and collection of the Debtors' unpaid and underpaid healthcare receivables (the "Receivables"). I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

2. I submit this Certification to apprise the Court of the current status and near-term prospects of the Debtors' Receivables collection effort, which is the engine of the Debtors' Plan. Because the details of individual settlements and negotiations are commercially sensitive and subject to confidentiality, this Certification presents the collection pipeline in the aggregate and does not identify individual payors or settlement terms.

**The Nature of the Collection Effort**

3. The Debtors' Receivables consist principally of unpaid and underpaid healthcare claims owed by large commercial and governmental third-party payors. Collecting these Receivables is not a matter of routine invoicing. It requires specialized forensic data analysis of millions of claim records, reconciled against payor remittance data, fee schedules, and contractual terms, followed by extended negotiation with sophisticated payors that resist payment and contest discovery.

4. A substantial portion of the collection effort proceeds through bulk settlements, in which the claims of multiple laboratory clients, frequently eleven or twelve at a time, are resolved with a single large payor in one negotiated transaction. Because of their scale and complexity, these matters resolve in large tranches following months of analysis and negotiation, rather than in small, steady periodic payments. The timing of recoveries is therefore uneven by nature.

**Current Status of the Pipeline**

5. As of the date of this Certification, the Debtors' collection pipeline includes: (a) approximately $3,000,000 in settlements that are confirmed and being documented through settlement agreements; and (b) in excess of $25,000,000 in additional Receivables that are in late stage active negotiation. The latter figure is a good-faith estimate, and individual matters within it can each resolve in the multi-million-dollar range. To date, $367,200.81 in collected Receivables has been deposited into the Debtors' DIP Receivables Trust Account, as reflected in the account records, demonstrating that the collection mechanism is functioning and producing recoveries.

6. Based on the current status of the confirmed settlements, I reasonably expect that the approximately $3,000,000 in confirmed settlements will be reduced to funds received into the estate within approximately thirty (30) to sixty (60) days, subject to the settlement-approval process described below.

**Why Recoveries Are Not Yet Fully Reflected in Deposits**

7. Settlements reach the estate by one of two paths, which explains why confirmed settlements are not always immediately reflected as deposits: (a) **uncompromised settlements**, in which the payor pays the claim at full value, flow directly into the DIP Receivables Trust Account; and (b) **compromised settlements**, in which the claim is resolved at a negotiated discount, require the Debtors to obtain this Court's approval under Fed. R. Bankr. P. 9019 before the settled funds are released. The 9019 approval process necessarily introduces a lag between the point at which a compromised settlement is agreed and the point at which funds are received. Accordingly, the timing of deposits reflects the settlement-approval process and the large-tranche nature of the work, not any absence of collection activity or prospects.

**The Recovery Waterfall**

8. The recoveries described above are applied through an established waterfall that repays the estate and its creditors in an orderly fashion:

| | |
|---|---|
| **Step 1** | CMC collects the Receivables from the payors through settlement and, where necessary, litigation and discovery. |
| **Step 2** | The collected proceeds flow to the Debtors' estates into the DIP Receivables Trust Account (directly for uncompromised settlements, and upon Rule 9019 approval for compromised settlements) |
| **Step 3** | The proceeds are applied to Court-approved distributions, including CMC receiving its Court-approved contingency fee on amounts collected, and allowed administrative claims |
| **Step 4** | The estates apply the net proceeds to creditor distributions under the confirmed Plan, as projected to provide payment of allowed claims 100% in full. |

9. The Plan is a full-payment Plan, paying 100% of all Allowed Claims to all Creditors. The collection pipeline described above, measured against the amounts required to fund the Plan, provides a reasonable and substantial basis to conclude that the Debtors' reorganization is feasible and that creditors will be paid. The collection effort is active, substantial, and producing results; the uneven timing of deposits is a function of the nature of the work and the settlement-approval process, not a lack of prospects.

10. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: August 14, 2026

________________________________________

Richard Hersperger

Chief Executive Officer, Crown Medical Collections LLC