**MCMANIMON, SCOTLAND & BAUMANN, LLC**
427 Riverview Plaza
Trenton, New Jersey 08611
(973) 681-7979
Joseph R. Zapata, Jr., Esq. (jzapata@msbnj.com)
*Attorneys for ProPhase Diagnostics NJ, Inc., et. al.,*
*Debtors and Debtors-In-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**PROPHASE DIAGNOSTICS NJ, INC., et al.**,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-19833 (CMG)[1]<br><br>(Jointly Administered)<br><br>Honorable Christine M. Gravelle, Chief Judge |

**DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO ESTIMATE THE CLAIMS OF PPFB, LLC AT $0 PURSUANT TO 11 U.S.C. § 502(c)**

The above-captioned debtors and debtors-in-possession (the "**Debtors**"), by and through their counsel, respectfully submit this reply (the "**Reply**") in further support of their motion to estimate the claims of PPFB, LLC ("**PPFB**" or the "**Relator**") at $0 pursuant to 11 U.S.C. §§ 502(b) and 502(c) (the "**Motion**"), and in reply to PPFB's opposition (the "**Opposition**")[Dkt. No. 230], and respectfully state as follows:

**PRELIMINARY STATEMENT**

1. PPFB's Opposition rests on a single premise, and that premise is contradicted by the very order PPFB drafted, signed, and now invokes. PPFB argues that this Court should abstain from estimating its claims because, by the Consent Order [See Dkt. No. 106] (the "**Consent Order**"), the Debtors supposedly agreed to have those claims "litigated and liquidated" in the

[1] Lead case. The other jointly administered Debtors are ProPhase Diagnostics NY, Inc. (Case No. 25-19834 (CMG) and ProPhase Diagnostics, Inc. (Case No. 25-19836 (CMG).

pending action in the United States District Court for the Eastern District of New York (the "**EDNY Action**"). That is not what the Consent Order says.

2. The Consent Order modified the automatic stay for one narrow, express purpose, to permit PPFB to *liquidate* its claims in a non-bankruptcy forum, and it expressly reserved to this Court authority over the *allowance*, collection, and distribution of those claims. Estimation under § 502(c) is a function of the allowance power. It is therefore not something from which this Court must abstain; it is the precise authority the Consent Order reserved to this Court. PPFB asks the Court to surrender the very jurisdiction the Court retained, using the order that retained it as the pretext.

3. The Debtors also respectfully request, to the extent not already encompassed by the Motion, that the Court estimate the Claims at $0 for voting purposes under Federal Rule of Bankruptcy Procedure 3018(a). A claim subject to a pending objection is not entitled to be voted unless and until the Court temporarily allows it, and Rule 3018(a) authorizes the Court to temporarily allow a disputed claim "in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a)(4). For the same reasons the Claims warrant a $0 estimate under § 502(c), they warrant a $0 estimate for voting: their present, risk-adjusted value is nominal, and permitting PPFB to cast a $75 million ballot on a contingent, government-declined claim would distort the confirmation process and the impaired-class analysis under § 1129(a)(10).

4. The stakes are straightforward. The Debtors have proposed a plan that pays every creditor in full. PPFB is a single contingent, unliquidated claim, premised on a *qui tam* action that the United States, New York, and New Jersey each investigated and each declined to pursue, and that is the subject of a motion to dismiss the Debtors filed on August 25, 2026. By PPFB's own account, briefing on that motion will not conclude until late November 2026, and the EDNY

Action will not yield a liquidated number for years thereafter, only after full discovery and a trial, and only if the claim survives dismissal at all. Section 502(c) exists precisely so that a contingent claim of this kind cannot hold an otherwise-confirmable, fully-funded estate hostage while every other creditor waits. The Third Circuit has approved exactly this course, and the valuation of such a claim at zero. *See Bittner v. Borne Chem. Co.*, 691 F.2d 134 (3d Cir. 1982). The claims should be estimated at $0 for plan and distribution purposes, and the Motion should be granted.

## ARGUMENT

### I. The Consent Order Forecloses PPFB's Abstention Argument.

5. PPFB negotiated for, drafted, and consented to the Consent Order. It received exactly the relief it sought: a modification of the automatic stay to permit it to prosecute its claims in the EDNY Action. The operative language of the Consent Order is precise and, on the dispositive point, unambiguous:

> *The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified so as to allow Relator to initiate and maintain suit in an appropriate non-bankruptcy forum against the Debtors,* ***for the purpose of liquidating the claims*** *which are the subject of Relator's Adversary Complaints;* ***provided however, that allowance, collection, or distribution on account of such claims shall remain subject to the jurisdiction of and further order of this Court.***

Consent Order ¶ 2 (emphasis added). The order does exactly two things, and the distinction between them decides this Motion. It sends *liquidation*, the fixing of a dollar amount, to the non-bankruptcy forum. And it reserves *allowance, collection, and distribution* to this Court. PPFB's Opposition collapses that distinction, recasting the order as an agreement to have the claims "litigated and liquidated in the EDNY Action" as though the Debtors had surrendered this Court's allowance jurisdiction altogether. See Opp. ¶ 5. They did not. The word "allowance" appears in the proviso for a reason, and PPFB does not address it.

