**McMANIMON, SCOTLAND & BAUMANN, LLC**
427 Riverview Plaza
Trenton, New Jersey 08611
(973) 681-7979
Joseph R. Zapata, Jr., Esq. (jzapata@msbnj.com)
*Attorneys for ProPhase Diagnostics NJ, Inc., et. al.,*
*Debtors and Debtors-In-Possession*

**WALLACE NEEL, PLLC**
1 Blue Hill Plaza, LL Suite 1509
Pearl River, New York 10965
Wallace B. Neel, Esq. (Admitted Pro Hac Vice)
Special Counsel to the Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**PROPHASE DIAGNOSTICS NJ, INC., et al.**,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-19833 (CMG)[1]<br><br>(Jointly Administered)<br><br>Honorable Christine M. Gravelle, Chief Judge |

**SECOND MODIFIED JOINT PLAN OF REORGANIZATION**

Debtors, as Plan Proponents, respectfully submit their Second Modified Joint Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Code, in the form annexed hereto and made a part hereof. This Second Modified Joint Plan of Reorganization modifies and supersedes in its entirety the First Modified Joint Plan of Reorganization filed August 20, 2026 [ECF Doc. No. 217], and is filed as a complete modified document in accordance with D.N.J. LBR 3016-1(b).

Plan Proponents: ProPhase Diagnostics NJ, Inc.; ProPhase Diagnostics NY, Inc.; and ProPhase Diagnostics, Inc. *(jointly administered debtors)*

By: *__/s/ Ted Karkus__*
Ted Karkus, Chief Executive Officer

Date: September 29, 2026

---

[1] Lead case. The other jointly administered Debtors are ProPhase Diagnostics NY, Inc. (Case No. 25-19834 (CMG) and ProPhase Diagnostics, Inc. (Case No. 25-19836 (CMG).

## TABLE OF CONTENTS

**I. INTRODUCTION** .......... 3
**II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** .......... 4
A. General Overview .......... 4
B. Definitions .......... 4
C. Unclassified Claims .......... 10
1. Administrative Expenses and Fees .......... 11
2. Priority Tax Claims .......... 11
D. Classified Claims and Interests .......... 12
1. Classes of Secured Claims .......... 12
2. Classes of Priority Unsecured Non-Tax Claims .......... 13
3. Classes of General Unsecured Claims .......... 14
4. Basis for the Separate Classification of Class 9 and Class 10 .......... 16
5. Class(es) of Equity Interest Holders .......... 17
E. Acceptance or Rejection of Plan .......... 18
F. Means of Effectuating the Plan .......... 18
1. Funding for the Plan .......... 18
2. Limited Consolidation of the Estates for Funding Distributions .......... 19
3. Continuation of the Collection Program and Preservation of Receivables .......... 20
4. Post-Confirmation Management .......... 21
5. Disbursing Agent .......... 21
**III. TREATMENT OF MISCELLANEOUS ITEMS** .......... 21
A. Executory Contracts and Unexpired Leases .......... 21
B. Changes in Rates Subject to Regulatory Commission Approval .......... 22
C. Retention of Jurisdiction .......... 22
D. Procedures for Resolving Contested Claims .......... 23
E. Effective Date .......... 23
F. Notices under the Plan .......... 24
**IV. EFFECT OF CONFIRMATION OF PLAN** .......... 24
A. Discharge .......... 24
B. Revesting of Property in the Debtor .......... 24
C. Modification of Plan .......... 25
D. Post-Confirmation Conversion / Dismissal .......... 25
E. Post-Confirmation Quarterly Fees .......... 25

# I. INTRODUCTION

ProPhase Diagnostics NJ Inc., ProPhase Diagnostics NY Inc., and ProPhase Diagnostics Inc., as Jointly Administered Debtors (the "Debtors" or the "Proponents" of this Second Modified Joint Plan of Reorganization) are the Debtors in a Chapter 11 Reorganization case. On September 22, 2025, the Debtors commenced three Chapter 11 Reorganization cases in the District of New Jersey, under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq., captioned and numbered as:

In re ProPhase Diagnostics, NJ Inc. (Case # 25-19833-CMG)
In re ProPhase Diagnostics, NY Inc. (Case #25-19834-CMG)
In re ProPhase Diagnostics, Inc. (Case #25-19836-CMG)

On October 1, 2025, a Court Order (ECF #18) was entered which provides for Joint Administration of the three cases, under the "Lead Case" name and case number of "ProPhase Diagnostics, NJ Inc. (Case # 25-19833-CMG)" as captioned on the first page of this Plan of Reorganization.

