**WEBBER MCGILL LLC**
Douglas J. McGill, Esq.
100 E. Hanover Avenue, Suite 401
Cedar Knolls, New Jersey 07927
Tel: (973) 739-9559
Fax: (973) 739-9575
*Attorneys for PPFB, LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>ProPhase Diagnostics, NJ, *et al.*,[1]<br><br>Debtors-in -Possession. | Case No. 25-19833 (CMG)<br>Chapter 11<br><br>Hon. Christine M. Gravelle<br>(Jointly Administered) |

**OBJECTION TO DEBTORS' THIRD MODIFIED DISCLOSURE STATEMENT**

PPFB, LLC, ("**PPFB**"), hereby objects to Debtors' Third Modified Disclosure Statement (the "Disclosure Statement") describing the Second Modified Joint Chapter 11 Plan of Reorganization (the "Plan") proposed by the above-captioned Debtors, and respectfully states:

**BACKGROUND**

1. On January 27, 2023, PPFB, as relator, filed a *qui tam* lawsuit against the Debtors' parent ProPhase Labs, Inc. ("**ProPhase Labs**") and others in the District Court for the Eastern District of New York, Case No. CV 23-0627 (E.D.N.Y.). ("**EDNY Action**"). That case remains pending.

2. Generally speaking, the EDNY Action involves a scheme carried out by ProPhase Labs and each of the Debtors to defraud the United States, New York, and New Jersey in connection with HRSA, Medicare, and Medicaid reimbursement payments in violation of the

[1] ProPhase Diagnostics, NY, Inc., No. 25-19834 (CMG); ProPhase Diagnostics, Inc., No. 25-19836 (CMG)

federal False Claims Act, 31 U.S.C. § 3729, *et seq.;* the New York False Claims Act, New York State Fin. Law § 189, *et seq.* and the New Jersey False Claims Act, N.J. Stat. § 2A:32C-3.

2. PPFB has filed proofs of claim against each of the Debtors, in an amount exceeding $75 million, based the factual allegations set forth in the EDNY Action, and the assertion that each of the Debtors is the alter ego of ProPhase Labs.

3. On December 19, 2025, PPFB commenced the adversary proceedings styled *United States of America, New York State and State of New Jersey, ex rel. PPFB, LLC*; Adv. Pro. Nos. 25- 02526; 25-02527; 25-02528 (the "**Adversary Proceedings**"), asserting that each of the Debtors is the alter ego of ProPhase Labs and liable for violation of the False Claims Acts, and seeking to have such liability declared non-dischargeable pursuant to 11 U.S.C. § 1141(d)(6).

4. On April 10, 2026, the Court entered a Consent Order [Docket No. 106] modifying the automatic stay to permit PPFB to commence and prosecute a lawsuit(s) against the Debtors in the United States District Court for the Eastern District of New York or other appropriate non-bankruptcy forum, in order to liquidate claims which are the subject of the above-captioned non-dischargeability proceedings. PPFB thereafter amended its complaint in the EDNY Action to assert claims against the Debtors, which are underlying claims which are the subject of the Adversary Proceedings.

5. On August 8, 2026, the Debtors filed an Objection to PPFB's proofs of claim, or, in the alternative, a motion to estimate such claims at $0 for purposes of voting on the plan, pursuant to section 502(c) of the Bankruptcy Code. In that motion filed by the Debtors, they acknowledged that such claims would ultimately need to be liquidated in the EDNY Action. The Court has denied the Debtors motion to estimate PPFB's claims.

6. On September 29, 2026, the Debtors filed their Plan and Disclosure Statement. For the reasons set forth below, the Court should not approve the Disclosure Statement because the Plan is patently unconfirmable.

**OBJECTION**

7. It is well-settled that courts may withhold approval of a disclosure statement if the disclosure statement describes a patently unconfirmable plan. *See, e.g., In re American Capital Equipment, LLC*, (3d Cir. 2012) (citations omitted). "A plan is patently unconfirmable where (1) confirmation 'defects [cannot] be overcome by creditor voting results' and (2) those defects 'concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing.'" *Id.* at 154-55 (quoting *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D.Pa. 1987)).

8. Here, the Plan is patently unconfirmable because the it (a) improperly isolates for classification purposes each of the respective claims of PPFB and Drexel Distribution, Inc. ("**Drexel**"); (b) does not satisfy the "best interests of creditors" requirement of section 1129(a)(7) of the Bankruptcy Code; (c) unfairly discriminates against, and is not fair and equitable as to, PPFB, insofar as the Plan provides for inferior treatment of PPFB's Class 9 claim relative to treatment of other classes of general unsecured claims; and, relatedly, (d) violates the absolute priority rule.

9. The Disclosure Statement indicates that creditors will be paid in full, based on allowed claims projected to total in excess of $13 million. However, the Disclosure Statement fails to adequately account for the potential allowance of PPFB's claims, which would substantially consume the all assets of the estates.

