**MCMANIMON, SCOTLAND & BAUMANN, LLC**
427 Riverview Plaza
Trenton, New Jersey 08611
(973) 681-7979
Joseph R. Zapata, Jr., Esq. (jzapata@msbnj.com)
*Attorneys for ProPhase Diagnostics NJ, Inc., et. al.,*
*Debtors and Debtors-In-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**PROPHASE DIAGNOSTICS NJ, INC., et al.**,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-19833 (CMG)[1]<br><br>(Jointly Administered)<br><br>Honorable Christine M. Gravelle, Chief Judge |

**DEBTORS' REPLY TO THE OBJECTION OF PPFB, LLC TO THE DEBTORS' THIRD MODIFIED DISCLOSURE STATEMENT**

The above-captioned debtors and debtors-in-possession (the "**Debtors**"), by and through their counsel, respectfully submit this reply to the objection of PPFB, LLC ("PPFB") to the Debtors' Third Modified Disclosure Statement (the "**Objection**")[Dkt. No. 251], and respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Objection is a confirmation objection disguised as a disclosure statement objection. PPFB fails to identify any information the Disclosure Statement omits and/or fails to provide that a creditor needs to vote. PPFB argues instead that the Plan cannot be confirmed because of how it classifies and treats PPFB's claim, how the Debtors value their receivables in a hypothetical chapter 7, and what PPFB believes the Debtors' motives to be. Each of those

---

[1] Lead case. The other jointly administered Debtors are ProPhase Diagnostics NY, Inc. (Case No. 25-19834 (CMG) and ProPhase Diagnostics, Inc. (Case No. 25-19836 (CMG).

arguments turns on facts that are disputed and undeveloped, beginning with the most basic fact of all: PPFB holds no allowed claim. Its claim is unliquidated, contingent, and disputed. PPFB, itself, tells the Court it must be liquidated in another forum. PPFB's argument is without merit as a plan is not "patently unconfirmable" where the alleged defects depend on facts that remain in dispute. *In re American Capital Equipment, LLC*, 688 F.3d 145, 154-55 (3d Cir. 2012).

2. The Plan pays every holder of an allowed claim in full. PPFB's position is that every one of those creditors should wait, possibly for years, while the entirety of the estates' collections sits in reserve against a $75.9 million claim filed three times, in an aggregate of roughly $227.7 million, on an alter ego theory that has never been tested. The United States, the State of New York, and the State of New Jersey each declined to intervene in the underlying qui tam action. A motion to dismiss the operative complaint is fully pending before the District Court. The Plan's treatment of Class 9 is a reasonable answer to that claim, and every question PPFB raises about it belongs at confirmation, on an evidentiary record.

## **RELEVANT BACKGROUND**

3. PPFB filed its qui tam action on January 27, 2023 against the Debtors' non-debtor parent, ProPhase Labs, Inc. ("**Labs**"), and others. *United States ex rel. PPFB, LLC v. ProPhase Labs, Inc.*, No. 2:23-cv-00627-NCM-AYS (E.D.N.Y.) (the "EDNY Action"). Each of the three sovereigns on whose behalf PPFB sues declined to intervene. The Debtors were added as defendants only after this Court's Consent Order [Dkt. No. 106] modified the stay. Defendants' motion to dismiss the Corrected Second Amended Complaint is pending, with PPFB's opposition due October 23, 2026.

4. PPFB filed proofs of claim of $75,928,404 against each Debtor. The claims rest on an assertion that each Debtor is the alter ego of Labs and are not accompanied by any claim-level

computation of damages. The amount asserted includes statutory trebling and civil penalties under the federal and state False Claims Acts, sought before any finding of liability.