6. A party may not obtain a narrowly tailored stay modification, consent to its terms, and then wield that same order to strip the court of the jurisdiction the order expressly preserved. The Consent Order is not a basis for abstention; it is an affirmative reservation of the very power the Debtors now ask the Court to exercise.

**II. <u>Estimation Is the Exercise of Retained Jurisdiction, Not Abstention.</u>**

7. PPFB's abstention authorities are inapposite. Each involved a court declining to hear a claim objection where another forum, or a specialized agency, held *final* authority to liquidate and resolve the claim. See Opp. ¶ 5 (citing *McIntyre v. Active Energies Solar, LLC*; *United States v. Bagley (In re Murdock Mach. & Eng'g Co.)*; *In re Hanson*; *In re BFW Liquidation, LLC*). Here, the Consent Order withheld final authority from the EDNY forum and reserved allowance, collection, and distribution to this Court. The premise of PPFB's cases, deference to a forum vested with dispositive authority over the claim, is absent by the express terms of the order PPFB itself drafted.

8. Estimation does not disturb the EDNY Action. PPFB remains free to prosecute its claims to liquidation in the forum it selected, and any estimate this Court fixes remains subject to modification if and when the claims are liquidated. *See Bittner*, 691 F.2d at 135, 137. An order estimating the claims at $0 for purposes of plan confirmation and distribution governs only the administration of these estates; it does not adjudicate the merits of the EDNY Action or enjoin its prosecution. The two proceed on parallel tracks, exactly as the Consent Order contemplates. There is no conflict in favor of which the Court could abstain.

**III. <u>Section 502(c) Mandates Estimation Because Liquidation Would Unduly Delay Administration of the Estates.</u>**

9. Section 502(c)(1) provides that the Court **shall** estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the

administration of the case." 11 U.S.C. § 502(c)(1). The provision is mandatory where its criteria are met, and the Third Circuit has confirmed the bankruptcy court's broad discretion to estimate such claims by "whatever method is best suited" to the circumstances. *Bittner*, 691 F.2d at 135. This is the mechanism Congress designed for precisely the claim now before the Court.

10. PPFB's own Opposition establishes the undue delay. The Debtors filed their motion to dismiss the EDNY Action on August 25, 2026; PPFB concedes that its opposition is not due until October 23, 2026, and the Debtors' reply not until November 23, 2026. See Opp. ¶ 4; Park Cert. ¶ 2. That is merely the threshold pleading stage, before any answer, before discovery, and before trial. PPFB then insists that, "[a]t the absolute minimum," it "must be afforded a reasonable period of discovery and … a trial, even if on an expedited timetable." Opp. ¶ 20. PPFB thus asks this estate to await the outcome of a treble-damages False Claims Act action, pleaded on an alter-ego theory, asserting more than $75 million across three separate adversary proceedings, through the conclusion of dispositive-motion briefing at the end of November 2026 and then through pleadings, discovery, and trial. That is a multi-year undertaking, if it yields anything at all.

11. PPFB's own supporting certification confirms the delay rather than dispelling it. PPFB points to the EDNY Magistrate Judge's "Tier One" discovery protocol, under which discovery is to be completed within sixty days of the Rule 26(f) conference, "following which" the parties will merely "be in a position to enter into meaningful settlement discussions or … identify additional limited discovery." Opp. ¶ 19; Park Cert. ¶ 3. By PPFB's own account, then, the completion of an initial discovery tranche only positions the parties to *begin* settlement discussions or to identify *further* discovery, and all of this presupposes that the claims first survive the pending motion to dismiss. That is a description of a years-long process, not a prompt one. PPFB cannot simultaneously demand full discovery and a trial and maintain that no undue delay will result.

12. This is the textbook definition of undue delay under § 502(c). The Debtors have proposed a fully-funded plan that pays all creditors in full and is ready to proceed to confirmation. Conditioning confirmation on the conclusion of the EDNY Action would suspend every other creditor's recovery for years to accommodate a single disputed claim. As the Third Circuit observed in *Bittner*, fixing a contingent claim in this posture "avoid[s] the possibility of a protracted and inequitable reorganization proceeding." 691 F.2d at 137. PPFB's demand for full merits litigation is not an argument against estimation; it is the very showing that compels it.

13. PPFB's reliance on *In re VidAngel, Inc.*, 593 B.R. 340 (Bankr. D. Utah 2018), for the proposition that "bankruptcy law favors liquidation over estimation," is misplaced. *See* Opp. ¶ 20. Any such preference presupposes that liquidation can be accomplished *without* unduly delaying the case. Where, as here, liquidation would take years while a confirmable plan and every other creditor wait, § 502(c) makes estimation not merely permissible but required.