This document (the "Second Modified Plan") is the Chapter 11 plan (the "Plan") proposed by the Debtors (the "Proponents"). It modifies and supersedes in its entirety the First Modified Joint Plan of Reorganization filed August 20, 2026 [ECF Doc. No. 217]. Sent together with this document (and enclosed in the same envelope if mailed) is the Third Modified Disclosure Statement, which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a Reorganizing Plan. In other words, the Proponents seek to accomplish payments under the Plan by funds generated from operations and from the collection of receivables. The Effective Date of the proposed Plan is the date on which all conditions to confirmation have been met, and the confirmation order is no longer appealable; that date is estimated to be approximately 45 days from the Confirmation Date.

The principal modifications made by this Second Modified Plan are the addition of Class 10, comprising the settled and Allowed Claim of Drexel Distribution, Inc. d/b/a EZ-Test, and the corresponding revision of Class 9. Those modifications are described in Section II.D.3 and Section II.D.4 below and in the Third Modified Disclosure Statement.

## II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

### B. Definitions

Scope of Definitions. For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1. **Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses to professionals retained with Court approval, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code,

and the reasonable fees and expenses incurred by the Proponent in connection with the proposal and confirmation of this Plan.

2. **Allowed** when used as an adjective preceding the words “Claims” or “Equity Interest”, shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, “Allowed Claim” and “Allowed Equity Interest” shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

3. **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

4. **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or has become an Allowed Claim.

5. **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

6. **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

7. **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

8. **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

9. **"Case PP-NJ"** means and refers to Case #25-19833-CMG, "In re ProPhase Diagnostics NJ, Inc."

10. **"Case PP-NY"** means and refers to Case #25-19834-CMG, "In re ProPhase Diagnostics NY, Inc."

11. **"Case PP-INC"** means and refers to Case #25-19836-CMG, "In re ProPhase Diagnostics, Inc."

12. **Chapter 11 Case** shall mean this case under Chapter 11 of the Bankruptcy Code in which ProPhase Diagnostics NJ Inc., ProPhase Diagnostics NY Inc., and ProPhase Diagnostics Inc., as Jointly Administered Debtors are the Debtors.

13. **Claim** shall mean any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims are defined as such term is defined in Section 101(5) of the Bankruptcy Code.

14. **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

15. **Code** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

16. **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

17. **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

18. **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

19. **Creditor** shall mean any person that has a Claim against the Debtors that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

20. **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

21. **Debtor or Debtor-in-Possession** shall mean the Debtors herein, ProPhase Diagnostics NJ Inc., ProPhase Diagnostics NY Inc., and ProPhase Diagnostics Inc., as Jointly Administered Debtors.

22. **Disbursing Agent** shall mean the Debtor, or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order. This Plan proposes that the Debtors will be their own Disbursing Agent.

23. **Disclosure Statement** means and refers to the Third Modified Disclosure Statement filed by the Debtors as required pursuant to Section 1125 et seq. of the Bankruptcy Code, as the same may be further modified or amended.

24. **Effective Date** shall mean the day on which the Confirmation Order becomes a Final Order, being the date on which all conditions to Confirmation have been met, and the Confirmation Order is final and non-appealable.

25. **Equity Interest Holder** shall mean the holder of an equity interest in the Debtor.

26. **Equity Interest** shall mean any interest in the Debtors represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtor.

27. **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

28. **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", shall mean that the Plan alters the legal, equitable, or contractual rights of the members of that class.

29. **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

30. **Petition Date** shall mean the date on which the Debtors filed this petition for relief commencing the Chapter 11 Case.

31. **Plan** shall mean this Second Modified Joint Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

32. **Priority Non-Tax Claim** shall mean a Claim entitled to priority under Sections 507(a)(2), (3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

33. **Priority Tax Creditor** shall mean a Creditor holding a priority tax claim.

34. **Priority Tax Claim** shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

35. **Proceedings** shall mean the Chapter 11 Case of the Debtor.

36. **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

37. **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

38. **Proponent** means the Proponents of this Plan, ProPhase Diagnostics NJ Inc., ProPhase Diagnostics NY Inc., and ProPhase Diagnostics Inc., as Jointly Administered Debtors.

39. **Reorganized Debtors** means the Debtors after confirmation of the Plan.

40. **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtors have an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

41. **Unsecured Claim** shall mean any Claim which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not

(i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by Section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under Sections 503 or 507 of

the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtors that are not expressly otherwise dealt with in the Plan.

42. **Drexel** means and refers to Drexel Distribution, Inc. d/b/a EZ-Test NY, the holder of Claim No. 3 filed in Case PP-INC and of the Allowed Claim classified in Class 10.