## I. The Plan Improperly Classifies PPFB's Claim and Drexel's Claim Separately <u>From the Class(es) of Other General Unsecured Claims</u>

10. The Disclosure Statement describes a Plan which separately classifies PPFB's $75 million general unsecured claim, and also Drexel's $125,000 general unsecured claim, from other general unsecured claims. Such separate classification is impermissible.

11. "Separate classifications for unsecured creditors are only justified 'where the *legal character* of their claims is such as to accord them a status different from the other unsecured creditors.'" *In re Lisanti Foods, Inc.*, 329 B.R. 491, 510 (D.N.J. 2005) (quoting *Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 748 F.2d 42, 46 (1st Cir. 1984) (emphasis in original)).

12. The Debtors have not articulated any legitimate basis on which to separately classify PPFB's claim (or, indeed Drexel's claim). The Disclosure Statement appears to assert that separate classification of PPFB's claim is justified simply because it is contingent, unliquidated, disputed and the subject of pending litigation. *See Disclosure Statement, p. 20*. However, this is an insufficient basis on which to separately classify PPFB's claim. *See, e.g., In re Curtis Ctr. Ltd. P'ship*, 195 B.R. 631, 642 (Bankr. E.D.Pa. 1996) (explaining "there is no difference between the legal characteristics of Sumitomo's unsecured deficiency claim and the claims of the Debtor's other unsecured creditors, simply because Sumitomo's unsecured deficiency claim is the subject of pending litigation"); *In re Paolini*, 312 B.R. 295, 314 (Bankr. E.D.Va. 2004) (collecting cases in recognition that "[c]ourts who have considered whether disputed claims may be properly classified separately from undisputed claims of a similar nature have concluded the existence of a dispute over claim validity does not support a separate classification); *In re Orla Enterprises*, 2009 WL 2447607 (Bankr. N.D.Ill. 2009) (holding that "claim [which was] unliquidated, disputed, and contingent upon the outcome of state court litigation" could not be separately classified from other

general unsecured claims under debtor's chapter 11 plan); *cf. In re J&J Pizza, Inc.*, 2024 WL 3534688 * 2 (3d Cir. 2024) (rejecting creditor's argument that his unliquidated, contingent, disputed claim which was the subject of an ongoing lawsuit should not have been classified with other general unsecured claims, and quoting *In re Curtis Ctr. Ltd. P'ship*, 195 B.R. at 642 for the proposition that "[u]nsecured claims are basically all alike, whether they are disputed or not").

13. The Debtors have separately classified PPFB's claim, and Drexel's claim, in a thinly-veiled attempt to gerrymander an impaired accepting class of general unsecured creditors. Classifications designed to disenfranchise a creditor and manufacture plan acceptance are viewed as improper gerrymandering violative of section 1122 of the Bankruptcy Code. *See 11 U.S.C. § 1122(a); see also, e.g., In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 224 (Bankr. D.N.J. 2000) (collecting cases).

**II. The Plan Violates the "Best Interests of Creditors" Requirement of Section 1129(a)(7) of the Bankruptcy Code.**

14. The Plan is patently unconfirmable notwithstanding its failure to comply with section 1122(a) of the Bankruptcy Code. Section 1129(a)(7) of the Bankruptcy Code, known as the "best interests of creditors" test, requires that the Plan provide that holders of each claim in an impaired dissenting class receive at least as much on account of such claim as they would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. *See 11 U.S.C. § 1129(a)(7); In re Lisanti Foods, Inc., 329 B.R. at 499-500*.

15. PPFB will vote to reject the Plan, and must therefore receive at least as much as it would receive under chapter 7. The Disclosure Statement indicates that the Debtors conservatively project $45-50 million of net recoveries of receivables, over a three-year period. *See Disclosure Statement at pp. 21-22*. The liquidation analysis attached as Exhibit C to the Disclosure Statement radically estimates net recoveries in a chapter 7 case to total $6-11 million. This estimate purports

to supported by a number of stereotypical liquidation assumptions, which in this case are unfounded and/or highly implausible.

16. The collectability "assumptions" set forth on Exhibit C, including that collectability depends "on an established collection program, existing payer relationships, claim-level knowledge of approximately 950,000 individual claims, and the ability to press payers through the discovery mechanisms available in these cases," are conclusory. Moreover, such assumptions wrongly imply that a chapter 7 trustee could not retain the Debtors' collection agent who would maintain the same collection program and utilize the same discovery mechanisms as are available under chapter 11. In any event, the Debtors' conclusion that a chapter 7 trustee would only be able to recover 10% to 20% of face value of receivables is highly arbitrary and appears to be in the nature of a conclusory "net opinion," in an effort to evade the absolute priority rule.

17. Because PPFB's claim stands to be as much as $75 million, the Debtors must set aside and reserve the entirety of the net proceeds of accounts receivable belonging to the estate in order to ensure compliance with the best interest of creditors test. The Plan cannot be confirmed unless those proceeds must be reserved as they are received, pending ultimate adjudication of PPFB's claim.