5. PPFB states that the Debtors "acknowledged" its claims would be liquidated in the EDNY Action. *See* Objection ¶ 5. The Consent Order permitted PPFB to pursue liquidation in the District Court, and it expressly provide that “allowance, collection, or distribution on account of such claims shall remain subject to the jurisdiction of and further order of this Court.” See, Dkt. No. 106, Decretal ¶ 2. PPFB also states that the Court "has denied the Debtors motion to estimate." Objection, ¶ 5. No order has been entered on the Debtors' estimation motion [Dkt. No. 205], which remains pending."

6. The Plan places PPFB's claims in Class 9. Class 9 receives a distribution only on claims allowed by a final order, only from collections remaining after allowed claims in senior classes are paid, and subject to a cap of $1,200,000. Drexel Distribution, Inc. holds the sole claim in Class 10, allowed at $125,000 under the compromise this Court approved by order entered September 28, 2026 [Dkt. No. 241].

## **ARGUMENT**

### I. The Objection Raises Confirmation Issues That Depend on Disputed Facts and Should Be Reserved for the Confirmation Hearing.

7. The question at this stage is whether the Disclosure Statement contains "adequate information" under 11 U.S.C. § 1125(a)(1). Withholding approval on confirmation grounds is reserved for the narrow case where a plan is patently unconfirmable, meaning its defects cannot be overcome by voting and concern matters on which "all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *American Capital*, 688 F.3d at 154-55 (quoting *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987)). PPFB quotes the first part of the standard and then disregards its critical second half.



4901-6586-4407, v. 1

8. None of PPFB's arguments can be decided on undisputed facts. Whether a reasonable basis supports separate classification is a factual question. The best interests test requires a valuation of what a chapter 7 trustee would actually recover, which PPFB says is wrong and the Debtors say is right. That dispute is for evidentiary hearing and, if necessary, expert testimony. Further, unfair discrimination and the absolute priority rule arise only if Class 9 rejects and the Debtors seek confirmation under § 1129(b), and both depend on the allowed amount of PPFB's claim, which no court has determined. PPFB's own Objection describes the liquidation assumptions as "conclusory" and "arbitrary," which is an announcement that it intends to contest facts. Contested facts defeat the patently unconfirmable standard by definition.

9. The Objection should be overruled on this ground alone, with all of PPFB's confirmation objections preserved for the confirmation hearing, as PPFB itself reserves them. *See* Objection at Pg. 9, n.3.

## II. The Separate Classification of Classes 9 and 10 Is Permissible and Is Not a Basis to Deny Approval.

10. Section 1122(a) prohibits placing dissimilar claims in the same class. It does not require that all similar claims be placed in a single class. The Third Circuit permits separate classification of unsecured claims where a reasonable basis supports such separate classification and where the classification is not designed solely to manipulate voting. *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158-59 (3d Cir. 1993); *see also In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987)(the Third Circuit affirmed a plan that separately classified unliquidated malpractice claims from other unsecured claims). In some cases, such as the Debtors' case, the facts of the case warrant separate classification.

11. The caselaw cited by PPFB does not hold otherwise. The Third Circuit in *In re J&J Pizza, Inc.*, 2024 WL 3534688 (3d Cir. 2024), a case on which PPFB relies, rejected a creditor's



4901-6586-4407, v. 1

demand to be classified separately. It holds that a debtor may place a disputed claim with other unsecured claims, not that a debtor must. The out-of-circuit and lower court decisions PPFB cites address single-creditor deficiency claims and disputes over claim validity alone, and none involved a penal, derivative claim whose holder seeks to except it from discharge.

12. PPFB's claim differs in legal character from every other unsecured claim in these cases, in at least five respects:

(a) *It is a relator's claim on behalf of three sovereigns that declined to pursue it.* PPFB sues in the name of the United States, New York, and New Jersey, and any recovery is shared with those governments under statutory formulas. No other creditor holds a claim of that kind.

(b) *It is substantially penal.* The asserted amount is built on statutory trebling and per-claim civil penalties. To the extent a claim is for a penalty or for multiple damages that are not compensation for actual pecuniary loss, Congress has placed it below general unsecured claims in a chapter 7 distribution. 11 U.S.C. § 726(a)(4). The Code itself treats such claims as having a different character.