## IV. <u>A Single Contingent, Government-Declined Claim Cannot Freeze a Fully-Funded 100% Plan.</u>

14. The equities decisively favor estimation. Every other creditor in these cases is to be paid in full under the proposed plan. PPFB stands alone as a contingent, disputed claim arising from a *qui tam* action that three sovereigns, the United States, New York, and New Jersey, each investigated and each declined to join. To permit that single claim to halt confirmation would subordinate the recoveries of every paying-class creditor, including priority tax claimants and general unsecured creditors, to the speculative outcome of litigation that PPFB itself concedes is years from resolution.

15. The Consent Order anticipated and resolved this very tension. By reserving allowance and distribution to this Court while permitting liquidation to proceed elsewhere, the Court retained the tools necessary to confirm a plan and pay creditors now, without prejudice to

PPFB's prosecution of its claims in EDNY. Estimating the claims at $0 for plan and distribution purposes is the exercise of that retained authority, and it does not deprive PPFB of its recovery should it ultimately prevail: any estimate is subject to modification upon liquidation, and the treatment of any recovery remains "subject to the jurisdiction of and further order of this Court" under the Consent Order. *See Bittner*, 691 F.2d at 137. Estimation today deprives PPFB of nothing it bargained for; it simply prevents PPFB from depriving every other creditor of a timely, full recovery.

### V. <u>The Merits of the EDNY Action Are for the EDNY Court; the Estimated Value of the Claim Is Nominal.</u>

16. The bulk of PPFB's Opposition, at paragraphs 7 through 18, recites the allegations of its EDNY complaint. Those allegations are not evidence, and the Debtors do not litigate the merits of the EDNY Action here. For purposes of § 502(c), the question is not whether PPFB's complaint states a claim; it is the present, risk-adjusted value of the claim on the current record. The Third Circuit has held that a bankruptcy court may value a contingent claim by "the present value of the probability" of the claimant's success, and may estimate the claim at zero where those prospects are "uncertain at best." *Bittner*, 691 F.2d at 135–36.

17. On that record, the value is nominal. The claim (a) was investigated by three sovereigns over a multi-year period, each of which declined to intervene; (b) is the subject of a motion to dismiss, filed August 25, 2026, that the Debtors submit is meritorious; and (c) depends on an alter-ego theory seeking to impose on the Debtors liability for the conduct of their non-debtor parent. PPFB's assertion that its claims must be estimated "in the many millions" (Opp. ¶ 21) is a litigating demand, not a record-based valuation. A claim that may be dismissed at the pleading stage, and that will otherwise require years of litigation to reduce to any figure, has a risk-adjusted present value at or near zero.

18. PPFB's authorities on non-intervention (Opp. ¶ 6) do not counsel otherwise. Those cases hold only that a government's declination is not an *admission* that a claim lacks merit. The Debtors do not contend otherwise. But the question under § 502(c) is one of *valuation*, not admission, and the considered decision of three sovereigns to decline a *qui tam* action after years of investigation is a legitimate and probative datum in assessing the claim's likely value, whatever it may not be.

## VI. <u>The Claims Should Also Be Estimated at $0 for Voting Purposes Under Rule 3018(a).</u>

19. Separate from distribution, the Claims should be estimated at $0 for purposes of voting on the Plan. Federal Rule of Bankruptcy Procedure 3018(a) provides that, "[n]otwithstanding objection to a claim," the Court may "temporarily allow the claim in an amount which the court deems proper for the purpose of accepting or rejecting a plan." A claim that is the subject of a pending objection is not entitled to be voted unless the Court temporarily allows it under this Rule. Because the Debtors have objected to the Claims and seek their estimation, PPFB is not entitled to vote the Claims at their face amount absent an order of this Court.

20. For the same reasons the Claims should be estimated at $0 for distribution, they should be estimated at $0, or a nominal amount, for voting. The present, risk-adjusted value of the Claims is nominal, and allowing PPFB to cast a ballot of more than $75 million on a contingent, unliquidated, government-declined claim would distort both the voting process and the impaired-accepting-class analysis under § 1129(a)(10). A temporary voting estimate at $0 ensures that confirmation is not held hostage to the face amount of a claim whose actual value remains speculative and is being litigated elsewhere.

## CONCLUSION

21. For the foregoing reasons, the Debtors respectfully request that the Court overrule PPFB's Opposition, grant the Motion, estimate the PPFB claims at $0 for purposes of plan confirmation and distribution pursuant to 11 U.S.C. § 502(c), estimate the PPFB claims at $0 for voting purposes pursuant to Federal Rule of Bankruptcy Procedure 3018(a), and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**MCMANIMON, SCOTLAND & BAUMANN, LLC**
*Attorneys for Attorneys for ProPhase Diagnostics NJ, Inc., et. al., Debtors and Debtors-In-Possession*

By: */s/ Joseph R. Zapata, Jr.*
JOSEPH R. ZAPATA, JR.

Dated: September 11, 2026