43. **Drexel Settlement** means and refers to the settlement agreement among the Debtors, the Parent, and Drexel resolving the Drexel Claim, the Debtors' Objection to the Drexel Claim [ECF Doc. No. 134], Adversary Proceeding No. 26-01208, and Drexel's motion to convert these cases [ECF Doc. No. 150], which settlement is the subject of the Debtors' motion for approval under Bankruptcy Rule 9019 [ECF Doc. No. 207].

44. **Estate Component** means and refers to the sum of $125,000.00, being the amount at which the Drexel Claim is reduced and Allowed against the Debtors' estates under the Drexel Settlement, and which is the distribution provided to Class 10 under this Plan.

45. **Parent** means and refers to ProPhase Labs, Inc., the non-debtor parent company of the Debtors within the meaning of 11 U.S.C. § 101(31)(B), and the holder of the Allowed Secured Claim classified in Class 1.

46. **Parent Component** means and refers to the sum of $775,000.00 payable by the Parent to Drexel under the Drexel Settlement from the Parent's own funds. The Parent Component is not property of the Debtors' estates, is not funded by the estates, is not a distribution under this Plan, and does not reduce the funds available for distribution to any Class.

47. **9019 Order** means and refers to an order of the Bankruptcy Court approving the Drexel Settlement under Bankruptcy Rule 9019.

48. **Other Definitions** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular

section, subsection, or clause contained in the Plan. Moreover, some terms defined herein are defined in the section in which they are used.

**What Creditors and Interest Holders Will Receive Under the Plan**

The Plan classifies claims and interests in various classes. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

Definitions: in the treatment of claims below, the following three Definitions apply, as set forth in Section B.9 through B.11 hereinabove:

"Case PP-NJ" means Case #25-19833-CMG, "In re ProPhase Diagnostics NJ, Inc."
"Case PP-NY" means Case #25-19834-CMG, "In re ProPhase Diagnostics NY, Inc."
"Case PP-INC" means Case #25-19836-CMG, "In re ProPhase Diagnostics, Inc."

**C. Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponents have not placed the following claims in a class. The treatment of these claims is provided below.

**1. Administrative Expenses and Fees**

Administrative expenses are claims for costs or expenses of administering the Debtors' Chapter 11 case which are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case. The Debtors shall pay same in accord with the Bankruptcy Code; the Code requires that all administrative expenses be paid in full on or before Confirmation of the Plan, unless a particular claimant agrees to a different treatment. All Administrative Claims approved by the Court as of the Effective Date shall be paid in full on the Effective Date; any Administrative Claims approved by the Court after the Effective Date shall be paid within five days of approval of same.

**Court Approval of Professional Compensation and Expenses Required.** The Court must approve all professional compensation and expenses. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan.

No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

**2. Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires, and thus this Plan provides, that each holder of such a 507(a)(8) priority tax claim receives the present value of such claim in deferred cash payments, over a period not exceeding five years from the date of the order for relief, in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code.

The Debtors have one Priority Tax Claim:

**Priority Tax Claim of the United States Internal Revenue Service.** The Priority Tax Claim of the United States Internal Revenue Service shall consist of all allowed Priority Claims of said creditor, which has filed duplicate Priority Claims in the amount of $928,916.96 in two of the three jointly administered cases, being Claim No. 8 in Case PPNJ and Claim No. 5 in Case PP-INC, together with a further Priority Claim of $717.35 filed as Claim No. 6 in Case PP-INC. The Internal Revenue Service has filed no proof of claim in Case PP-NY. The Debtors treat the duplicate filings as a single Priority Tax Claim. Unless otherwise agreed in a Consent Order with the U.S. Internal Revenue Service, this priority claim shall be paid in full, in 36 monthly installments at 4.0% interest, at $27,446.51 per month, which fully amortizes the aggregate Priority Tax Claim of $929,634.31, being the $928,916.96 claim together with the $717.35 claim filed as Claim No. 6 in Case PP-INC, over the 36 month term. This Priority Tax Claim is unclassified and, in accordance with Section 1123(a)(1) of the Bankruptcy Code, is not entitled to vote on the Plan.

**D. Classified Claims and Interests**

The Plan establishes twelve classes of claims and interests across the three jointly administered estates.