## III. The Plan Cannot Be Confirmed Because Violates Section 1129(b)(1) of the Bankruptcy Code.

18. Furthermore, the Plan cannot be confirmed because it unfairly discriminates against, and is not fair and equitable as to, PPFB. *See 11 U.S.C. § 1129(b)(1)*.

### A. The Plan Unfairly Discriminates Against PPFB.

19. The Plan would arbitrarily and improperly cap PPFB's recovery on its $75 million claim at $1.2 million, while providing for payment in full of all other claims, projected to total in excess of $13 million. This gross disparity in treatment of classes of claims of the same priority

creates a rebuttable presumption of unfair discrimination. *Cf. In re Tribute Company*, 972 F.3d 228, 242-45 (3d Cir. 2020); *see also Granada Wines, Inc. v. New England Teamsters and Trucking Industry Pension Fund*, 748 F.2d at 46 (explaining that "one aspect of fairness is that the dissenting class must receive no less on its claims than it would receive in a Chapter 7 liquidation"). The Disclosure Statement does not offer any rationale for the Plan's discriminatory treatment of Class 9, or otherwise rebut the presumption of unfair discrimination against Class 9.

Likewise, general unsecured claims of creditors other than PPFB cannot be paid in full before PPFB's claim is adjudicated. Rather, any distributions on account of general unsecured claims must be made *pro rata* as if PPFB's claims will be allowed in full, with a corresponding *pro rata* reserve held in favor of the potential allowance of PPFB's claim.

**B. The Plan Is Not Fair and Equitable as to PPFB Because It Would Violate the Absolute Priority Rule.**

20. The fair and equitable requirement of section 1129(b)(1) invokes, among other things, the absolute priority rule, *see 11 U.S.C. § 1129(b)(2)(B)(ii); Wells Fargo Bank, N.A. v. Hertz Corp. (In re Hertz Corp.)*, 120 F.4th 1181, 1199-1200 (3d Cir. 2024), which "requires that 'a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan,'" *In re Torgro Atlantic City, LLC*, 2009 WL 1288367 * 7 (quoting *Norwest Bank Worthington v. Ahlers*, 495 U.S. 197, 202 (1998)).

21. The Plan does not provide that PPFB will be paid the full amount of any allowed claim, yet holders of Class 12[2] equity interests would retain their interests under the Plan. This violates the absolute priority rule, and thus section 1129(b)(1) of the Bankruptcy Code.

[2] The Plan does not appear to have a class 11.

## IV. The Plan Appears to Be An Illegal Attempt to Benefit Equity Interest Holders by Depriving PPFB of its Right to Millions of Dollars in the Event Such Claim is Allowed, and Does Not Appear to Have Been Proposed in Good Faith.

22. The Plan is so shamelessly unconfirmable that it calls into question whether it has been proposed in good faith so as to satisfy section 1129(a)(3) of the Bankruptcy Code. *See 11 U.S.C. § 1129(a)(3)*.

23. "The focus of the good faith requirement in proposing a plan is whether it advances a result consistent with the Bankruptcy Code's objectives, is proposed with honest intentions, and can be supported by the circumstances of the case." *In re 710 Long Ridge Road Operating Co., II, LLC*, 2014 WL 886433 * 21 (Bankr. D.N.J. 2014) (citing *In re Greate Bay & Casino, Inc.*, 251 B.R. at 237-38). For the reasons set forth above, the Plan does not satisfy any of these requirements.

24. Concern over whether the Plan has been proposed in good faith is heightened by the curious "two financial tracks" discussed in the Disclosure Statement. "Track One" is described as "Receivables Collections," which is the Plan funding program. "Track Two" is described as the "Reorganized Genomics Business."

25. Although the Disclosure Statement goes to some length toward describing a speculative "Reorganized Genomics Business," *see Disclosure Statement, p. 23*, the purpose of such discussion is very unclear; the Disclosure Statement makes clear that no post-confirmation revenues will be used to fund the Plan, *see id*. at 13-14. This appears to be indicative of an illusory attempt to show the veneer of a reorganization, and thereby avoid an outright liquidation in which the Debtors would lose control over the $45-50 million in net receivables said to be collectible.

26. To the extent that the "Reorganized Genomics Business" has any relevance to confirmation issues, the Disclosure Statement should include a discussion of the impact a ruling

of non-dischargeability of PPFB's claim in the Adversary Proceedings would have on such business.

## <u>CONCLUSION</u>

**WHEREFORE**, PPFB respectfully requests that the Court sustain the instant objection to the Disclosure Statement, and grant such other and further relief as the Court deems just and proper.[3]

**WEBBER MCGILL LLC**
*Attorneys for PPFB, LLC*

By: <u>*/s/ Douglas J. McGill*</u>
Douglas J. McGill

Dated: October 6, 2026

[3] PPFB reserves all objections to the Plan.