(c) *PPFB asserts that its claim survives confirmation.* In its Adversary Proceedings, PPFB seeks a declaration that its claim is non-dischargeable under 11 U.S.C. § 1141(d)(6). Objection ¶ 3. No other unsecured creditor claims a right to pursue the Reorganized Debtors after the Effective Date. PPFB cannot litigate for a status no other creditor has while insisting its claim is identical to theirs.

(d) *It is derivative.* PPFB's claim against each Debtor exists only if PPFB proves that Debtor is the alter ego of Labs, a non-debtor.

(e) *It is the subject of three pending adversary proceedings and a pending motion to dismiss.* Its allowance, if it ever occurs, will follow a liquidation process that no other creditor's claim requires.

13. The aforementioned differences supply the reasonable basis the *Route 37* decision requires. The classification also serves a legitimate administrative purpose: it allows creditors with allowed, liquidated claims to be paid on schedule without their distributions being held hostage to the years-long liquidation of a single contingent claim.

14. Class 10 requires even less discussion. Drexel's claim is allowed in a fixed amount by a final order of this Court approving a compromise under Bankruptcy Rule 9019 [Dkt. No. 241]. PPFB was provide with notice of the motion to approve the settlement and did not objection to the same. Importantly, the compromise includes consideration paid by a non-debtor outside the Plan. A claim fixed by court-approved settlement has a different legal status from a disputed claim.

15. PPFB's gerrymandering charge is premature. No ballots have been solicited or cast. Whether any class was created to manufacture an accepting class is a question for confirmation, decided on the voting results and the record, and it is a question the Debtors will be prepared to answer.

## III. PPFB's Best Interests Argument Is a Valuation Dispute for Confirmation, and It Fails on Its Own Terms.

16. Section 1129(a)(7) sets the inquiry at what a holder receives under the plan on account of its allowed claim with what it would receive on that claim in chapter 7. The test cannot be applied to PPFB today because PPFB has no allowed claim. Its argument assumes allowance at $75 million. That assumption is the single most disputed fact in these cases.

17. PPFB's attack on the liquidation analysis is likewise a factual dispute. PPFB asserts that a chapter 7 trustee could simply retain the Debtors' collection agent and continue the same

program. The collection agent was retained by these Debtors-in-Possession under 11 U.S.C. §§ 327(a) and 328(a), by order entered November 13, 2025 [Dkt. No. 41], on terms specific to these Chapter 11 cases. A trustee would have to make its own retention decision on its own terms. Conversion would also add a second layer of administrative expense, including trustee compensation under § 326(a), with chapter 7 expenses paid ahead of chapter 11 expenses under 11 U.S.C. § 726(b). The Debtors will establish at confirmation why those costs, together with the disruption of an established collection effort against payers who would welcome it, support the analysis stated in Exhibit C to the Disclosure Statement.

18. PPFB further omits the one feature of chapter 7 that bears most directly on its own claim. Under 11 U.S.C. § 726(a)(4), the penal and multiple-damages components of PPFB's claim would be paid only after every general unsecured claim is paid in full. A substantial portion of the $75.9 million PPFB asserts would therefore recover nothing in chapter 7 unless every other unsecured creditor is first paid in full. Meanwhile, under the Plan, PPFB keeps its distribution right in Class 9 and keeps whatever non-dischargeability claim it can prove against an operating Reorganized Debtor, rather than against a liquidated shell.

19. PPFB's proposed remedy exposes the problem with its position. It asks that the entire net proceeds of the receivables be held in reserve pending adjudication of its claim. Objection ¶ 17. That would suspend distributions to every creditor holding an allowed claim on account of a contingent claim filed without any damages computation. That outcome is the reason 11 U.S.C. § 502(c) exists.