**1. Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The classes of Secured Creditors include the following:

**Class 1: Secured Claim of ProPhase Labs, Inc. in Case PP-NY.** The Allowed Claims of Class 1 shall consist of all Allowed Secured Claims of the Parent, ProPhase Labs, Inc. (the parent company of the Debtors, per 11 U.S.C. §101(31)(B)), in the amount of $9,998,503.80, asserted as Secured by recorded UCC-1 financing statements against the assets of the Debtor. As of the date of this Plan, no party has filed an Objection to the Secured status of this claim. This Class 1 Creditor shall be paid in full as a Secured Claim in such amount as the Court may allow, estimated at $9,998,503.80, inclusive of all sums due, over an estimated 9 months, beginning in Month 1 and ending in Month 9, in accord with the Revenue Projections annexed as Exhibit D to the Disclosure Statement. The Parent is an insider of the Debtors within the meaning of Section 101(31)(B) of the Bankruptcy Code, and no acceptance of the Plan by Class 1 is relied upon for purposes of Section 1129(a)(10). This Class is Impaired.

**Class 2: Secured Claim of the Township of Old Bridge in Case PP-NJ.** The Allowed Claims of Class 2 shall consist of all Allowed Secured Claims of the Township of Old Bridge, which holds a statutory lien against the Debtor in the amount of $13,669.00. This Claim was listed on the Debtor's amended Schedule E/F in Case PP-NJ as a nonpriority unsecured claim. The Debtors have determined that the Claim is secured by a statutory lien and have classified it accordingly in this Plan, which governs its treatment. This Class 2 Creditor shall be paid in full, at the projected Allowed amount of $13,669.00, 60 days after the Effective Date. This Class is Impaired.

**2. Classes of Priority Unsecured Non-Tax Claims**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

Class 11: Class of Contingent Priority Non-Tax Claims, in Case PP-NJ. This Class consists of the three proofs of claim filed by Principal Life Insurance Company in Case PP-NJ asserting priority under Section 507(a) in the aggregate asserted amount of $42,022.13. The Debtors dispute that these Claims are entitled to priority treatment and have objected, or will object, to their priority characterization. To the extent any portion of these Claims is Allowed as a priority claim under Code Sections 507(a)(3) through (a)(7), that portion shall be paid in full, in cash, on the later of the

Effective Date and the date on which such Claim becomes an Allowed Claim by Final Order. The Debtors shall establish and maintain a reserve in the full asserted amount of $42,022.13 pending resolution of the objection. To the extent any portion of these Claims is disallowed as a priority claim, that portion shall be treated as a General Unsecured Claim in Class 3 and shall receive the treatment afforded to that Class. The Debtors presently estimate the Allowed priority amount of Class 11 at $0.00. Because holders of Allowed Claims in this Class receive payment in full, in cash, of the amount to which Section 1129(a)(9)(B) entitles them, this Class is Unimpaired, is conclusively presumed to have accepted the Plan pursuant to Section 1126(f), and is not entitled to vote.

**3. Classes of General Unsecured Claims**

General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a).

**Class 3: Class of General Unsecured Nonpriority Claims in excess of $5,000 each, in Case PP-NJ.** This Class will be paid in full, in the projected Total amount of Allowed Claims of $601,980.11, after all Objections to Claims are resolved. The $601,980.11 in total Allowed Claims of Class 3 shall be paid over an estimated 3 months, beginning in Month 9 and ending in Month 11, in accord with the Revenue Projections annexed as Exhibit D to the Disclosure Statement. The Debtors reserve the right to prepay any sums due to Allowed Claims of Class 3 creditors, without penalty for prepayment. This Class is Impaired.

**Class 4: Class of General Unsecured Nonpriority "Administrative Convenience" Claims of less than $5,000 each, in Case PP-NJ.** This Class will be paid in full, in the estimated Total amount of Allowed Claims of $4,766.95. All Allowed Claims of Class 4 shall, for purposes of Administrative Convenience, be paid 100% in full, without interest, 35 days after the Effective Date. This Class is Impaired.

**Class 5: Class of General Unsecured Nonpriority Claims in excess of $3,000 each, in Case PP-NY.** This Class will be paid in full, in the projected Total amount of Allowed Claims of $1,257,329.90, after all Objections to Claims are resolved. The $1,257,329.90 in total Allowed Claims of Class 5 shall be paid over an estimated 3 months, beginning in Month 9 and ending in Month 11, in accord with the Revenue Projections annexed as Exhibit D to the Disclosure Statement. The Debtors reserve the right to prepay any sums due to Allowed Claims of Class 5 creditors, without penalty for prepayment. This Class is Impaired.

**Class 6: Class of General Unsecured Nonpriority "Administrative Convenience" Claims of less than $3,000 each, in Case PP-NY.** This Class will be paid in full, in the estimated Total amount of Allowed Claims of $6,899.96. All Allowed Claims of Class 6 shall be paid 100% in full, without interest, 35 days after the Effective Date. This Class is Impaired.