## IV. Unfair Discrimination and the Absolute Priority Rule Are Cramdown Issues That Are Not Ripe.

20. Section 1129(b) applies only if an impaired class rejects the Plan and the Debtors seek confirmation over that rejection. PPFB has announced how it intends to vote, but no vote has

occurred, and the analysis under § 1129(b) depends on facts that no court has found, including the allowed amount of PPFB's claim and the value available to each class.

21. In assessing the merits of a plan, discrimination is unfair only if it lacks a reasonable basis. The differences identified in Point II, including the penal character of the claim, its derivative nature, and PPFB's pursuit of non-dischargeability, provide that basis. PPFB's reliance on *In re Tribune Co.*, 972 F.3d 228 (3d Cir. 2020), incorrectly cited by PPFB as "In re Tribute Company", does not support its argument. Tribune applied a flexible analysis and declined to treat differences in recovery as dispositive.

22. The absolute priority rule argument also rests on assumptions about the allowed amount of PPFB's claim and the value of the equity retained. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988), which PPFB quotes, requires full payment of a dissenting class before junior interests retain property; it says nothing about how to measure a claim no court has allowed. The Debtors will address the treatment of equity at confirmation. To the extent any issue of treatment remains, it can be addressed by modification of the Plan under 11 U.S.C. § 1127, which the Debtors reserve. A defect that can be cured by modification is, by definition, not a basis to declare a plan patently unconfirmable.

**V. The Plan Was Proposed in Good Faith.**

23. PPFB's good faith argument is rhetoric. The Plan pays every holder of an allowed claim in full, which is the result chapter 11 is designed to produce. Good faith is judged on the totality of the circumstances at confirmation. *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 532 Fed. Appx. 264 (3d Cir. 2013), and *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 729 F.3d 311 (3d Cir. 2013). "However, such inquiries must be done on a case-by-case

basis because good faith determinations are factually specific." *Id*. (quoting *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 39 (Bankr.D.Colo.1999). Further, good faith is measured by whether a plan fosters a result consistent with the Code's objectives. *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) A full-payment plan does exactly that. PPFB's preferred result, conversion, would substitute a trustee, add a layer of expense, and reduce recoveries for every creditor, PPFB included. The Plan has been proposed in good faith.

24. Lastly, PPFB complains that the Disclosure Statement describes the Reorganized Genomics Business in too much detail, and that the Plan does not depend on revenue from that business. Section 1125 requires disclosure of the Debtors' go-forward operations. The decision not to make creditor recoveries depend on post-confirmation operating revenue protects creditors from execution risk. That choice reflects conservative plan design and supports a finding of good faith.

**VI. The Debtors Will Supplement the Disclosure Statement to Resolve Any Disclosure Concern.**

25. To the extent the Objection identifies any information a creditor could find material, the Debtors will add the following to the Disclosure Statement before solicitation:

(a) a statement, in a form PPFB may propose within reason, summarizing PPFB's position on the classification and treatment of its claims;

(b) a risk factor describing PPFB's non-dischargeability claims under § 1141(d)(6) and their potential effect on the Reorganized Debtors and the Reorganized Genomics Business, as PPFB requests at ¶ 26;

(c) the current status of the Debtors' objection and estimation motion [Dkt. No. 205] and of the motion to dismiss in the EDNY Action; and

(d) conforming corrections to class numbering in the Plan and Disclosure Statement.

26. With those additions, every creditor, PPFB included, will have the information needed to make an informed judgment about the Plan, which is all § 1125 requires.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court overrule the Objection, approve the Third Modified Disclosure Statement as supplemented in the manner described above, preserve all parties' rights with respect to confirmation, and grant such other relief as is just and proper.

Respectfully submitted,

**MCMANIMON, SCOTLAND & BAUMANN, LLC**
*Attorneys for Attorneys for ProPhase Diagnostics NJ, Inc., et. al., Debtors and Debtors-In-Possession*

By: */s/ Joseph R. Zapata, Jr.*
JOSEPH R. ZAPATA, JR.

Dated: October 8, 2026