**Class 7: Class of General Unsecured Nonpriority Claims in excess of $3,000 each, in Case PP-INC.** This Class will be paid in full, in the estimated Total amount of Allowed Claims of $1,088,162.30, after all Objections to Claims are resolved. This $1,088,162.30 in total Allowed Claims of Class 7 shall be paid over an estimated 3 months, beginning in Month 9 and ending in Month 11, in accord with the Revenue Projections annexed as Exhibit D to the Disclosure Statement. The Debtors reserve the right to prepay any sums due to Allowed Claims of Class 7 creditors, without penalty for prepayment. The Claims presently asserted in this Class include the Claim of ATC Testing and Screening Services LLC, filed as Claim No. 2 in Case PP-INC in the asserted amount of $643,052.36, which the Debtors dispute and as to which the Debtors have reserved the right to object. If such objection is sustained in whole or in part, the total Allowed Claims of Class 7 shall be reduced accordingly. This Class is Impaired.

**Class 8: Class of General Unsecured Nonpriority "Administrative Convenience" Claims of less than $3,000 each, in Case PP-INC.** This Class will be paid in full, in the estimated Total amount of Allowed Claims of $1,084.88. All Allowed Claims of Class 8 shall be paid 100% in full, without interest, 35 days after the Effective Date. This Class is Impaired.

**Class 9: Contingent, Disputed, and Unliquidated Claims.** This Class consists of claims that remain contingent, disputed, and unliquidated and that are subject to objection, estimation under Section 502(c), and a reserve. Following the settlement of the Drexel Claim, which is classified separately in Class 10, the claims remaining in Class 9 consist principally of the claims asserted by PPFB, LLC, together with such other contingent, disputed, and unliquidated claims as may exist. The Debtors have objected to the claims of PPFB, LLC and have moved to estimate those claims at zero dollars [ECF Doc. No. 205]. The resolution of those claims is proceeding in the trial court litigation where they

are presently being addressed, per the Consent Order entered at ECF Doc. No. 106. The Debtors presently estimate the total amount of Allowed Class 9 claims at $0.00. Solely to provide for the contingency that a Class 9 claim is later Allowed by Final Order, the Plan establishes a reserve for the Class 9 claims at the end of the distribution waterfall. A holder of a Class 9 claim, including PPFB, LLC, shall receive a distribution only if, and only to the extent that, its claim is Allowed by Final Order following liquidation, and only from Available Collections remaining after all Allowed Claims in every senior Class have been paid in full. The aggregate recovery on account of all Class 9 claims is capped at, and shall not exceed, $1,200,000.00, and shall be satisfied solely from that reserve. If the Class 9 claims are disallowed, dismissed, or Allowed at $0.00, no distribution shall be made and the reserved amounts shall revest in the Reorganized Debtors. No distribution on account of any Class 9 claim shall reduce or delay the distribution to any senior Class. Class 9 shall thus have no distribution unless and until allowed by Final Order. This Class is Impaired.

**Class 10: Allowed Settled Claim of Drexel Distribution, Inc. d/b/a EZ-Test, in Case PP-INC.** The Allowed Claim of Class 10 consists of the Claim of Drexel, filed as Claim No. 3 in Case PP-INC in the asserted amount of $1,754,088.00, as amended November 30, 2025, which was the subject of the Debtors' Objection to Claim [ECF Doc. No. 134] and of Adversary Proceeding No. 26-01208. Pursuant to the Drexel Settlement, the Drexel Claim is reduced and Allowed against the Debtors' estates in the fixed amount of the Estate Component, $125,000.00, in full and final satisfaction of all Claims asserted by Drexel against the Debtors and their estates. The Estate Component shall be paid in full, without interest, on the same terms as the Allowed Claims of Class 7, over an estimated 1 month, in Month 12, in accord with the Revenue Projections annexed as Exhibit D to the Disclosure Statement. The Debtors reserve the right to prepay the Estate Component without penalty for prepayment. Separately, and outside this Plan, the Parent shall pay Drexel the Parent Component, $775,000.00, from the Parent's own funds. The Parent Component is not property of the Debtors' estates, is not funded by the estates, is not a distribution under this Plan, and does not reduce the funds available for distribution to any other Class. The treatment provided to Class 10 is conditioned upon entry of the 9019 Order. If the Bankruptcy Court does not approve the Drexel Settlement, the Drexel Settlement shall be of no force and effect, the Drexel Claim shall revert to its prior status as a contingent, disputed, and unliquidated Claim classified in Class 9, and the Debtors' Objection to Claim and Adversary Proceeding No. 26-01208 shall be restored. This Class is Impaired.

### 4. Basis for the Separate Classification of Class 9 and Class 10

The Plan classifies contingent, disputed, and unliquidated litigation claims separately from ordinary general unsecured trade claims, and classifies the settled Drexel Claim separately from both. Section 1122(a) of the Code prohibits placing dissimilar claims in the same class and otherwise leaves classification to the reasonable business judgment of the plan proponent. The separate classification here rests on good business reasons and on the disparate legal rights of the

holders. The Claims in Class 9 remain unliquidated and disputed, are subject to pending objection and estimation, and may receive no distribution unless and until they are allowed by Final Order. The Class 10 Claim has been fixed by agreement in a liquidated amount, is subject to Court approval under Bankruptcy Rule 9019, and carries a separate component payable by a non-debtor from non-estate funds.

The separate classification of Class 10 does not afford Drexel more favorable treatment from the estates than the treatment afforded to the general unsecured Classes. The holders of Allowed Claims in Classes 3 through 8 are to be paid 100 percent of their Allowed Claims. The Class 10 Claim is Allowed against the estates in the reduced amount of $125,000.00 as against an asserted claim of $1,754,088.00, and the Estate Component is paid on the same terms as the Allowed Claims of Class 7. Section 1123(a)(4) of the Code requires that a plan provide the same treatment for each claim within a particular class, and this Plan provides each Claim within Class 10, and each Claim within every other Class, the same treatment as every other Claim in that Class.

**5. Class(es) of Equity Interest Holders**

Equity interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder.

In this case, the Debtors are corporations. The sole Shareholder of both PP-NJ and PP-NY is PP-INC. The sole Shareholder of PP-INC is the Parent, ProPhase Labs, Inc.

Class 12: Class of Equity Interests in the Debtors. Given that this is a 100% payment Plan, and to preserve operational continuity, the Equity Security Holders shall retain their Equity Interests in the Debtors unaltered, subject to final payments made under the Plan, and the entry of a Final Decree closing out the case. Because this Plan leaves the legal, equitable, and contractual

rights of the holders of Equity Interests unaltered, this Class is Unimpaired, is conclusively presumed to have accepted the Plan pursuant to Section 1126(f), and is not entitled to vote.

**6. Other Claims**

None.

**E. Acceptance or Rejection of Plan**

Each impaired class of Creditors with claims against the Debtors' estates shall be entitled to vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such class that have accepted or rejected the Plan. In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Proponents reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

Class 10 is an impaired Class of Claims held by a Creditor that is not an insider of the Debtors. Upon acceptance of the Plan by Class 10, the Plan will satisfy the requirement of Section 1129(a)(10) of the Bankruptcy Code that at least one impaired class of claims accept the Plan, determined without including the acceptance of any insider. The Allowed Secured Claim of the Parent in Class 1 is held by an insider within the meaning of Section 101(31)(B), and no acceptance of the Plan by Class 1 is relied upon for purposes of Section 1129(a)(10).

**F. Means of Effectuating the Plan**

**1. Funding for the Plan**

The Plan will be funded by the following: revenues from operations and the collection of receivables, together with funds on hand in the Debtors' accounts on the Confirmation Date, in an

amount sufficient to pay the sums due to Allowed Administrative Claims, as set forth in the Financial Projections annexed as Exhibit D to the Disclosure Statement.

For the avoidance of doubt, the Parent Component payable to Drexel under the Drexel Settlement is not funded by the Debtors or their estates, is not a distribution under this Plan, and is not included in the Financial Projections as a Plan payment obligation.

**2. Limited Consolidation of the Estates for Purposes of Funding Distributions**

Solely for the purpose of funding and making distributions under this Plan, and for no other purpose, the estates of ProPhase Diagnostics NJ, Inc., ProPhase Diagnostics NY, Inc., and ProPhase Diagnostics, Inc. shall be deemed consolidated on the Effective Date. The cash generated by the collection of the Receivables Portfolio, by recoveries on the Debtors' causes of action, and by the continued operations of the Reorganized Debtors shall constitute a single fund available to satisfy the Allowed Claims of every Class under this Plan, without regard to the estate against which any particular Claim was filed or scheduled, and the Disbursing Agent is authorized to make distributions from that single fund accordingly.

This limited consolidation does not merge the Debtors as legal entities, does not effect a substantive consolidation of the estates for any purpose other than the funding of distributions under this Plan, and does not merge the Debtors' books, records, tax attributes, or corporate existence. It does not alter the classification of any Claim. Each Class retains its classification by estate as set forth in Section II.D above, and each holder of an Allowed Claim shall receive the treatment provided for its Class, in the order of priority required by the Bankruptcy Code. Nothing in this Section shall be construed to provide any holder of a Claim with a distribution other than the treatment afforded to the Class in which such Claim is classified.

Claims held by one Debtor against another Debtor shall neither be discharged nor receive any distribution under this Plan, and shall be eliminated solely for purposes of computing

distributions, so that no asset of the estates is counted more than once in determining the cash available to fund this Plan.

The Debtors submit that this limited consolidation prejudices no creditor of any estate. This Plan provides for payment in full of every Allowed Claim in every Class. Absent this provision, the timing and certainty of distributions to a given Class would depend upon which of the three jointly administered estates the Claim was filed against, rather than upon the aggregate cash available to the Debtors, and holders of Allowed Claims against an estate holding a smaller share of the Receivables Portfolio would be disadvantaged for reasons unrelated to the merits, amount, or priority of their Claims. Confirmation of this Plan shall constitute approval of the limited consolidation provided for in this Section.

**3. Continuation of the Collection Program and Preservation of Receivables**

The collection of the Debtors' receivables is the principal source of the cash that funds distributions under this Plan, and that collection effort is expected to continue over a period of several years following the Effective Date. To ensure that the collection program continues without interruption and that all rights necessary to complete it are preserved, the Plan provides as follows.

**(a) Preservation of the Receivables and Related Claims.** Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date all receivables of the Debtors, together with all associated claims, rights of recovery, causes of action, and rights to pursue, prosecute, settle, compromise, collect, and enforce the same against any payer or other obligor (collectively, the "Receivables Assets"), shall vest in the Reorganized Debtors. The Receivables Assets are expressly preserved and reserved for the benefit of the Reorganized Debtors and shall not be deemed waived, released, extinguished, or compromised by reason of Confirmation, the occurrence of the Effective Date, or the entry of the Confirmation Order. The

failure to list or specifically identify any individual receivable or related claim or cause of action shall not constitute a waiver or release thereof, and all such items are preserved in full.

**(b) Continuation of the Collection Program.** The Debtors' collection program in respect of the Receivables Assets, as conducted prior to the Effective Date by their retained special counsel for collections under Section 327 of the Bankruptcy Code, shall continue in full force and effect on and after the Effective Date without interruption, on the same terms and conditions, including the same contingency-fee compensation, as were in effect immediately prior to the Effective Date. The entry of the Confirmation Order shall constitute approval of such continued engagement and compensation as of the Effective Date, without the necessity of any further application, motion, or retention order; provided that the Court shall retain jurisdiction to resolve any dispute regarding such compensation upon the request of a party in interest and after notice and a hearing.

**Debtors' Capabilities and Resources for the Collection Program.** The Debtors' collection program depends on the billing infrastructure, the laboratory information system and the underlying claim data, the payer contracts and payer relationships, and the personnel and institutional knowledge developed in operating the testing business that generated the Receivables Assets, some of which are maintained on or accessed through the shared platform of the Debtors' corporate family. On and after the Effective Date, the Reorganized Debtors shall retain and may continue to use that infrastructure, data, and institutional knowledge, and may maintain such arrangements as are necessary or appropriate to complete the collection of the Receivables Assets for the benefit of creditors, provided that nothing in this Section shall create any Claim against, or obligation of, the Debtors' estates other than as expressly provided in this Plan.

**(c) Preservation of Enforcement and Discovery Rights.** On and after the Effective Date, the Reorganized Debtors shall retain and may exercise all rights, powers, and remedies

necessary or appropriate to pursue, prosecute, settle, and enforce the Receivables Assets, including the right to commence, continue, and prosecute litigation and contested matters, to conduct discovery, and to invoke such examination and discovery mechanisms as may be available under applicable law in furtherance of the collection of the Receivables Assets, for so long as is necessary to complete the collection program, which the Debtors acknowledge may extend over a period of several years.

**4. Post-Confirmation Management**

The post-confirmation operations of the Debtors will continue to be managed by the Debtors' present officers and employees, including CEO Ted Karkus.

**5. Disbursing Agent**

The Debtors shall serve as their own disbursing agent for the purpose of making all distributions provided for under the Plan.

The Debtors reserve the right to pay monthly installments on a quarterly basis, and reserve the right to pre-pay any financial obligation set forth in the Plan, without penalty for pre-payment.

## III.

## TREATMENT OF MISCELLANEOUS ITEMS

### A. Executory Contracts and Unexpired Leases

**1. Assumptions**

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtors under this Plan: any unexpired real estate leases.

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtors. The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above. If you are a party to a lease or contract to be assumed and you object to the assumption of your lease

or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**2. Rejections**

On the Effective Date, all executory contracts not assumed shall be deemed to be rejected.

The order confirming the Plan shall constitute an order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See the Disclosure Statement for the specific date.

ALL PROOFS OF CLAIM WITH RESPECT TO CLAIMS ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE MUST BE FILED WITH THE BANKRUPTCY COURT WITHIN THE EARLIER OF (i) THE DATE SET FORTH FOR FILING SUCH CLAIMS IN ANY ORDER OF THE BANKRUPTCY COURT APPROVING SUCH REJECTION, OR (ii) THIRTY (30) DAYS AFTER THE CONFIRMATION DATE.

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**B. Changes in Rates Subject to Regulatory Commission Approval**

The Debtors are not subject to governmental regulatory commission approval of their rates.

**C. Retention of Jurisdiction**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtors or the Reorganized Debtors elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

Without limiting the foregoing, the Court shall retain jurisdiction, during the period of the collection program described in Section II.F hereof, over all matters arising out of or related to the Receivables Assets and the collection program, including the prosecution, settlement, and enforcement of the Receivables Assets, the compensation of the Debtors' retained collection professionals in connection therewith, and the resolution of any dispute concerning the rights, authority, or compensation of the Reorganized Debtors or such professionals with respect to the foregoing.

The Court shall further retain jurisdiction over the implementation and enforcement of the Drexel Settlement and the 9019 Order.

**D. Procedures for Resolving Contested Claims**

Objections to Claims and interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the Reorganized Debtors or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order.

**E. Effective Date**

The Effective Date shall be the date upon which the Confirmation Order is final and nonappealable.

**F. Notices under the Plan**

All notices, requests or demands to be sent to the Debtors for further information with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Proponents, addressed to: "PPD, c/o McMANIMON, SCOTLAND & BAUMANN, LLC, 427 Riverview Plaza, Trenton, N.J. 08611", or may be sent via email, with prior approval of McManimon, Scotland & Baumann, LLC, after first telephoning the law firm at 973-681-7979 for approval, then to confirm receipt of any email sent.

## IV.

## EFFECT OF CONFIRMATION OF PLAN

**A. Discharge**

Upon Confirmation, and to the extent provided by Section 1141 of the Bankruptcy Code, the Debtors shall be discharged of liability for the payment of debts incurred before Confirmation, except as otherwise provided in the Plan. Any liability imposed by the Plan shall not be discharged. If Confirmation does not occur, the Plan shall be deemed null and void, and nothing in the Plan shall be deemed a waiver or release of any claims by or against the Debtors or any other Person, or prejudice the rights of any party in any further proceeding. Upon Confirmation, the provisions of the Plan shall bind the Debtors, all Creditors, and all Equity Interest Holders, whether or not impaired and whether or not they accept the Plan.

**B. Revesting of Property in the Debtor**

Except as provided in Section IV.D and except as otherwise provided in the Plan, Confirmation revests all property of the estates in the Reorganized Debtors, free and clear of Claims and Interests except as provided in the Plan and the Confirmation Order. For the avoidance

of doubt, the Receivables Assets described in Section II.F hereof, including all related claims, rights of recovery, and causes of action, are preserved and revest in the Reorganized Debtors for prosecution, settlement, and collection, and are not waived, released, or extinguished by Confirmation.

**C. Modification of Plan**

The Proponents may modify the Plan at any time before Confirmation, subject to the Court's authority to require a new disclosure statement or re-voting. The Proponents may also seek to modify the Plan after Confirmation so long as the Plan has not been substantially consummated and the Court authorizes the modification after notice and a hearing.

**D. Post-Confirmation Conversion / Dismissal**

A creditor or party in interest may move to convert or dismiss these cases under Section 1112(b) after Confirmation if there is a default in performing under the Plan. If the Court orders conversion to Chapter 7 after Confirmation, all property that was property of the Chapter 11 estates and that has not been disbursed under the Plan shall revest in the Chapter 7 estate, and the automatic stay shall be reimposed on the revested property to the extent relief from stay was not previously granted.

**E. Post-Confirmation Quarterly Fees**

Quarterly fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930(a)(6) shall continue to be payable post-confirmation until the cases are converted, dismissed, or closed by final decree.

Plan Proponents: ProPhase Diagnostics NJ, Inc.; ProPhase Diagnostics NY, Inc.; and ProPhase Diagnostics, Inc. *(jointly administered debtors)*

By: *__/s/ Ted Karkus__*
Ted Karkus, Chief Executive Officer

Date: September 29, 2026